# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID FRITZ and MICHAEL TULLY, Plaintiffs, | : : : | |
| v. | : : : | 3:14cv634 (WWE) |
| NORTH AMERICAN POWER & GAS, LLC, Defendant. | : : : : | |

### RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Michael Tully brings this putative class action against defendant North American Power & Gas ("NAPG"), alleging breach of the Rhode Island Deceptive Trade Practices Act (RIDTA), breach of contract and covenant of good faith and fair dealing, and unjust enrichment. He also brings claims on behalf of a class of consumers who purchased electricity or gas from NAP pursuant to RIDPTA, the New Jersey Consumer Fraud Act, the Maryland Consumer Protection Act, the Maine Unfair Trade Practices Act, the New Hampshire Consumer Protection Act, the Georgia Fair Business Practices Act, the Ohio Consumer Sales Practices Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Texas Deceptive Trade Practices-Consumer Protection Act and state common law of the aforementioned states.

Defendant has filed a motion to dismiss. For the following reasons, the motion to dismiss will be granted in part and denied in part.

### BACKGROUND

For purposes of this ruling, the Court assumes that the allegations are true.

Defendant is an energy supplier and a limited liability company organized under

1

the laws of Delaware with a principal place of business in Connecticut.  Plaintiff is a citizen of Rhode Island.

In 1997, the electric utility industry within Rhode Island was restructured with the goal to increase competition and achieve greater consumer choice with lower energy rates.  The states of New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio, Pennsylvania, and Texas also restructured the electric utility industry in the 1990s.  The new energy suppliers who compete against local utilities are known as Energy Services Companies (ESCOs).  ESCOs such as defendant NAPG do not have to file their rates—or the method by which they set their rates—with the Public Utilities Commission.  NAPG takes advantage of the deregulation and the lack of regulatory oversight in the energy market when it deceptively charges consumers exorbitant rates for electricity and gas.  NAPG's rates are substantially higher than other ESCOs or local utilities.

<u>Electricity Rates</u>

Defendant NAPG engages in a bait and switch deception to lure consumers into switching to its electricity supply service by offering teaser rates that are much lower than regular rates.  NAPG offered Tully a rate that was slightly lower than his current rate and he agreed to switch.  NAPG sent Tully a "welcome letter" that informed him that it would provide competitive pricing: after the initial rate expired, the rate was set to become "variable."  A "Customer Terms of Service" stated that NAPG offered a "variable market based rate plan" which "may increase or decrease to reflect price changes in the wholesale power market."  NAPG guaranteed that the electricity rate "will not be above the Local utility's rate" for the introductory and guaranteed savings

month.

However, plaintiff found that market price of electricity declined or remained steady while NAPG's prices rose. NAPG failed to disclose that its rates are always higher than local utility rates after the shorter-term teaser rate expires. Plaintiff did not save on his electric bill after the initial month. During the time that plaintiff was a customer, the price that NAPG charged increased from $.07490 per kilowatt hour to .1356901 per kilowatt hour.

NAPG intentionally makes these misleading statements regarding its electric rates so that reasonable consumers like Plaintiff will rely upon its statements and switch their electric supplier to North American Power.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

3

Standing

Plaintiff alleges claims on behalf of himself and a putative class for violation of RIDPTA, the New Jersey Consumer Fraud Act, the Maryland Consumer Protection Act, the Maine Unfair Trade Practices Act, the New Hampshire Consumer Protection Act, the Georgia Fair Business Practices Act, Ohio Consumer Sales Practices Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Texas Deceptive Trade Practices-Consumer Protection Act; and for liability under the common law of these states. NAPG argues that plaintiff, as a Rhode Island resident, does not have standing to assert claims under the unfair trade practices statutes or common law of states other than Rhode Island. Plaintiff has voluntarily withdrawn these claims. Accordingly, these claims will be dismissed.

RIDTPA

Plaintiff alleges that defendant violated RIDTPA by representing that its rates were market-based and would change to reflect wholesale market prices; and by not disclosing that its rate could be higher than market prices. Defendant maintains that plaintiff has failed to state a plausible claim under the RIDTPA. Defendant argues that plaintiff has not alleged substantial aggravating circumstances or that defendant engaged in an unlawful business practice beyond normal reasonable business practices that victimized consumers. Defendant also asserts that plaintiff cannot demonstrate that defendant made certain misstatements.

