# Exhibit 4

C3nWwisC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ANGELA WISE, on behalf of
     herself and all others
 4   similarly situated, et al.,

 5                  Plaintiffs,

 6            v.                            11 CV 7345 (WHP)

 7   ENERGY PLUS HOLDINGS LLC,

 8                  Defendant.

 9   ------------------------------x
                                        New York, N.Y.
10                                      March 23, 2012
                                        11:15 a.m.
11
     Before:
12
                      HON. WILLIAM H. PAULEY III,
13
                                        District Judge
14
                             APPEARANCES
15
     MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ PC
16        Attorneys for Plaintiffs
     BY:  JEFFREY I. CARTON
17        DOUGLAS G. BLANKINSHIP

18
     LOWENSTEIN SANDLER PC
19        Attorneys for Defendant
     BY:  ROBERT D. TOWEY
20        AURORA F. PARRILLA

21

22

23

24

25
```

C3nWwisC

```
 1              (Case called)

 2              MR. BLANKINSHIP:  Greg Blankinship and my colleague,

 3      Jeff Carton, for the plaintiff, your Honor.

 4              MR. TOWEY:  Good morning, your Honor.  Robert Towey

 5      and Aurora Perrilla, from Lowenstein Sandler.  And I also have

 6      with me today Jane Seely, general counsel of Energy Plus.

 7              THE COURT:  Good morning.

 8              This is oral argument on your motion to dismiss.  Do

 9      you want to be heard?

10              MR. TOWEY:  Yes, please.  Thank you, your Honor.

11              Your Honor, years ago, when I moved my law practice to

12      my current firm, I told my clients that if they moved their

13      cases with me, they'd receive the same reliable service, me,

14      their legal entity.  It's the same type of representation

15      that's raised in this case against Energy Plus.  Our firm's

16      goal is to be competitive with other firms over the long run,

17      like most businesses.  We offer valuable rewards to our clients

18      such as opportunities to partner with us in pro bono cases.  We

19      offer free CLE courses to in-house counsel, and, like other

20      businesses, like Energy Plus, our firm acquires attorneys from

21      the legal market.  We incorporate these thoughts into our

22      services that we provide and our rates vary from month to

23      month.  Clients' bills fluctuate; sometimes higher, sometimes

24      lower.

25              THE COURT:  But if, as alleged in this case, price is
```

Case 5:18-cv-00285-MAD-ATB Document 33-4 Filed 03/12/18 Page 4 of 20
Case 1:11-cv-07345-WHP Document 23-3 Filed 03/29/12 Page 3 of 10     3

C3nWwisC

1    the most important consideration for energy consumers and

2    Energy Plus' product is the same as its competitors' because

3    electricity is electricity wherever you get it, couldn't the

4    phrase "our goal is to be competitive over the long run"

5    reasonably be read as a representation about price?

6          MR. TOWEY:  No, your Honor.  Whether that

7    representation is made by a service provider, a manufacturer of

8    widgets, or a lawyer trying to compete in the market for

9    clients, the goal to be competitive is always the same.  I

10   can't think of any company, any supplier, or any service

11   provider that doesn't have the goal to be competitive.

12         THE COURT:  But there's a wide range in quality among

13   lawyers and absolutely no variation in the quality of the

14   electricity that comes through the wire.  Right?  Either it's

15   110 or 220.  And your client is selling electricity, not legal

16   services.

17         MR. TOWEY:  Your Honor, I would say to your Honor that

18   one could try to draw that distinction with regard to any

19   service or product but that when you focus on the words that

20   are used, regardless of what industry, that the goal to be

21   competitive is a general marketing goal and general statement

22   of aspiration of any person, company, or provider who is trying

23   to get customers and keep customers.

24         The difference here with regard to Energy Plus is that

25   not only does Energy Plus provide energy, it also provides

C3nWwisC

1    other rewards to its customers, and while the plaintiffs argue

2    that those rewards have no moment and shouldn't be considered,

3    that is one of the distinctions of Energy Plus from other

4    competitors.  Energy Plus, for example, partners with 150, or

5    so, other airlines, hotels, and service providers and offers to

6    its customers various ways to put its energy dollars to work so

7    that while customers pay for energy service, they're also

8    either earning frequent flier miles or earn those miles when

9    they become a customer, or they earn reward privileges at

10   restaurants and hotel chains.  They can opt for a plan that

11   allows them to put their energy savings to use for college

12   savings.  They can opt instead to have energy completely green

13   so that the sources of energy come solely from green sources to

14   the consumer.  Those have value.

15          So while the goal is to be competitive, a general

16   marketing goal, that particular statement also says that their

17   goal is to be competitive over the long run while offering

18   valuable rewards.  And to me, the focus, at least with regard

19   to that particular statement, which is challenged as puffery,

20   is that it's indistinguishable from other cases and other

21   words, marketing words that, frankly, I think, make the goal to

22   be competitive pale by comparison.  Words like "most

23   dependable, long-lasting truck on the planet," "blazing fast,"

24   "very high productive trades," "most cost effective prices,"

25   "prices as low as possible," and even the word "competitive" in

