# Exhibit 5

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 2 of 48
Case 3:14-cv-01524-VAB   Document 46-5   Filed 06/07/18   Page 2 of 48

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

– – – – – – – – – – – – – – – x

LYDIA GRUBER                       :  No. 3:14cv–1828 (SRU)
                                   :  915 Lafayette Boulevard
           vs.                     :  Bridgeport, Connecticut
                                   :
                                   :  April 7, 2015
STARION ENERGY, INC.               :

– – – – – – – – – – – – – – – x


MOTION HEARING


B E F O R E :

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S :

     FOR THE PLAINTIFF:

          IZARD NOBEL, LLP
               29 South Main Street, Suit 215
               West Hartford, Connecticut  06107
          BY:  ROBERT A. IZARD, ESQ.

     FOR THE DEFENDANT:

          ECKERT SEAMANS CHERIN & MELLOTT
               10 Bank Street, Suite 700
               White Plains, New York  10606
          BY:  KEITH E. SMITH, ESQ.



               Susan E. Catucci, RMR
               Official Court Reporter
               915 Lafayette Boulevard
           Bridgeport, Connecticut  06604
                Tel: (917)703-0761

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 3 of 48
Case 3:14-cv-01574-VAB   Document 46-5   Filed 06/03/15   Page 3 of 48

2

```
1                     11:00 o'clock A. M.)

2              THE COURT:  Good morning.  We're here in Gruber

3    v. Starion Energy.  Could I have appearances, please?

4              MR. IZARD:  Robert Izard for the plaintiff, Your

5    Honor.

6              THE COURT:  Thank you.

7              MR. SMITH:  Keith Smith, Eckert Seamans Cherin &

8    Mellott for the defendant, Starion Energy, Inc.

9              THE COURT:  Thank you.

10             MS. ISAAC:  Hi.  Alexdria Isaac, General Counsel

11   for Starion Energy.

12             THE COURT:  Very good, thank you.  And we're

13   here on the motion to dismiss.

14             Let me just take up a side matter first.  We

15   have the motion to certify the class and to stay briefing.

16   This is Document Number Seven.  My understanding is that

17   was filed as a protective matter, and as I've indicated in

18   writing in other cases and orally in another similar case

19   to this one, I don't believe that the 7th Circuit is

20   correct in the need for a protective motion for class

21   certification.  So, I'd be inclined to deny that motion

22   without prejudice to later filing.

23             Any objection?

24             MR. IZARD:  No objection, Your Honor.

25             THE COURT:  All right, that's what we'll do.
```

Case 3:14-cv-01574-VAB   Document 46-5   Filed 06/07/18   Page 4 of 48

1          Okay.  So let's take up the motion to dismiss.

2   Mr. Smith, let me just comment that much of the opposition

3   here is seemingly based almost more on a motion for

4   summary judgment than a motion to dismiss.  It doesn't

5   appear to me that you're accepting the well-pleaded

6   allegations of the complaint.  You're, in effect, arguing

7   the merits and I just don't think I can consider a number

8   of the matters that you've introduced.

9          So, I don't know if you disagree with that or if

10  you think there's some reason why you think I can, but

11  that's a concern right upfront.

12          MR. SMITH:  Shall I approach the podium?

13          THE COURT:  Wherever you're comfortable is fine.

14          MR. SMITH:  Your Honor, the defense has two

15  documents they want to hand up; one which is Exhibit A to

16  our motion, which is the contract at issue in terms of

17  service to Ms. Gruber, and the second one is  --

18          THE COURT:  This one?

19          MR. SMITH:  Yes.

20          THE COURT:  I've got that.

21          MR. SMITH:  And we'd like to have it separate

22  from the pack.

23          THE COURT:  Right, I agree.

24          MR. SMITH:  And second are the Table One and

25  Chart One of the reply brief.

Case 5:18-cv-00235-MAD-ATB  Document 33-5  Filed 03/19/18  Page 5 of 48
Case 3:17-cv-01524-VAB  Document 46-5  Filed 05/07/18  Page 5 of 48

4

 1          THE COURT:  Fair enough.

 2          MR. SMITH:  And the plaintiff has two documents.

 3   Do you want to represent them --

 4          MR. IZARD:  Sure.

 5          Yes, Your Honor, the first is a copy of the

 6   chart from the complaint, and then the second is what

 7   we've done is we've plotted the chart that the defendant

 8   introduced with their lowest variable rate and the highest

 9   variable rate.  The lowest is the blue line and the

10   highest is the red line, and we plotted the plaintiff's

11   rate from table one of the defendant's reply brief.

12          THE COURT:  All right.

13          MR. SMITH:  Your Honor, plaintiffs have filed

14   what amounts to virtually four complaints in a variety of

15   matters against a variety of energy companies.  Each

16   allege the same thing, that the energy companies were

17   gouging their clients by overcharging them on variable

18   rate policies, which in and of itself begs the question of

19   how all those companies could be doing that and that's not

20   being a market for the price of electricity.

21          But what's different in each case is the

22   contract itself.  And, in particular, with regard to

23   Starion, the contract doesn't say anything about wholesale

24   market rate, wholesale market conditions, anything about

25   wholesale price.  The contract and the complaint, by the

Case 5:18-cv-00235-MAD-ATB  Document 33-5  Filed 03/19/18  Page 6 of 48
Case 3:17-cv-01574-VAB  Document 46-1  Filed 06/07/18  Page 9 of 48

5

1    way, Your Honor, references the wrong terms of service.

2            In doing the formal complaint, they pulled the

3    terms of service apparently off the internet, which didn't

4    exist at the time that Ms. Gruber signed up with us and

5    the time that she canceled, so the terms of service

6    doesn't apply to Ms. Gruber.  The terms of service that

7    does is the one attached to Exhibit A to the motion to

8    dismiss.

9            THE COURT:  No, Exhibit B-2, standard

10   electricity contract, does use the phrase "wholesale power

11   market."

12           MR. SMITH:  That was not the one for Ms. Gruber.

13   That's when we very first applied for our license, which

14   we attached to show that the state does get these

15   agreements and have to, you know, approve them -- when

16   they approve the license, they approve the agreement and

17   every time we change the agreement, we have to submit the

18   statement with the annual filing.  So they're -- even

19   though it's a deregulated energy market, it's not without

20   regulation; in fact, it's heavily regulated.  In terms of

21   the practices of the individual companies, it's heavily

22   regulated.

23           But as to Starion's contract with Ms. Gruber,

24   the sole language as it relates to the variable rates and

25   how that affects price is that a variable rate will be

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 7 of 48
Case 3:17-cv-01524-VAB   Document 46-5   Filed 06/07/18   Page 9 of 48

6

1    calculated monthly based upon Starion's variable price

2    methodology.  That's it.  Nothing about any other terms or

3    conditions of what that variable price methodology is made

4    up of.

5              THE COURT:  So, if the methodology is we can

6    double our profit every month, then the customer's stuck

7    except for canceling the contract.

8              MR. SMITH:  Well, it's a month to month

9    contract.  Essentially you can cancel at any time.

10             THE COURT:  Right, so if you don't like the

11   profit every month, that's your methodology.  If the

12   customer doesn't like it, they just back out.