RIDTPA provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Section 6–13.1-2. To redress such unlawful practices, RIDTPA provides a private right of action to "[a]ny person who purchases or

4

leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal...." Section 6–13.1–5.2(a).

With RIDTPA, "the Legislature intended to declare unlawful a broad variety of activities that are unfair or deceptive, as well as to provide a remedy to consumers who have sustained financial losses as a result of such activities." Park v. Ford Motor Co., 844 A.2d 687, 692 (R.I. 2004). To determine whether a trade practice is "unfair" under the RIDTPA, the Court should consider the following factors: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Ames v. Oceanside Welding and Towing Co., 767 A.2d 677, 681 (R.I. 2001). The plaintiff need not establish every factor, and it may prove unfairness by showing that a trade practice meets one factor to a great degree and more than one factor to a lesser degree. Long v. Dell, Inc., 93 A.3d 988, 1001 (R.I. 2014).

To prove that a trade practice is deceptive under the RIDTPA, a plaintiff must set forth three elements: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." Id. at 1003. In Long, the Rhode Island Supreme Court explained that a representation is material if it involves information that is important to consumers and likely to affect their choice of, or conduct

5

regarding, a product.

Defendant maintains that the terms of the contract expressly advise consumers that its rates are variable and that savings are not guaranteed. Construing the allegations in favor of the plaintiff, a reasonable consumer could understand defendant's terms to offer rates that would vary based on the market and changes in the wholesale costs. Plaintiff's complaint sets forth allegations asserting that defendant's electricity rates proved to be higher than the comparable market rates. The Court considers that the contractual terms are at least ambiguous, and that they could be construed as unfair or deceptive misrepresentations to induce consumers to contract with defendant. Accordingly, defendant has alleged a plausible violation of RIDPTA.

Breach of Contract

Defendant maintains that plaintiff has failed to state a claim for breach of contract based on defendant's alleged failure to charge rates as set forth in the contract. Defendant asserts that the alleged terms do not actually exist in the contract.

A plaintiff asserting a breach of contract claim must demonstrate that a valid contract existed, that a breach occurred, and that damages resulted from the breach. Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005). As discussed relevant to the RIDPTA claim, for purposes of this motion, the Court finds that the contractual terms are ambiguous. The Court will leave plaintiff to his proof.

Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues that plaintiff has failed to set forth a plausible claim of breach of the covenant of good faith and fair dealing. Defendant asserts that plaintiff has failed to allege facts to support his theory of discretionary price-setting in bad faith.

6

The implied covenant of good faith and fair dealing between the contracting parties is recognized in Rhode Island. Dovenmuehle Mortgage, Inc. v. Antonelli, 790 A.2d 1113, 1115 (R.I. 2001). However, the Rhode Island Supreme Court has recently iterated that a "breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract. McNulty v. Chip, 116 A.3d 173, 185 (R.I. 2015). Accordingly, this claim will be dismissed as an independent count of the complaint.

Unjust Enrichment

Plaintiff asserts his unjust enrichment claim as an alternative to his claim for breach of contract. To recover on quasi-contractual theory such as unjust enrichment, a plaintiff must prove that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof." Process Engineers & Constructors, Inc. v. DiGregorio, Inc., 93 A.3d 1047, 1053 (R.I. 2014). Defendant maintains that plaintiff has failed to allege that he provided any benefit to defendant beyond his payment pursuant to his contractual obligation. Plaintiff admits that he cannot recover on both his contract and unjust enrichment claims. However, he seeks to assert the unjust enrichment claim in the alternative if the contract is found to be illusory. The Court will allow plaintiff's alternative pleading to proceed. However, plaintiff is instructed to replead his unjust enrichment claim to clarify that he is pleading in the alternative.

## CONCLUSION

7

Based on the foregoing, defendant's motion to dismiss [doc. #59] is GRANTED in part and DENIED in part. The Court DISMISSES the claims brought pursuant to laws other than Rhode Island; the Court also DISMISSES the count asserting breach of the implied covenant of good faith and fair dealing as an independent action. Within 10 days of this ruling's filing date, plaintiff is instructed to file an amended complaint that is consistent with this ruling.

/s/Warren W. Eginton

WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2015 at Bridgeport, Connecticut.