```
 1      a case which the plaintiff cited which I think is, frankly,

 2      distinguishable as an antitrust case, Silverman, but even in

 3      that case, the word "competitive," product being competitive,

 4      and I think when you add the word "goal," I think it suggests,

 5      your Honor, you even further attenuate the word "competitive"

 6      from anything that could be deemed actionable.

 7              So if your most dependable, long-lasting truck on the

 8      planet, instead you say it's your goal to be the most

 9      dependable, long-lasting truck on the planet, in either

10      instance, that would be nonactionable puffery as was found with

11      regard to that representation.

12              The same is true with regard to the offer of prices as

13      low as possible.  In that case, your Honor,

14      manufacture/supplier said, "Our prices are as low as possible,"

15      found to be nonactionable puffery.  Put a qualifier on that,

16      "our goal is to have prices as low as possible," I argue that

17      that further attenuates any finding that that particular phrase

18      or in our case the phrase "competitive" could be found to be

19      actual puffery.

20              In every instance cited with regard to the language

21      that's found to be nonactionable puffery, every manufacturer,

22      every supplier of service was comparing their product to the

23      market in in some way to attract customers, and in every

24      instance those language uses were found to be nonactionable.

25              As to the plaintiffs' claim with respect to
```

```
1    plaintiffs' use of the following wording, "Energy Plus offers a

2    market rate product, which means we buy electricity every day

3    on the open market, our approach is to purchase energy from

4    each of these markets on a daily and monthly basis, which

5    allows us to incorporate the most up-to-date energy costs from

6    each market into our rates.  As with all variable rate plans,

7    your supply price may fluctuate on a monthly basis lower or

8    higher to reflect the current state of each market and other

9    factors."

10          Considering this market statement as a whole and in

11   full context rather than as cherry-picked words as the

12   plaintiffs do in their brief, there is nothing misleading as a

13   matter of law about this statement.  First, Energy Plus

14   explicitly defines market rate in this very statement to mean

15   we, Energy Plus, buy electricity every day on the open market.

16          Second, Energy Plus expressly discloses that it

17   incorporates the most up-to-date energy costs into its rates

18   along with other factors.

19          Finally, Energy Plus advises customers that as with

20   all variable rate plans, the price fluctuates on a monthly

21   basis lower or higher to reflect the market and those other

22   factors.