13             MR. SMITH:  And we make it very easy for them

14   because the following sentence is, "You should contact

15   Starion by telephone at 1-800 or by email at Service at

16   Starion Energy for your most current rate information."

17             THE COURT:  Right.

18             MR. SMITH:  So we tell them, look, you want to

19   know what's the current information, call, email us.  You

20   can also go on PURA's website and get, not only our rate

21   information, the rate information of all our competitors

22   but all the current offerings of all of our competitors at

23   the same time.  That's what an informed consumer would do.

24             And then we specifically go on to say that the

25   price of your LDU, which would be Connecticut Light and

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 8 of 48
Case 3:14-cv-01574-VAB   Document 46-5   Filed 06/07/18   Page 9 of 48

7

1    Power, standard offer service electricity rate will also

2    likely change from time to time, and therefore, Starion

3    cannot guarantee savings over the LU's rate under this

4    agreement.

5           We tell the consumer, we can't guarantee we're

6    going to save you money over what you can get from your

7    regular utility.

8           THE COURT:  Right, because they have a fixed

9    right and your rate varies with the cost of electricity.

10          MR. SMITH:  They have a fixed rate with a

11   guarantee of no loss.  They can't lose money --

12          THE COURT:  I'm focusing on yours, right?

13          MR. SMITH:  Yes.

14          THE COURT:  So yours is, the hope for the

15   consumer is you can either pick this rate at which the

16   provider will not lose money or you can take a gamble on

17   the market and hope that the wholesale price goes down and

18   go with us and get a variable rate, right?

19          MR. SMITH:  Correct, Your Honor.

20          THE COURT:  But if the rate never goes down --

21          MR. SMITH:  But that theory don't apply to Ms.

22   Gruber, because if --

23          THE COURT:  Does it apply to the class?

24          MR. SMITH:  Well, Ms. Gruber has to have a

25   complaint that stands on her own.  For purposes of the

1    motion to dismiss, we're not dealing with class

2    certification right now, but for purposes of the motion to

3    dismiss, Ms. Gruber must have --

4                    THE COURT:  Okay.

5                    MR. SMITH:  -- if you look at table one --

6                    THE COURT:  Table one is not in the complaint.

7                    MR. SMITH:  Table one is based on the data that

8    they rely upon at this point.

9                    THE COURT:  No, no, no.  What you're doing now

10   is you're introducing new -- this is the point I made at

11   the beginning, this is a great chart for a summary

12   judgment motion, but how is it a great chart for a motion

13   to dismiss?  At the motion to dismiss, I look at the

14   complaint and decide whether it states a cause of action

15   or not.

16                    MR. SMITH:  Or what they rely upon in the

17   complaint, and what they rely upon in the complaint, what

18   they represent to the Court in the complaint as a

19   wholesale market rate is --

20                    THE COURT:  Did they rely upon this chart in the

21   complaint?

22                    MR. SMITH:  They relied upon the ISO New England

23   all hours LMP price, day ahead, all hours, average LMP

24   price, which they break down to the kilowatt hour.

25                    THE COURT:  Okay.

Case 5:18-cv-00235-MAD-ATB  Document 33-5  Filed 03/19/18  Page 10 of 48
Case 3:14-cv-03724-VAP-ATB  Document 46 33-5  Filed 03/07/18  Page 10 of 48

9

1        MR. SMITH:  That is what they rely upon.

2        THE COURT:  Okay.

3        MR. SMITH:  So, the reasonable extension of that

4   is, what the rest of that document they rely upon says and

5   the rest of that document that they rely upon talks about

6   off peak/on peak hours and rates, and the day ahead hourly

7   rate --

8        THE COURT:  Does that document have Gruber rates

9   during open account with Starion?  Or are you -- you're

10  extrapolating, you're coming in and you're taking a

11  document that is referenced in the complaint and you're

12  creating another document based upon the document that's

13  mentioned in the complaint.

14        MR. SMITH:  No, no.

15        THE COURT:  No?

16        MR. SMITH:  I apologize, Your Honor.  The last

17  two columns, Ms. Gruber's rate, are based upon her bills.

18        THE COURT:  Are her bills in the complaint?

19        MR. SMITH:  No, but she's -- her, the basis of

20  her entire complaint is we overbilled her.

21        THE COURT:  Okay.  This would be a great

22  argument at summary judgment.

23        MR. SMITH:  See, I don't believe that, Your

24  Honor.  I believe Your Honor is free to accept the bills

25  because the complaint relies on the bills.  If not for the

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 11 of 48
Case 3:14-cv-00572-VAB   Document 46-3   Filed 05/07/15   Page 11 of 48

10

1    bills, we could not have overcharged her or overbilled

2    her.

3              THE COURT:  Okay.  Where is there any mention of

4    bills in the complaint?  It's talking about overcharges.

5              What you're doing is you're saying they are

6    going to lose eventually.  That may be true.  They may

7    well lose this case.  When you come in with evidence and

8    there's depositions and you've got your experts and

9    everything else, they may lose.  That's not what I'm

10   deciding today.

11             MR. SMITH:  I understand that, Your Honor.  But

12   Your Honor's free to accept the -- if we overcharged her,

13   we did so by billing her and having her paying too much

14   money.

15             THE COURT:  So you have an affidavit that says

16   we didn't overcharge her so much money, and it's a

17   wonderful summary judgment document.

18             MR. SMITH:  It's not an affidavit that we didn't

19   charge her too much money; it's, you know, she is relying

20   upon what we charged her.  The basis of her complaint is

21   we overcharged her and, therefore, she's relying upon what

22   we charged her.  Yet, they don't tell the Court what we

23   charged her.  They tell the Court we had this high rate of

24   .219 for some period of time, but that was never

25   overcharged --

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 12 of 48
Case 3:14-cv-00572-AVC   Document 46-3   Filed 05/07/15   Page 12 of 48

11

1    THE COURT:  If I have an employment case and the

2    allegations are my boss called me racially discriminatory

3    names and they don't say that the boss also said wonderful

4    things about them, do I consider those wonderful things on

5    the motion to dismiss?  No.  They are not in the

6    complaint.

7    You don't, you don't get to bring in whatever

8    documents you want that relate to the subject matter of

9    the claim.  I have to look at the complaint.

10    MR. SMITH:  It's not such relating to the

11    subject matter, Your Honor.  It's the heart and soul of

12    her complaint is that we overbilled her.

13    THE COURT:  The heart and soul of her complaint

14    is that it's an unfair trade practice to intimate, if not

15    represent, that you're going to vary your rates with the

16    wholesale cost of electricity and then not to do that.

17    Now, that can be true or not for the class,

18    regardless of what Ms. Gruber was charged in October of

19    2013.

20    MR. SMITH:  How can Ms. Gruber have standing to

21    make that claim unless she was herself overbilled?

22    THE COURT:  No, the claim is that her rate did

23    not vary as it was supposed to vary.  Now, if you can show

24    that with this chart, I'm going to be surprised.

25    MR. SMITH:  Well, I can -- part of that claim is

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 13 of 48
Case 3:14-cv-00372-AVC   Document 46-3   Filed 05/07/15   Page 13 of 48

12

 1    that the price went up and never went down.  I can prove

 2    that from this chart.