23          This disclosure specifically satisfies the

24   requirements of GBL 349-e(7), which requires that all variable

25   rate charges shall be clearly and conspicuously identified in
```

C3nWwisC

1    marketing material.  The act does not require energy suppliers

2    to explain the basis or effect of its variable charges or how

3    much they will vary or why, as the plaintiff suggests.

4    Instead, the plaintiffs ask this Court to rewrite this

5    legislation and to impose disclosure obligations greater than

6    the law itself.

7         The plaintiffs equate Energy Plus' disclosure and

8    position in this motion with regard to the clear and

9    conspicuous disclosure of its variable rate product to the

10   argument of Greek philosophers, and I confess I chuckled when I

11   read that, and surely it was meant as a compliment.  However,

12   some may credit Yogi Berra, but actually it was the same Greek

13   philosophers who were credited with the phrase "It is what it

14   is," and that applies in this instance to a variable rate

15   product.  There is simply nothing more specific that a supplier

16   with a variable rate energy product must disclose with regard

17   to its rates other than the very fact that it's variable.

18        THE COURT:  I think I understand your argument there.

19   Let me ask you this.  Is Energy Plus challenging the

20   plaintiffs' allegations regarding whether the allegedly

21   deceptive statements caused injury?

22        MR. TOWEY:  Yes.

23        THE COURT:  Anything further?

24        MR. TOWEY:  Yes.

25        THE COURT:  I'd like to hear from your adversary.

Case 5:18-cv-00235-MAD-ATB Document 33-4 Filed 05/13/18 Page 9 of 20     8
Case 1:11-cv-07345-WHP Document 33-4 Filed 03/29/12 Page 9 of 19
C3nWwisC

1          MR. TOWEY:  Yes, your Honor.

2          With regard to that very issue, which ties very much

3     into the materiality issue, the complaint fails to connect the

4     plaintiffs' status as former customers of Energy Plus with any

5     exposure to the marketing statements.

6          THE COURT:  That could be easily cured though by a

7     repleading, couldn't it?

8          MR. TOWEY:  It could, although your Honor was not shy

9     about making that same ruling in Bildstein I, and, frankly, I'd

10    rather see the plaintiffs put up or shut up on that issue.

11    These were customers for very short periods of time, and all

12    they say in their pleading is that they were customers and now

13    the rates were too much.  But there's no linkage between those

14    two claims in terms of exposure to any specific marketing

15    statement or certainly any change in their consumer conduct,

16    and nor can they rely upon broad based allegations that somehow

17    there's this amorphous group out there that did rely upon it or

18    changed their conduct based upon exposure to those very

19    statements.

20          THE COURT:  All right, Mr. Towey.

21          MR. TOWEY:  Lastly is the unjust enrichment claim.

22          THE COURT:  I don't need to hear you on that.

23          MR. TOWEY:  Thank you, your Honor.

24          THE COURT:  Thank you.

25          Mr. Blankinship.

Case 5:18-cv-00235-MAD-ATB  Document 23-4  Filed 03/19/18  Page 10 of 20
Case 1:11-cv-07345-WHP  Document 23-4  Filed 03/29/12  Page 9 of 19      9
C3nWwisC

| | |
|---|---|
| 1 | MR. BLANKINSHIP:  Thank you, your Honor. |
| 2 | This case is simple, your Honor.  Energy Plus lures |
| 3 | consumers with promises of frequent flier rewards and same |
| 4 | reliable service they've already enjoyed and any reasonable |
| 5 | consumer would jump at that chance so long as the rates were |
| 6 | the same or at least competitive.  To that end, Energy Plus |
| 7 | uniformly states that it offers a market rate, and any consumer |
| 8 | would understand that to mean that Energy Plus' rates are |
| 9 | consistent with those in the market. |
| 10 | To reinforce that impression, Energy Plus makes a |
| 11 | series of representations, the effect of which, when taken in |
| 12 | context and in totality, is to impress upon consumers the |
| 13 | notion that Energy Plus actively seeks out the best and most |
| 14 | up-to-date market prices so that it can incorporate them into |
| 15 | that rate.  To that end, Energy Plus represents that it offers |
| 16 | a market rate product, which means you buy electricity every |
| 17 | day on the open market.  They claim their approach to buy |
| 18 | energy on the market which allows us to incorporate the most |
| 19 | up-to-date energy costs into our rate.  They say the rates |
| 20 | reflect the current state of each market and that their goal is |
| 21 | to be competitive over a long run. |
| 22 | Any reasonable juror could conclude that these |
| 23 | representations taken in totality would lead a consumer to |
| 24 | understand that the rates that they will be getting from Energy |
| 25 | Plus will be commensurate with those available in the market, |

Case 5:18-cv-00235-MAD-ATB   Document 33-4   Filed 03/19/18   Page 11 of 20
Case 1:11-cv-07345-WHP   Document 23-1   Filed 03/29/12   Page 10 of 19          10
C3nWwisC

```
1    certainly not two to three times as much.  And the specific

2    notion, the specific representation that their rates reflect

3    those in the market is belied by the fact that Energy Plus'

4    rates actually increase or remain steady when the rates in the

5    market decline.  That's a concrete allegation in the complaint

6    as to a misrepresented statement.  And, of course, Energy Plus

7    fails to inform consumers that its rates are substantially

8    higher than the market, that its rates do not reflect the

9    market, and that the rates are not, in fact, competitive at

10   all.