 3              THE COURT:  Okay.

 4              MR. SMITH:  All right?  If you look at the rates

 5    that they do rely upon, those rates kept going up and up

 6    and up.  Ms. Gruber quit, canceled the contract in January

 7    of 2013.

 8              THE COURT:  Right.

 9              MR. SMITH:  She didn't stay around long enough

10    for her rates to ever go down.  So, even looking at the

11    day at all hours, average LMD rate, which, by the way, is

12    never a rate that anyone has ever paid, it is not an

13    actual rate.  It's not even an weighted average rate.  But

14    the rates kept going up, up, up --

15              THE COURT:  So you're saying that had she

16    remained a customer, her rate could have gone down but it,

17    in fact, didn't go down.

18              MR. SMITH:  It couldn't have because she didn't

19    remain a customer.

20              THE COURT:  Okay.  How does that help you?  If

21    you're saying -- on the one hand, you're trying to tie it

22    back to Gruber and what her situation was; on the other

23    you're saying, well, her situation was affected by the

24    fact that she withdrew.

25              MR. SMITH:  Correct.

Case 3:14-cv-00235-MAD-ATB   Document 46-5   Filed 03/19/18   Page 14 of 48

1          THE COURT:  Okay.  So --

2          MR. SMITH:  She can't have a claim that's based

3   on a theory that the rate went up and never went down,

4   because the rate should have gone down during the period

5   of time she was our customer.  The rate only went up, even

6   -- your theory is it's not the wholesale rate, which our

7   contract doesn't say anything about.  But the wholesale

8   rate that they talk about is going up for the few months

9   that she was our customer.

10          THE COURT:  Okay.

11          MR. SMITH:  And she canceled.

12          THE COURT:  Okay.

13          MR. SMITH:  So, you know, her rate went up, the

14   wholesale rate went up, they didn't go down, so how could

15   that theory that it went up and never went down apply to

16   Ms. Gruber?  It can't.

17          THE COURT:  Okay.  So they need another

18   plaintiff.

19          MR. SMITH:  Possibly, if they can find another

20   plaintiff.  But this plaintiff, I have to look at the

21   complaint and I have to look at this plaintiff.

22          THE COURT:  Right.

23          MR. SMITH:  I can't deal with class

24   certification issues just yet, but this plaintiff --

25          THE COURT:  So what you're saying is, again, at

Case 5:18-cv-00235-MAD-ATB  Document 33-5  Filed 03/19/18  Page 15 of 48
Case 3:14-cv-01572-VAB  Document 46-3  Filed 05/07/15  Page 15 of 48

14

 1    summary judgment you'd be able to come in and show that

 2    the allegations of the complaint are false.  That's what

 3    you're saying.

 4             MR. SMITH:  I believe I can show that now, and I

 5    believe Your Honor --

 6             THE COURT:  Right.

 7             MR. SMITH:  -- can accept that.

 8             THE COURT:  How can I accept that on a motion to

 9    dismiss?  The classic formulation of a motion to dismiss

10    is treating all of the allegations of the complaint as

11    true, drawing all reasonable inferences in favor of the

12    plaintiff, have the plaintiff state a cause of action.

13             MR. SMITH:  Yes, but Your Honor is allowed to

14    accept -- for example, the contract, its terms of service

15    are attached.  Your Honor is allowed to accept the

16    contract in a motion to dismiss.

17             THE COURT:  Correct.

18             MR. SMITH:  Because the complaint relies upon

19    it.

20             THE COURT:  That is correct.

21             MR. SMITH:  And I believe that the complaint

22    relies upon the bills that were charged.  The complaint

23    relies upon the charges to her and that can't be without

24    bills to her.  So for the same reason that the Court can

25    accept the contract --

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 16 of 48
Case 3:14-cv-00235-MAD-ATB   Document 46-3   Filed 03/13/18   Page 16 of 48

15

1         THE COURT:  There's no reference anywhere in the

2   complaint about the bills, so what you're saying is we

3   will be able to prove that the allegations of the

4   complaint are false.  That is true of 80 or 90 percent of

5   the complaints that are brought here.  The defense

6   believes they can disprove the merits of the claim at the

7   appropriate time, and I understand that is your position.

8   But the fact that you think you can disprove the merits of

9   the claim doesn't mean the claim doesn't get past the

10  motion to dismiss.

11         MR. SMITH:  If I may --

12         THE COURT:  Take your time.

13         (Pause)

14         MR. SMITH:  In that case, Your Honor, I move to

15  dismiss because the complaint doesn't say anything about

16  how Ms. Gruber was deceived or how this deception

17  allegedly applied to her.  It just talks in

18  generalizations about the class, it talks in

19  generalizations about Starion's highest rate.  They don't

20  actually tell the Court that in that same chart that we're

21  required to give to the state, and it's on our website,

22  it's on the state's website, it is also our lowest

23  variable rate.

24         THE COURT:  Right.  So you want them to plead

25  the evidence that's favorable to your client, and they can

1    choose to do that or they can choose not to do that.

2         MR. SMITH:  No, I'm arguing there's no facts

3    pled that Ms. Gruber was actually deceived.  The facts are

4    all generalized as to what, you know, a class might have

5    been deceived.  There is nothing as to Ms. Gruber.

6    There's nothing to say that Ms. Gruber was promised this

7    rate and was charged, you know, another.  There's nothing

8    to say that Ms. Gruber's rates were higher or lower than

9    the wholesale market rate that they want to rely upon, the

10   Starion contract, what the Starion contract says as to its

11   variable rate methodology.

12         There's nothing specific about Ms. Gruber's

13   charges and Ms. Gruber's rates and Ms. Gruber's bills to

14   support a claim that Ms. Gruber herself was in any way

15   deceived under a Connecticut Unfair Trade Practices or

16   that we violated a contract, our obligations of good faith

17   and fair dealing or unjust enrichment, because, as Your

18   Honor just pointed out, there's no actual facts as to what

19   happened to Ms. Gruber and what charges she was subjected

20   to -- what, you know, onerous, deceptive information she

21   was subjected to.

22         So, at the very least, I would ask for -- that

23   the plaintiff be forced to amend the complaint to provide

24   a more definitive statement as to how it is Ms. Gruber was

25   actually deceived by any of this.

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 18 of 48
Case 3:14-cv-06512-MAA-TB   Document 46-3   Filed 05/07/18   Page 18 of 48

17

1          But getting back to the contract, our contract

2     just says a variable rate will be calculated monthly based

3     on a Starion variable price methodology.

4          THE COURT:  Right.

5          MR. SMITH:  What about that would cause Ms.

6     Gruber or anyone else to say that there's some wholesale

7     rate that I can go out and try and find and that that's

8     what Starion means by variable price methodology.

9          There's nothing, there's no representation that

10    was ever made to Ms. Gruber other than that contract, and

11    that contract doesn't represent that our rates are tied to

12    anything.  That contract says, you know, you can call and

13    find out what our rate is.

14         THE COURT:  We can do whatever we want.  Our

15    methodology --

16         MR. SMITH:  It's not whatever we want, Your

17    Honor.  That implies that we can just charge ten dollars a

18    kilowatt hour.  We're not saying that, no one's saying

19    that.  We're saying that we have a variable rate that is

20    adjusted.  We're not saying -- it doesn't say how it

21    adjusts.  We're not deceiving you.  The question is did we

22    deceive her.  We didn't deceive her, we didn't say it's

23    going to adjust this way.