11            Of course, your Honor, we're here on the motion to

12   dismiss and whether reasonable consumers are deceived is

13   normally a question of fact to be left to a properly instructed

14   jury.  Under Twombly, so long as it's plausible that reasonable

15   consumers would be misled by defendant's misrepresentations and

16   omissions into believing that Energy Plus' rates were

17   reflective of the market and competitive rather than two to

18   three times the going rate, the motion should be denied.

19            THE COURT:  Why should the equitable remedy of unjust

20   enrichment be available?

21            MR. BLANKINSHIP:  Your Honor, we pled unjust

22   enrichment in the alternative.  Under 349-d(8), any violation

23   of Section 349 invalidates the contract.

24            THE COURT:  And that would entitle you to statutory

25   damages, wouldn't it?
```

C3nWwisC

1          MR. BLANKINSHIP:  It certainly would, your Honor.

2          THE COURT:  How would it entitle you to unjust

3    enrichment?

4          MR. BLANKINSHIP:  Your Honor, the violations we've

5    alleged in the complaint, namely 349-d(3), use of unfair and

6    deceptive practices, and d(7), failure to properly disclose

7    variable charges, those would cause injury to a plaintiff which

8    is the requirement under 349-d to be able to bring a claim.  We

9    certainly do expect to recover on this basis on behalf of the

10   class.

11         As discovery progresses and the case moves on, it may,

12   as unlikely as it is, end up that there are other violations of

13   349-d that don't necessarily cause in the same direct way an

14   injury to consumers, but that would nonetheless invalidate the

15   contract, thus allowing for an unjust enrichment claim.  We're

16   certainly not intending to seek recovery under both claims, but

17   we would suggest that it's a little early in the litigation to

18   dismiss the unjust enrichment claim.

19         THE COURT:  All right.  Anything further?

20         MR. BLANKINSHIP:  Your Honor, I would just like to

21   address the issue of 349-d and whether it's sufficient to

22   clearly and conspicuously identify variable charges by saying

23   "all of our charges vary," and that's all.

24         THE COURT:  349 doesn't require that they be

25   explained, does it?

Case 5:18-cv-00235-MAD-ATB Document 33-4 Filed 03/19/18 Page 13 of 20    12
Case 1:11-cv-03349-WHP Document 23 Filed 03/29/12 Page 12 of 19
C3nWwisC

 1              MR. BLANKINSHIP:  Your Honor.

 2              THE COURT:  It requires disclosure.

 3              MR. BLANKINSHIP:  It does require disclosure, your

 4    Honor.

 5              THE COURT:  Not explanation.

 6              MR. BLANKINSHIP:  Your Honor, I respectfully disagree.

 7    I think when the statute says you have to clearly and

 8    conspicuously identify your variable charges, one can't say

 9    that all of our charges are variable, and that was clearly not

10    the intent of the legislature.  If you look at the sponsoring

11    memo for 349-d, that memo indicates that the purpose of the

12    statute was to ensure fair marketing by ESCO's and to ensure

13    that consumers were able to make informed decisions as to what

14    their rates were going to be.  And to that end, the sponsoring

15    memo also identifies the use of variable charges as one of the

16    mechanisms by which consumers are unjustly charged exorbitant

17    rates.  To rule that one could identify variable charges by

18    saying all of our charges vary would be to eviscerate the

19    purpose of that statute.

20              Similarly, the Public Service Commission, in issuing

21    implementing regulations pursuant to 349-d, clearly stated that

22    it imposed additional obligations to make disclosures in simple

23    and clear language, and it requires, regarding price of

24    electricity, and that all variable rates be identified.  I

25    would suggest that that indicates that the legislature intended

C3nWwisC

1    more than just a reductive statement that our rates vary.  It

2    certainly doesn't protect consumers from the potential ravages

3    of improperly charged variable rates.

4         THE COURT:  I think I understand your arguments.

5    Thank you, Mr. Blankinship.

6         MR. BLANKINSHIP:  Thank you, your Honor.

7         THE COURT:  Anything further, Mr. Towey?

8         MR. TOWEY:  Just briefly, your Honor.

9         Again, just focusing on the issue of puffery and the

10   goal of being competitive, whether there is an energy company