24         THE COURT:  The question is whether a reasonable

25    consumer, reading this language, would understand that if

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 19 of 48
Case 3:14-cv-05724-VAP   Document 46-5   Filed 05/07/15   Page 19 of 48

18

1    the cost of electricity to the supplier goes down, then

2    the charge by the supplier would also go down.

3              MR. SMITH:  And I understand --

4              THE COURT:  I think that's a reasonable reading

5    of this language.

6              MR. SMITH:  I don't think that's a reasonable

7    reading of our language.  That may be a reasonable reading

8    of some of the other defendant's language in some of the

9    other cases, but this doesn't say anything about, that

10   it's based on what our cost of electricity is or what

11   the --

12             THE COURT:  So, you have no obligation under

13   this contract to any consumer to do anything other than

14   set forth what your price is and allow them to look at it

15   every month on the website.

16             MR. SMITH:  Our contractual -- that is our

17   contractual obligation, Your Honor, yes.

18             THE COURT:  Right.  So your contractual

19   obligation is we will charge you something and you can

20   look it up.  That's the, that's the contract?

21             MR. SMITH:  Yes, Your Honor.  I mean --

22             THE COURT:  Okay, fine.

23             MR. SMITH:  -- and that was the contract at

24   issue in the Slack v. Suburban Propane case, in more far

25   more egregious circumstances, where the person, the driver

Case 3:14-cv-00235-MAD-ATB   Document 46-5   Filed 05/07/15   Page 20 of 48

```
1    showed up to fill your propane tank and wouldn't tell you

2    what the price is --

3              THE COURT:  Right.

4              MR. SMITH:  -- but you could call and they would

5    tell you that.

6              THE COURT:  I think maybe I disagree with the

7    reasoning in that case.

8              MR. SMITH:  All right.  You may disagree with

9    the reasoning of the case, but that case had a contract

10   that specifically --

11             THE COURT:  After we fill your tank, we'll tell

12   you what we're going to charge you.

13             MR. SMITH:  Fairly egregious circumstances.

14   We're not doing that here.

15             THE COURT:  Well, you kind of are.  You're

16   saying you can look it up, but there's no clue, according

17   to you, there's no clue what the rate will be, it's just

18   whatever we haven't published.  So, you know, next month

19   it could be whatever our variable price methodology,

20   whatever that might mean, is.

21             MR. SMITH:  But the question before the Court

22   is, how can a reasonable consumer read that language, a

23   variable rate calculated monthly based on Starion's

24   variable price methodology, to be tied to a specific

25   factor.
```

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 21 of 48
Case 8:17-cv-00375-MAD-ATB   Document 46-3   Filed 05/07/18   Page 21 of 48

20

1          THE COURT:  Well, when something varies, there's

2     two ways you can vary.  You can vary by being connected to

3     something else.  You can have a mortgage rate that is tied

4     and varies with the prime rate, for example.

5          MR. SMITH:  All right.

6          THE COURT:  And the allegation here is that the

7     logical understanding is that this rate varies with the

8     wholesale price and/or the price of electricity to the

9     supplier.  Doesn't have to vary.  It can vary completely

10    randomly which is apparently what your argument is this

11    language means.  It varies -- next month we decide to

12    increase it, maybe we'll decide to decrease it; it's just

13    whatever we decide to do.

14         MR. SMITH:  Well, you have to take that in

15    context with the following sentence, which explains how

16    you can find out what our current offerings are.

17         THE COURT:  You can find out what it is but you

18    can't find out, according to this language, how you decide

19    what it is, because you're telling me that the first

20    sentence is not binding on you.  You can do whatever you

21    want.

22         And so next month it's three times as high as it

23    was last month.  You can look it up online.  Next month it

24    might be a little lower.  You can look it up online.  But

25    you can't look up online apparently how the heck you

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 22 of 48
Case 3:14-cv-00235-MAD-ATB   Document 46-5   Filed 03/19/18   Page 22 of 48

21

1    figured that out or what you're basing it on.  Right?

2              MR. SMITH:  I refer Your Honor to the charts

3    that plaintiffs have submitted.

4              THE COURT:  Right.

5              MR. SMITH:  This chart shows the highest rate

6    that Starion charges --

7              THE COURT:  Okay.

8              MR. SMITH:  -- of any variable rate customer,

9    and also the lowest rate that Starion charges of any

10   variable rate customer.

11             Plaintiffs have added in Ms. Gruber's rates at

12   the relevant period when she was our customer.  She's

13   between these two.  At any point in time she could have

14   gone online and said, all right, once she was online and

15   found out what the rate was, the current offering that she

16   could sign up for, or she could have seen that, at the

17   very least, there is somebody in the state paying the

18   highest rate.  Could only be one person, I don't know, but

19   there's somebody paying that.

20             So, a reasonable consumer is looking at that and

21   she's gambling and she's making the determination for her

22   that she's willing to take a variable rate policy, but

23   this tells her she could be charged as much as -- the

24   numbers aren't on here but, you know, it's something like

25   18 cents or so during the relevant period.

1          THE COURT:  I don't understand how the fact that

2    you're charging somebody else something more than Gruber

3    eliminates her claim.  Her claim is based on this chart,

4    this other chart, which shows Starion's average price

5    compared to average wholesale price.

6          Her argument is the green line should have some

7    connection to, some relationship to the orange line.

8    That's her argument.

9          MR. SMITH:  But the question is how could we

10   have deceived her as to what her rate could go up to if

11   her rate never even went up to, by their own chart, what

12   her highest rate was.

13         THE COURT:  I don't think she's -- maybe I'm

14   wrong -- I don't think she says I was deceived about how

15   much they could charge me maximum.  I don't think she's

16   saying that I didn't understand the wholesale price kept

17   going up like that, that my price would not go up or would

18   not be higher than that, or is not capped.  She's not

19   arguing there's a cap on the price.  She's saying there's

20   no relationship, that she understood there was going to

21   be, between the orange line and the green line.

22         MR. SMITH:  Okay.

23         THE COURT:  And so, what she's saying is look

24   what happens.  When the orange line goes up, the green

25   line goes up, and when the orange line goes down, the

1    green line stays flat.  That's her argument.

2            MR. SMITH:  Not when Ms. Gruber was our

3    customer.

4            THE COURT:  But I'll ask Mr. Izard about that.

5    Assuming we have an appropriate plaintiff, why does that

6    not state a cause of action?

7            MR. SMITH:  That might, Your Honor.  I'd have to

8    see the complaint, but the complaint that we have before

9    us and the facts as to Ms. Gruber don't.

10           THE COURT:  Well, okay.  Let's take the class

11   allegations, all right?  She's saying the class was

12   treated improperly this way.  Your argument is she's not

13   an appropriate representative of the class.

14           MR. SMITH:  Well, I'm arguing she wasn't

15   deceived because her rate didn't -- it had no connection

16   whatever to the alleged deception she alleges.  Her rates

17   went up when the market rates, that they have described,

18   went up.