11   or a runner or a race car driver or a lawyer looking to be

12   competitive in a market, there's always going to be a top, a

13   bottom, and a middle range.  The goal of being competitive

14   doesn't mean you have to be by definition anywhere in there.

15   You could be the fastest, the slowest, but if your goal is to

16   be the fastest, you do your best to be the fastest.  Does it

17   mean you'll win every race?  No.  And again, it goes back to

18   the intentional use of the word "goal," as a corporate goal as

19   opposed to a commitment that you are the lowest and even in

20   instances where companies have said we are the lowest and

21   courts have said even that is not actionable puffery.

22        The other arguments, your Honor, are what they are.

23   The puffery argument really requires this Court to look at this

24   language and to make a judgment call, and I believe there's a

25   substantial body of case law that supports the motion to

Case 5:18-cv-00285-MAD-ATB Document 33-1 Filed 03/19/18 Page 15 of 20
Case 1:11-cv-07345-WHP Document 23-1 Filed 03/29/12 Page 14 of 19    14
C3nWwisC

1   dismiss on all of the issues, but especially on the puffery

2   issue.

3          THE COURT:  Thank you, Mr. Towey.

4          This Court has reviewed all the parties' motion papers

5   and considered their arguments and I'm prepared to rule.

6          Plaintiffs Angela Wise and Gideon Romm bring this

7   putative class action on behalf of New York consumers who

8   purchased household electricity from defendant Energy Plus

9   Holdings LLC, between October 18, 2008 and the present.

10  Plaintiffs assert claims under the New York General Business

11  Law sections 349 and 349-d and a claim for unjust enrichment.

12  Energy Plus moves to dismiss.

13         On a motion to dismiss, this Court accepts all factual

14  allegations in the complaint as true and construes all

15  reasonable inferences in plaintiff's favor.  ECA Local 134 IBEW

16  Joint Pension Trust of Chicago v. J.P. Morgan Chase & Co., 553

17  F.3d 187, 196 (2d Cir. 1989).  Nevertheless, "a complaint must

18  contain sufficient factual matter, accepted as true, to state a

19  claim for relief that is plausible on its face."  Ashcroft v.

20  Iqbal, 129 S.Ct. 1937, 1949 (2009).

21         To state a claim under 349 or 349-d, a plaintiff must

22  plead, one, that the defendant's challenged act, practice was

23  consumer-oriented, two, that it was misleading or deceptive in

24  a material way, and, three, that the plaintiffs suffered injury

25  as a result of the deceptive practice.  Bildstein v. MasterCard

C3nWwisC

Int'l, Inc., 329 F.Supp.2d 410, 413 (S.D.N.Y. 2004).

2           A deceptive act or practice under sections 349 and
3   349-d is one that is "likely to mislead a reasonable consumer
4   acting reasonably under the circumstances."  Oswego Laborers'
5   Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26
6   (1995).  A deceptive practice is material if it "involves
7   information that is important to consumers and, hence, likely
8   to affect their choice of, or conduct regarding, a product."
9   Bildstein, 329, F.Supp.2d at 414.

10          Puffery, however, is not actionable.  Verizon
11  Directors Corp. v. Yellow Book, Inc., 309 F.Supp.2d 401, 405-06
12  (E.D.N.Y. 2004).  "Puffery includes generalized or exaggerated
13  statements which a reasonable consumer would not interpret as a
14  factual claim upon which he could rely."  Fink v. Time Warner
15  Cable, 810 F.Supp.2d 633, 644 (S.D.N.Y. 2011).  And while it is
16  appropriate to dismiss claims of deceptive business practices
17  in certain circumstances, generally "whether defendants'
18  conduct was deceptive or misleading is a question of fact."
19  Sims v. First Consumers National Bank, 303 A.D.2d 288, 289 (1st
20  Dep't 2003).

21          Energy Plus argues that the challenged statements are
22  either puffery or are not misleading.  In cases involving
23  deceptive marketing material, the "entire mosaic should be
24  viewed rather than each tile separately."  Time Warner Cable,
25  Inc. v. DirecTV, Inc., 475 F.Supp.2d 299, 305 (S.D.N.Y. 2007).

C3nWwisC

1    Viewed together the allegedly deceptive statements plausibly

2    may be read by a reasonable consumer as a representation that

3    Energy Plus' prices are at least relatively comparable both to

4    competitors' prices and to prevailing market rates.  Given that

5    the plaintiffs have alleged that Energy Plus' rates in fact are

6    two to three times greater and that Energy Plus' rates rise or

7    remain steady during some periods when market prices decline,