19           THE COURT:  Right.  That's what you're saying.

20   Outside the allegations of the complaint, you're saying

21   you have a defense to her as a representative for that

22   reason.  I understand that argument.  My question to you

23   is, this chart is in the complaint.

24           MR. SMITH:  Okay.

25           THE COURT:  This chart is talking about what

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 25 of 48
Case 3:17-cv-00572-VAB   Document 46-5   Filed 05/07/18   Page 25 of 48

24

1    happened to the class.  If they have the correct

2    representative, why does the allegations of the complaint

3    related to this lack of relationship between the wholesale

4    price and the Starion price, why does that not state a

5    cause of action?

6              MR. SMITH:  Well, one, because the wholesale

7    price, the complaint doesn't give you any detail about the

8    wholesale price and what it comes from or what it means.

9    She just came up with this wholesale price.  She doesn't

10   tell you where it comes from.

11             THE COURT:  So you prove it wrong on the merits.

12   The problem is, accepting it as true as I have to do at

13   this point --

14             MR. SMITH:  Unless it's speculative --

15             THE COURT:  This is true.  Let's start with

16   that.  I have to consider it true.  That's what I'm

17   required to do.

18             MR. SMITH:  Unless it's --

19             THE COURT:  So, for purposes of this argument,

20   you have to consider it true.  Now that it's true, why

21   does it fail to state a cause of action?

22             MR. SMITH:  Well --

23             THE COURT:  It's true.

24             MR. SMITH:  It fails to state a cause of action

25   because it's not based on any reality.  It's speculative.

1      THE COURT:  Because it's not true.  That's what
2  you're saying.
3      MR. SMITH:  It's speculative.  It's not --
4      THE COURT:  So you'll be able to prove it false.
5  That's what you're saying.  But that doesn't help you
6  today.
7      MR. SMITH:  They don't get to make up facts.
8      THE COURT:  They do get to make up facts.
9  That's the thing.  It's an allegation.  It could be true,
10  it could be false; it's an allegation.  They are alleging
11  that these facts are true and today I have to consider
12  them true.  And you do, too.  You don't win this motion
13  unless you can show that, even though these facts are
14  true, there's no cause of action.  That's why we're here
15  today.
16      MR. SMITH:  All right.  My point was I don't
17  know that the Court has to accept speculation and it's
18  well-pled facts.  I don't know that --
19      THE COURT:  It's well-pled --
20      MR. SMITH:  -- the wholesale rate is well-pled
21  facts when it doesn't actually relate to any prices that
22  anybody ever paid.
23      THE COURT:  You're talking about the merits now.
24  They allege that there was exactly what the prices were.
25  That's either correct or it's not correct.  It's either

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 27 of 48
Case 3:14-cv-03572-VAB   Document 46-3   Filed 05/07/15   Page 27 of 48

26

1    true or it's false.  I have to consider it true.

2           MR. SMITH:  But they also note that there are

3    other costs associated with supplying electricity to an

4    individual customer.

5           THE COURT:  Fair enough.  So you'll have a good

6    defense on the merits.

7           MR. SMITH:  They also make an allegation about

8    marketing materials but yet, there's no reference

9    whatsoever to what marketing materials this plaintiff ever

10   relied upon in coming to a decision to sign up with

11   Starion.

12          THE COURT:  Right.

13          MR. SMITH:  So I don't know what marketing

14   materials they refer to that, how we defend a complaint

15   that alleges that there's a reliance upon marketing

16   materials when we don't know.  And the complaint itself is

17   pleading the wrong contract.  The complaint quotes

18   language of the contract but it's not the right contract,

19   so --

20          THE COURT:  You know, this will not be the first

21   time that somebody's cited the wrong contract in a cause

22   of action.  I mean --

23          MR. SMITH:  All right.

24          The plaintiff brings a claim under the

25   Massachusetts Consumer Protection Act without a

Case 3:17-cv-00235-MAD-ATB   Document 46-33-5   Filed 09/07/18   Page 28 of 48

1    Massachusetts plaintiff.  The plaintiff is a Connecticut

2    resident.  Starion is a Connecticut company.  So we've

3    asked to dismiss the Massachusetts claim absent a

4    Massachusetts plaintiff.  We were told some months ago one

5    would be forthcoming but we haven't seen one yet.

6              THE COURT:  Right.

7              MR. SMITH:  And as to their good faith and fair

8    dealing, it's tied to the rate that goes up, it doesn't go

9    down, and I think that the plaintiffs needs to plead with

10   more specificity as to what happened to Ms. Gruber and

11   what her rates were in order to make out that allegation,

12   because right now you can't say that Ms. Gruber's rates

13   went up and didn't come down because there's no actual

14   allegation that Ms. Gruber's rates went up and stayed up

15   and should have gone down specifically to her as opposed

16   to the class.

17             THE COURT:  Okay.

18             MR. SMITH:  And the unjust enrichment, no one

19   disputes there's a contract that governs the relationship

20   between the parties.

21             THE COURT:  Right.

22             MR. SMITH:  That contract, the terms of that

23   contract are what this case are all about, and unjust

24   enrichment, you can't have an unjust enrichment claim when

25   you have a binding, enforceable contract.  So the unjust

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 29 of 48
Case 3:14-cv-00235-AVC   Document 46-5   Filed 05/07/15   Page 29 of 48

28

1    enrichment claim should be dismissed.

2         The good faith claim should be dismissed for

3    lack of specificity as to how we committed bad faith as to

4    Ms. Gruber, and I submit that certainly the Massachusetts

5    claim should be dismissed.

6         But also, the Connecticut unfair trade practices

7    claim, again, it doesn't make any specific allegations as

8    to how we treated Ms. Gruber unfairly, and I think they

9    have to first plead that with specificity as to how that

10   applied to her, how we overcharged her, and there was no

11   specificity in the contract as to that.

12        I think that should also be dismissed without

13   prejudice, subject to a complaint that includes the

14   specificity to tell us what it is that Ms. Gruber is

15   alleging, which I don't know how they could avoid

16   attaching the proper contract and, you know, the true

17   nature of Ms. Gruber's bills if they are going to allege

18   that she was overbilled.  So, thank you.

19        THE COURT:  All right, thank you.  Let me hear

20   from Mr. Izard.

21        MR. IZARD:  Thank you, Your Honor.  As to the

22   contract terms, there's another document that counsel

23   didn't mention which is a file document called a

24   disclosure statement which is referenced in paragraph 24

25   of our complaint.  And so, while the contract, this

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 30 of 48
Case 3:14-cv-00235-MAD-ATB   Document 46-3-5   Filed 03/19/18   Page 30 of 48

29

1   variable pricing methodology language is vague, in fact, I

2   think if that's all the defendant has, I think there could

3   be a violation of CUTPA because CUTPA says that the

4   contract has to describe the terms pursuant to which a

5   rate would move.  But I think --

6              THE COURT:  Yes, I think paragraph 25 is what --

7              MR. IZARD:  I'm sorry, Your Honor.

8              THE COURT:  Is that right?  "Your variable price

9   shall reflect the cost of electricity obtained from all

10  sources."

11             MR. IZARD:  But, you know, counsel didn't attach

12  to their various filings a disclosure statement, and I

13  printed out one from 2013 that says "Variable price shall

14  be calculated monthly and shall reflect the cost of

15  electricity obtained from all sources," blah blah blah.