8    the plaintiffs have stated a plausible claim that the

9    challenged statements are deceptive.  Further, Energy Plus'

10   failure to disclose the alleged truth about its prices

11   plausibly renders its other statements misleading.

12   Accordingly, the plaintiffs have stated a claim based on Energy

13   Plus' omissions.  See Henry v. Rehab Plus, Inc., 404 F.Supp.2d

14   435, 445 (E.D.N.Y. 2005).

15            The plaintiffs also adequately allege that Energy

16   Plus' misstatements are material by alleging that price is the

17   most important consideration for energy consumers.  The

18   plaintiffs need not plead reliance on Energy Plus' statements.

19   Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  However,

20   the plaintiffs have failed to adequately plead that Energy

21   Plus' misstatements caused their injury because there's no

22   allegation that the named plaintiffs believed that they would

23   be charged less than they actually were.  See Stutman, 95

24   N.Y.2d at 30.  Accordingly, the plaintiffs' sections 349 and

25   349-d(3) claims are dismissed without prejudice to replead that

C3nWwisC

1    Energy Plus' misstatements caused their injury.

2            With regard to plaintiff's allegation that Energy Plus

3    has failed to clearly and conspicuously identify its variable

4    charges as required by Section 349-d(7), Energy Plus' motion to

5    dismiss is granted.  The statute requires that variable charges

6    be "identified," not that they be "explained," or that their

7    "basis" be identified.  Section 349-d elsewhere makes a

8    distinction between the obligation to identify and the

9    obligation to explain.  See N.Y. General Business Law Section

10   349-d(2).  Further, there is little in the legislative history

11   of the statute or in the Public Service Commission's

12   regulations (known as the Uniform Business Practices) to

13   clearly suggest that Section 349-d(7) is meant to address the

14   content of an energy supply company's identification of its

15   variable charges rather than the plain fact that they are

16   variable.  Most of the references to Section 349-d(7) and the

17   legislative history merely mimic the language of the statute.

18   In any event, where, as here, the proper interpretation of a

19   statute is "dependent only on accurate apprehension of

20   legislative intent" rather than on an agency's specialized

21   knowledge or expertise, an agency's interpretation of the

22   statute is afforded little weight.  Kurcsics v. Merchants

23   Mutual Insurance Co., 403 N.E.2d 159, 163 (N.Y. 1980).  And

24   while the purpose of Section 349-d is to protect consumers and

25   allow them to make informed decisions, it is not unreasonable

1    to think that the New York legislature believed that those

2    roles could be advanced when a consumer is clearly made aware

3    that a particular charge is variable.

4           There is no allegation here that Energy Plus'

5    statements are buried in fine print, illegible, or otherwise

6    hidden from consumers, and, for whatever the statements lack in

7    detail, they plainly identify that Energy Plus' supply prices

8    are variable.  Under these circumstances, the plaintiffs have

9    failed to state a claim that Energy Plus violated its

10   obligation to clearly and conspicuously identify its variable

11   charges.

12          Finally, Energy Plus' motion to dismiss the

13   plaintiffs' unjust enrichment claim is granted.  "Unjust

14   enrichment is an equitable claim that is unavailable where an

15   adequate remedy at law exists."  Fed. Treasury Enter.

16   Sojuzplodoimport v. Spirits Int'l N.V., 400 F.App'x 611, 613

17   (2d Cir. 2010).  Here, the plaintiffs have an adequate remedy

18   at law under the consumer protection statutes.  Thus, their

19   unjust enrichment claim is dismissed.

20          This constitutes the decision of this Court.  I will

21   enter a short order on the docket.  You have a discovery

22   schedule that's in place.  So continue to proceed with it, and

23   to the extent that the plaintiff repleads on the reliance issue

24   as directed by this Court, that amended complaint should be

25   filed within two weeks.  And because I've dismissed certain

C3nWwisC

 1  claims, don't replead them.

 2          Anything further?

 3          MR. TOWEY:  No.  Thank you, your Honor.

 4          MR. BLANKINSHIP:  No.  Thank you, your Honor.

 5          THE COURT:  All right.  Have a good weekend.

 6          (Proceedings adjourned)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25