16  So those two documents kind of work together.

17             The other thing that I think is significant --

18             THE COURT:  So, just to be clear, is the

19  disclosure statement the so-called marketing materials

20  you're relying on, or are you relying on some other --

21             MR. IZARD:  We're not relying on anything else,

22  the disclosure statement and the contract.

23             But the other thing I think is important is the

24  Exhibit D the defendant filed, the document 30-5 which is

25  basically an electronic transcript the law requires, that

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 31 of 48
Case 3:14-cv-00235-VAB   Document 46-3   Filed 09/13/19   Page 31 of 48

30

1    you have these electronic Q and A things with the

2    customer.

3              And that document, and this is directly with Ms.

4    Gruber, states that you are enrolling in Starion, is

5    simple, our monthly variable rate program, that may change

6    based on market conditions, with a current rate of 7.37

7    cents.

8              So this is the communication directly from

9    Starion to the defendants.  It's not a person but it's an

10   electronic communication.  And it says also says that you

11   can cancel upon 30 days written notice to Starion so it's

12   not like you can just call up and cancel any time you

13   want.

14             So it's pretty clear with Ms. Gruber we are tied

15   to market conditions based on the documents that the

16   defendant, either filed with the Court or --

17             THE COURT:  Fair enough.  Mr. Smith argues

18   though she pulled out before the rate went down and,

19   therefore --

20             MR. IZARD:  Yes, Your Honor, and we disagree

21   with that because we think her rate was too high going up

22   because the rate going up wasn't tied to market

23   conditions.

24             It's interesting, in some of these cases people

25   say we're going to give you a fixed teaser rate for a

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 32 of 48
Case 5:17-cv-00235-MAD-ATB   Document 46   Filed 05/07/18   Page 32 of 48

31

1    couple months, and if you look at that, it's like seven

2    cents and change.  Starion didn't say that.  Starion said

3    the seven-cent rate was tied to market conditions, and

4    it's basically the rate that is the lowest rate on their

5    chart.

6            But if you look at Ms. Gruber's bills, and I

7    understand they're outside the complaint, just to give you

8    information on this, her bills start ratcheting up very

9    quickly, even though the market rates aren't moving up at

10   all.

11           THE COURT:  And where do you allege that in the

12   complaint?

13           MR. IZARD:  We don't allege it in the complaint,

14   Your Honor, I'm responding to the questions.

15           THE COURT:  All right, but I'm just -- it's got

16   to be in the complaint.

17           MR. IZARD:  Well, I think what we allege in the

18   complaint is, you know, Ms. Gruber paid too high a rate,

19   that it was -- there was a representation that the rate

20   would move based upon market conditions and it didn't and

21   she paid too much.

22           If I could -- we could certainly amend to allege

23   that, but I think that we cover it.

24           THE COURT:  Well, I think you need to amend

25   anyway, so why don't you include that in your amendment.

Case 3:14-cv-00352-AVC   Document 46-5   Filed 05/07/15   Page 33 of 48

1   I think you probably do need a Massachusetts plaintiff and

2   unless it's clear that you can allege that Ms. Gruber

3   suffered some harm, then I think you probably need another

4   Connecticut plaintiff as well.

5           MR. IZARD:  Well, we can allege that Ms. Gruber

6   suffered harm.  We can do that.

7           On the issue of the Massachusetts plaintiff, I

8   guess I would like to address that.  It hasn't been as

9   well briefed as I think it might have been because the

10  defendant raised it in a footnote, we gave a similar

11  response and then there was something in the reply but --

12  you know, there's, the issue really flows from the Supreme

13  Court's decision in <u>Ortiz v. Fiberboard</u> which talks about

14  the timing of considering standing as opposed to class

15  certification.

16          And the Court there says that class

17  certification should be considered first if it's logically

18  antecedent, and there's a lot of discussions in Newburg on

19  this, Chapters 2.1, 2.2 and 2.6, but at least the cases in

20  the 2nd Circuit say that the consensus is that you look at

21  the class certification issue and that a plaintiff in one

22  state may, on a consumer fraud type theory, represent

23  plaintiffs in other states if the requirements of Rule 23

24  are met.

25          And the reason is that standing relates to

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 34 of 48
Case 3:14-cv-00235-MAD-ATB   Document 46-5   Filed 03/13/18   Page 34 of 48

33

1   injury in fact.  It doesn't talk about injury in law.  It

2   talks about injury in fact.

3            Now, we have alleged, and we will allege with

4   under detail, that Ms. Gruber suffered an injury in fact

5   because she was harmed because she was basically charged

6   improperly in the market.

7            We have alleged in Massachusetts we've got the

8   same market, we've got the same type of injury, we've got

9   the same type of contract, so the injury in fact for

10   Massachusetts people is the same as the injury in fact for

11   Connecticut people.

12            And then we move into a Rule 23 predominant type

13   of analysis to see if the laws are sufficiently similar so

14   that it would be appropriate under Rule 23 to allow a

15   Connecticut plaintiff to do that.

16            And, if I might, in our brief we mention Judge

17   Hall's case where she had a nationwide class, but I would

18   just like to mention a couple of additional cases from the

19   Southern District where Courts talk about how this is

20   handled in the consumer fraud case and other cases and

21   what the consensus is.

22            One is In Re: Digital Antitrust Litigation, 812

23   F.Supp 2d 390, which is Chief Judge Preska's opinion.

24            Another is D/b/a DP, Indirect Purchaser

25   Antitrust Litigation, 903 FSupp 198.  That's Judge Sebol.

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 35 of 48
Case 3:14-cv-00335-VAB   Document 46-5   Filed 05/07/18   Page 35 of 48

34

1          And then <u>Winfield v. Citibank</u>, which is not a

2     consumer fraud case, but it's 842 FSupp 2d 560, Judge Poe.

3          And I think what these cases say, relying on the

4     Supreme Court's decision in <u>Ortiz</u> and the principles that

5     are discussed in Newburg, that, you know, you look at this

6     under Rule 23, once the plaintiff, him or herself, has

7     actually established individual standing -- because this

8     is a constitutional standing, it's not some kind of

9     statutory standing so it's an injury in fact analysis.  So

10    I just want to make that point because I think the

11    briefing was probably not as complete as it could be based

12    on the sequencing.

13         I don't know if the Court has any other

14    questions or --

15         THE COURT:  How does your unjust enrichment

16    claim survive?

17         MR. IZARD:  I'm sorry --

18         THE COURT:  How does your unjust enrichment

19    claim survive?

20         MR. IZARD:  I think the analysis of unjust

21    enrichment is the same as it was in <u>Viridian</u>, and to the

22    extent that there is a contract that would be covered by

23    the implied covenant, I think then the unjust enrichment

24    claim would fall away.

25         So I would urge the Court to basically issue the

Case 5:18-cv-00235-MAD-ATB  Document 33-5  Filed 03/19/18  Page 36 of 48
Case 3:14-cv-00235-MAD-ATB  Document 46-3  Filed 05/07/18  Page 36 of 48

35

1   same order that it entered in <u>Viridian</u>.  I don't see any

2   difference between the two cases on that point.

3          THE COURT:  All right.  So just to be clear,

4   you're going to file an amended complaint.  You're going

5   to give more detail about the actual injury to Gruber.

6   You're going to clarify that you're not relying on

7   marketing materials but, rather, on the disclosure

8   documents that you have just described, and with those

9   changes you think you survive.

10          MR. IZARD:  Yes, Your Honor.

11          THE COURT:  All right.  Let me hear from

12   Mr. Smith.

13          MR. SMITH:  First, Your Honor, as to the

14   disclosure statement, again, this is not a document that

15   applies to the plaintiff.  It is not document that the

16   plaintiff got, you know, so as --

17          THE COURT:  Well, presumably she's either going

18   to be able to allege that she received it or she's not

19   going to be able to allege that she received it.

20          MR. SMITH:  Okay.

21          THE COURT:  So we'll know that next round.

22          MR. SMITH:  Okay.  We'll see how that comes out.

23          As to standing, it's just, it's not the law of

24   the 2nd Circuit, it's not the current law of the district

25   courts within the 2nd Circuit.  The cases cited by

1   plaintiff in footnote 17, and the Blessing case cited on

2   page 20 of the plaintiff's responsive brief, it wasn't an

3   antitrust case.  The Abbott Laboratories case in footnote

4   17 is an antitrust case.

5          Here's an interesting one.  The Static Random

6   Access Memory case, actually certified the case as to 27

7   specific statewide class actions, was an MDL, because

8   there were 27, plaintiffs from 27 states, so the case that

9   they cite is, highlights the actual fact that you can't

10   have a class that is, on a consumer case, that is for

11   other states consumer laws without having a plaintiff from

12   that case.

13          In some of the recent cases, Jorgeson v. Felix

14   Storage, Inc. from the Southern District of New York in

15   2012, in a motion to dismiss, says the consumer product

16   claims are only allowed in states where the named

17   plaintiffs reside.  And that is at Westlaw, cite 212

18   Westlaw 2354247.

19          Also cited in our brief, the HSP Bank Debit Card

20   Overdraft Fee Litigation where a plaintiff does not have

21   standing to bring consumer claims for states where no

22   named plaintiff resides, also on a motion to dismiss.

23          The 2nd Circuit in the Debra Mahan case says

24   that the Court can decide standing and should decide

25   standing before class certification.  That's also cited in

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 38 of 48
Case 5:14-cv-00235-MAD-ATB   Document 46-3   Filed 05/07/18   Page 38 of 48

37

1   our brief, and that is <u>Mahon</u>, M-a-h-o-n, <u>v. Ticore Title</u>

2   <u>Insurance Company</u>, 683 F3d 59.

3           So this is absolutely appropriate for the Court

4   to decide now.  If they have a Massachusetts plaintiff, a

5   Massachusetts plaintiff, they think that they can use to

6   bring a Massachusetts claim, they should have that

7   plaintiff; otherwise the Massachusetts claim should be

8   dismissed.

9           And as to -- the plaintiff had mentioned the

10  rates, since she pulled out, the rates went down, in

11  response to Your Honor's question about my argument, that

12  I would reiterate as to Ms. Gruber, there are insufficient

13  facts to, even to plead a claim, let alone to state a

14  Connecticut Unfair Trade Practices claim sufficient to

15  survive a 9(b).  I think that's the main issues --

16          THE COURT:  Well, he's going to replead with

17  respect to her.  Do you dispute that if he pleads that her

18  rates, as they were increased, were increased faster than

19  they should have been, based upon the experience in the

20  wholesale market, does that state a claim?

21          In other words, you seem to, you seem to be

22  arguing that she didn't have standing because she pulled

23  out before the wholesale market rate went down and,

24  therefore, she never had the experience of her rate not

25  going down, but if it went up higher, if it went up faster

Case 5:17-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 39 of 48

1    than it should have, based upon the experience in the

2    wholesale electric market, why wouldn't that state a

3    claim?

4          MR. SMITH:  I'll have to see what they plead

5    but, Your Honor, the market conditions for any of these

6    defendants, it's not -- there isn't a direct correlation

7    for some of the rates, because when there's bad weather

8    and the rate goes up to a dollar-fifty a kilowatt hour,

9    that doesn't get passed onto the customer, a dollar-fifty

10   a kilowatt hour.  That gets spread out over a period of

11   time.

12         So if the rate went up in preparation for winter

13   and stayed up a little bit after winter, that's because

14   the defendant, electric suppliers were spreading that

15   loss, spreading those costs over a larger period of time

16   so they didn't have to stick a customer with, you know, a

17   bill that was charging, you know, 40 cents, 50 cents, 60

18   cents a kilowatt hour, because on certain days the rate

19   was a dollar-fifty a kilowatt hour.

20         Weather conditions, especially the weather we

21   had in this past winter and the winter before that, have a

22   tremendous effect on the price.  And if the defendants

23   make a business decision to spread that cost along, they

24   want to say the wholesale rate is this, well, in reality

25   it's the wholesale price plus all the other costs, and

Case 3:14-cv-00572-VAB   Document 46-3   Filed 05/07/18   Page 40 of 48

1    there are lot of costs that are associated that are

2    actually costs of electricity, not the wholesale cost.

3              For example, ancillary costs --

4              THE COURT:  Right.

5              MR. SMITH:  -- these are not, these are not

6    costs -- we're not even talking about overhead cost, we're

7    talking about actual cost that the electricity to charge

8    is not the actual what they call the wholesale rate.

9              THE COURT:  Including energy, capacity,

10   settlement and ancillaries, related transition and

11   distribution charges and other related charges, taxes --

12             MR. SMITH:  Ancillary charge is a charge that

13   the ISOs charge that basically keep the generation plants

14   that aren't at full capacity, you know, there and ready

15   and then there's a, you know, icap charge and installed

16   capacity -- basically you're paying for people to be on

17   standby to crank up a generator when that's needed because

18   there needs to be enough electricity in the grid to meet

19   everybody's needs at that exact moment.  So it's a gentle

20   balancing of making sure that there's exactly that much in

21   there.

22             There's also renewable energy credits.

23   Connecticut requires something like 18 percent of our

24   energy be from renewable energy sources.

25             THE COURT:  Right.

1          MR. SMITH:  So we have renewable energy credits.

2    All of that is the actual cost of electricity.

3          THE COURT:  And all that is merits-based.

4          MR. SMITH:  But if you're going to say that the,

5    you know, her rate went up a little more than the

6    wholesale rate was going up in preparation for the winter,

7    well --

8          THE COURT:  I don't think he said in preparation

9    for winter.  He -- I think the claim is her rate went up

10   faster than it should have based on the cost of

11   electricity.  Now, that's either a true statement or a

12   false statement, but the question whether it's true or

13   false is for another day.  The question for today, if

14   that's the allegation, why doesn't that state a cause of

15   action?  It could be false.

16         MR. SMITH:  Well, I have to see the words they

17   use to plead that and, you know, now that they have all

18   our financial information for them to plead that within

19   their obligations of Rule 11 when they know the reality of

20   the actual pricing, I'll have to see how they come up with

21   the new allegations they are going to plead as to how that

22   happened with Ms. Gruber, because, you know, they had

23   information to assess all the other costs that are in that

24   purchase of electricity and overhead costs so we'll see

25   what they come up with to do that.

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 42 of 48
Case 3:14-cv-03574-VAB   Document 46-3   Filed 06/03/15   Page 42 of 48

41

 1          Can they never -- you know, do I think they can

 2    never state a claim?  They could, you know, but under the

 3    facts as they exist and the information they have now

 4    available to them, I'll have to see how they come up with

 5    a pleading that dances around all that.

 6          THE COURT:  Okay, all right.  Thank you.

 7          I'm going to rule on the motion to dismiss at

 8    this time.  And in doing that, as I've made clear, I have

 9    to accept the allegations of the complaint as true, draw

10    all reasonable inferences in favor of the plaintiff and

11    decide, looking at the complaint in that light, whether it

12    states a plausible claim for relief.

13          And the bottom line is the unjust claim is

14    dismissed without prejudice only to the extent that if

15    there is a holding that the contract is illusory, it can

16    be repled; otherwise it's not a legitimate alternative

17    claim.

18          The plaintiff is going to be required to

19    replead.  We need more detail regarding Ms. Gruber's, the

20    basis for alleging that Ms. Gruber has standing.  Ideally

21    the complaint would be amended to include a Massachusetts

22    plaintiff.

23          I'm going to deny without prejudice the claim

24    that there needs to be a Massachusetts plaintiff because,

25    frankly, I haven't fully considered that at this point and

1    it may be mooted in the event that we have a Massachusetts

2    plaintiff, so rather than hold that one issue, I'm going

3    to deny that motion without prejudice.

4           Obviously the motion to dismiss in general is

5    dismissed without prejudice, but it appears to me if more

6    detail is added that the complaint does state a cause of

7    action.  Again, it may well be one that cannot be proven,

8    but that's for a different day.

9           I don't intend to write and I hope both of you

10   understand the basis for this ruling.  If you don't, I'm

11   happy to try and provide it now, but I don't intend to

12   write anything on it.

13          We're going to get an amended complaint.  How

14   much time do you need, Mr. Izard?

15          MR. IZARD:  I think the last week was 45 days,

16   if that's consistent, that's good with me.

17          THE COURT:  Okay, that's fine.  If you could

18   make it clear that you're not relying on marketing

19   materials, that you're -- spell out what you're relying

20   on.  9(b) is satisfied if you identify particular

21   documents.  It's not satisfied when you just use a general

22   term, marketing materials.

23          MR. IZARD:  Right.

24          THE COURT:  Right.  Okay.  Any other questions

25   or concerns about that ruling?

```
1              MR. IZARD:  No, Your Honor.

2              MR. SMITH:  No, Your Honor.

3              THE COURT:  All right.  45 days to replead and

4     we'll go from there.

5              Where do things stand at this point in this

6     case?

7              MR. IZARD:  We have served discovery requests on

8     the defendants.  We've gotten some responses.

9              Unfortunately Mr. Klein's been handling that and

10    he's been under the weather, but I think the two big

11    issues concern whether we would, discovery should be

12    limited to Connecticut or whether it would also include

13    Massachusetts, and also whether discovery would include

14    the period of before and after Ms. Gruber was a customer.

15    So I think it -- all those are the big issues.  We're

16    happy to replead before we get into those issues, if the

17    Court prefers, but we obviously don't want to get too far

18    off-track because there has been a scheduling order

19    entered in the case and we obviously can't afford to use

20    up too much time without moving forward.

21             THE COURT:  Do you want to be heard on that, the

22    scope of discovery?

23             MR. SMITH:  The Massachusetts one, for obvious

24    reasons that we talked about here, and what we said to

25    plaintiff's counsel, present counsel, was that in order,
```

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 45 of 48
Case 5:14-cv-00235-MAD-ATB   Document 46-3   Filed 05/07/18   Page 45 of 48

44

1    before we go down a long road of hundreds of thousands of

2    dollars in discovery, all of which will potentially be a

3    billed cost if we're successful, we'll give you, in terms

4    of, you know, under the protective order and the terms,

5    fostering a settlement and the interchange of the actual

6    situation are audit financial statements and are profit

7    loss statements for 2013 and 2014 that show the 5.52

8    percent net profit pretax for 2013 and a 9.89 net profit

9    pretax for 2014.  I don't think that we would be gouging

10   if that's the profit we're making, but that's for another

11   day, but I've given them that information.  I've told them

12   that they have specific line items of backup they need.

13   We can try and get that but let's focus on that before we

14   go and spend hundreds of thousands of dollars on discovery

15   to see whether or not what they thought occurred here they

16   still believe occurred here.

17          So that was the conversation I had with

18   plaintiff's counsel, and I provided those audit financial

19   statements and profit and loss statements and whatever

20   they request for specific information, we can address that

21   on a line item by line item, but it makes sense to work

22   along that line and defer and see what we get in an

23   amended complaint.

24          THE COURT:  Yeah, okay.  My initial reaction is

25   that the discovery, to the extent it proceeds, should

1    cover the class period, but at this point should not cover

2    Massachusetts.

3            So that let's figure out, either we're going to

4    get a Massachusetts plaintiff or there's going to be a

5    ruling that you're permitted to bring this claim.  But if

6    not, it's just going to be a waste of time.  But the class

7    period, I don't think there can really be a problem.

8            MR. SMITH:  Your Honor, we're making an offer to

9    them to give them the information that we think they need

10   to fully evaluate the situation, and what the -- whether

11   there was actual gouging here and our audited financial

12   statements should show them that.

13           It was an offer to them to try and save costs,

14   so if we go down another road and are before Your Honor on

15   a bill of cost or some other motion, that we all remember

16   that offer was made to try and limit the costs and try to

17   focus on that period as the plaintiff so we could see if

18   we could head this off.  And so that's why the offer was

19   made and we hope that will be heeded.

20           MR. IZARD:  Your Honor, we're happy to talk

21   during this 45 period.  I'm obviously not interested in

22   pursuing a case that doesn't make sense.  I don't, I did

23   take a quick look at it this morning so I disagree with

24   their metrics on how to calculate profitability but I want

25   to review it with our expert before I go too far down the

Case 3:14-cv-03572-AB   Document 46-3   Filed 05/09/18   Page 47 of 48

```
 1    road.

 2            So we're happy to talk and we're not here to

 3    waste anyone's time.  I'm sure that will happen in the

 4    next 45 days.

 5            THE COURT:  All right, thank you.

 6            MR. SMITH:  Thank you, Your Honor.

 7            THE COURT:  All right, thank you.  We'll stand

 8    in recess.

 9            (Whereupon the above matter was adjourned at

10    12:00 o'clock, noon.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 5:18-cv-00235-MAD-ATB   Document 33-5   Filed 03/19/18   Page 48 of 48
Case 3:14-cv-00572-VAB   Document 46-3   Filed 05/15/18   Page 48 of 48

47

C E R T I F I C A T E


       I, Susan E. Catucci, RMR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.



            /S/ Susan E. Catucci
            _____

             Susan E. Catucci, RMR
             Official Court Reporter
             915 Lafayette Boulevard
          Bridgeport, Connecticut  06604
             Tel: (917) 703-0761