UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NAOMI GONZALES

                Plaintiff,                                   Civil Action No.
                                                              5:18-CV-235 MAD/ATB

      v.

AGWAY ENERGY SERVICES, LLC

                Defendant.
_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS BY DEFENDANT AGWAY ENERGY SERVICES, LLC</u>**

BOND, SCHOENECK & KING, PLLC
Avant Building, Suite 900
200 Delaware Avenue
Buffalo, New York  14202
Telephone: (716) 416-7000

     and

BEVAN, MOSCA & GIUDITTA, P.C.
222 Mount Airy Road, Suite 200
Basking Ridge, NJ  07920
Telephone: (908) 753-8300

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 4

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION ................................................ 4

II.  DEFENDANT'S TRANSFER ARGUMENT IS NOT MOOT ................................................ 6

III.  THE VOLUNTARY PAYMENT DOCTRINE DEFEATS PLAINTIFF'S CLAIM ............ 7

IV.  THE NEW YORK UNIFORM COMMERCIAL CODE DEFEATS THE COMPLAINT .... 9

V.  PLAINTIFF'S GBL, CONTRACT AND QUASI-CONTRACT CLAIMS SHOULD BE
     DISMISSED .......................................................................................................................... 11

    A.    Standard of Review .................................................................................................... 11

    B.    GBL Secs. 349 and 349-d Claims ............................................................................. 11

VI.  PLAINTIFF'S BREACH OF CONTRACT CLAIMS LIKEWISE SHOULD BE
      DISMISSED .......................................................................................................................... 16

VII.  THE COURT SHOULD DISMISS THE IMPLIED COVENANT CLAIM ...................... 16

VIII.  THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM .................. 17

CONCLUSION .......................................................................................................................... 18

### TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: 5-hour ENERGY Marketing and Sales Practices Litig.*,
  2015 U.S. Dist. LEXIS 191705 (C.D. Cal. 2015)..................................................10

*Abdale v. North Shore-Long Island Health Sys., Inc.*,
  No. 13-1238, 2014 WL 2945721 (E.D.N.Y. June 30, 2014)...............................5, 6

*Atl. Marine Constr. Co. v. United States Dist. Court*,
  *571 U.S. 49.* 134 S. Ct. 568 (2013),.........................................................................6

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006).........................................................................................6

*Brown v. Agway*,
  18-cv-00321 (W. D. Pa. 2018)...............................................................................1, 5

*Buermeyer v. Suburban Propane, L.P.*,
  Index No. 5367 (N.Y. Supreme Ct. 2011) ...............................................................7

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir.), cert. den. 138 S.Ct. 473 (2017) ...........................................4

*DRMAK Realty LLC v. Progressive Credit Union*,
  133 A.D.3d 401, 18 N.Y.S.3d 618 (App. Div. 1st Dept. 2015)...............................7

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938).................................................................................................10

*Farina v. Niagara Mohawk Power Corp.*,
  81 A.D.2d 700, 438 N.Y.S.2d 645 (N.Y. App. Div. 1981) ................................9, 10

*Flood v. Just Energy Mktg. Corp.*,
  2017 U.S. Dist. LEXIS 60337 (S.D.N.Y. 2017)....................................................10

*Gimbel Bros., Inc. v. Brook Shopping Centers, Inc.*,
  118 A.D.2d 532, 499 N.Y.S.2d 435 (App. Div. 2nd Dept. 1986) ...........................7

*Hart v. FedEx Ground Package Sys. Inc.*,
  457 F3d 675 (7th Cir. 2006) ..................................................................................5

*In re: HSBC Bank, USA, N.A.*,
  1 F. Supp.3d 34 (E.D.N.Y. 2014) .............................................................................5

*Lewis v. Hertz Corp.*,
   181 A.D.2d 493, 581 N.Y.S.2d 305 (1st Dept. 1992)........................................12, 15

*Mantikas v. Kellogg Co.*,
   2017 U.S.Dist. LEXIS 83311, 2017 WL 2371183 (May 31, 2017) ....................................4, 5

*Nelson v. MillerCoors, LLC*,
   2017 U.S. Dist. LEXIS 104884 (S.D.N.Y. 2018)....................................................17

*Newby v. Bank of Am. Corp.*,
   2013 U.S. Dist. LEXIS 33276 (E.D.N.Y. 2013)....................................................13

*Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ............................................................................11

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
   662 N.Y.S.2d 584, 242 A.D. 2d 690 (2d Dept. 1997) ............................................10

*Parks v. Dick's Sporting Goods, Inc.*
   2006 U.S. Dist. LEXIS 39763 (W.D.N.Y. June 15, 2006)........................................5

*In re Propanolol Antitrust Litigation*,
   249 F. Supp. 3d 712 (S.D.N.Y. 2017)............................................................5

*Richard Short Oil Co. v. Texaco, Inc.*,
   799 F.2d 415 (8th Cir. 1986) ....................................................................17

*Richard v. Direct Energy Servs.*,
   246 F. Supp.3d 538 (D.Conn. 2017)(*Richard II*)..................................................13

*Silvis v. Ambit Energy, L.P.*,
   674 Fed. Appx. 164, 2017 U.S. App. LEXIS 334 (2017 WL 75761) ................................5

*Simmons v. Ambit Energy Holdings*,
   LLC, 2016 N.Y. Misc. LEXIS 3954 (N.Y. Sup. Ct. Oct. 19, 2016)................................17

*Slack v. Suburban Propane Partners, L.P.*,
   No. 10-2548, 2010 WL 3810870 (D.N.J. Sept. 21, 2010)........................................13

*St. Clair v. Kroger Co.*,
   581 F. Supp.2d 896 (N.D. Ohio 2008)............................................................10

*Stewart v. Ocean State Jobbers, Inc.*,
   2018 U.S. Dist. LEXIS 5716, 2018 WL 379011 (D. Conn. 2018)..............................5

*Super Glue Corp. v. Avis Rent A Car System, Inc.*,
   159 A.D.2d 68, 557 N.Y.S.2d 959 (2d Dept. 1990) ............................................12, 15

*Tyman v. Pfizer, Inc.*,
    2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. 2017) ...................................................17

*Wise v. Energy Plus Holdings, LLC*,
    No. 11-7345 (S.D.N.Y. 2012) ...........................................................................17

*Zuckerman v. BMG Direct Mktg.*,
    290 A.D.2d 330, 737 N.Y.S.2d 14 (App. Div. 2002) ........................................12

**Statutes**

28 U.S.C. sec. 1332(D)(3) and (4) ................................................................................5

CAFA ....................................................................................................1, 4, 5, 6

FLSA ..................................................................................................................10

NY General Business Law Sec. 349 .........................................................................12, 15

NEW YORK UNIFORM COMMERCIAL CODE ..................................................9

UCC 2-607 ...............................................................................................................9

UCC sec. 2-305 .......................................................................................................17

UCC sec. 2-607 .......................................................................................................10

UCC sec. 2-607 (3)(a) ..............................................................................................9

**Other Authorities**

Bill of Rights .............................................................................................................10

Fed. R. Civ. P. 8(d)(2) ..............................................................................................17

http://documents.dps.ny.gov/PTC/home .................................................................13

## PRELIMINARY STATEMENT

Riddled with factual and legal inaccuracies, Plaintiff's Response to Defendant's Motion to Dismiss does not cure the Complaint's fatal errors, and cannot serve to delay the lawsuit's proper dismissal.  This Court lacks CAFA diversity jurisdiction for three distinct reasons:  (i) Plaintiff names no Pennsylvania representative; (ii) Plaintiff names no other out-of-state representative; and (iii) Plaintiff's claims of venue issues being "moot" are inaccurate: contrary to Plaintiff's false assertion that the Agway contracts for New York and Pennsylvania are identical, they are not identical.  One key difference relevant to this issue is that the Pennsylvania contract specifies that venue is proper in a Pennsylvania court, and that Pennsylvania law will apply.[1]  Agway was recently sued by a purported class of Pennsylvania Agway electric customers in the Western District of Pennsylvania, based on conduct that Plaintiff alleges in the instant case.[2]  That District Court is the Court of proper jurisdiction, and this Court should not sweep in Pennsylvania plaintiffs for the purpose of maintaining subject matter jurisdiction.[3]

Plaintiff also totally misconstrues the key difference between this matter and the cited cases where his clients managed to escape dismissal: Agway's inclusion of the valuable *EnergyGuard*(TM) repair program, a value-added service akin to an insurance product that affords Agway customers with essential peace of mind knowing that they have electric system and wiring repair and replacement available to them 24 by 7 by 365, up to $1,000.00 each for system repairs and wiring ($2,000.00 total per year).  *EnergyGuard* has intrinsic value to those

---

[1]  See Reply Affidavit of Michael Schueler attaching Agway's Pennsylvania Agreement as Exhibit A and the initial enrollment letter with its Pennsylvania customers as Exhibit B.

[2]  *Brown v. Agway*, 18-cv-00321 (W.D. Pa. 2018).

[3]  If this Court retains jurisdiction and venue based on a purported class of Pennsylvania citizens, Defendant will need to file another motion to dismiss those plaintiffs based on Pennsylvania law, which differs from New York law with respect to certain counts set forth in the instant Complaint, especially consumer-related claims.

customers who choose Agway service, and by its nature, offers an appealing alternative to certain people who prefer the security of long-term warranties and other insurance and insurance-like products.  Plaintiff's absurd comparison of *EnergyGuard* to a "toaster" available to new customers at a bank[4] merely highlights the lengths to which she will go in her attempt to extricate herself from the box she built in her Complaint, where Plaintiff totally ignored the existence of this key program.

Plaintiff in her Response also continues to misrepresent the pricing information that Agway sets forth in great detail in the Schumer box disclosure, claiming repeatedly that Agway limits pricing decisions to "market costs and factors."[5]  Whereas certain other defendants in one or more of class counsel's other purported class actions may have used such language, that claim is untrue and incomplete in the context of this Defendant and in this case.  Plaintiff cannot escape the detailed pricing description in her agreement's Schumer box:

> The Electric Variable Rate shall each month reflect the cost of electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), related transmission and distribution charges and other market-related factors, plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins.

Plaintiff would have this Court believe that, in order to be a complete disclosure, Agway would have to ensure that Plaintiff had actual knowledge of each and every factor that Agway mentions, including actual knowledge (and a full, subjective understanding) of how Agway calculates these factors, including "applicable fees, charges or other assessments and Agway's costs, expenses and profit margins."  The law requires no such degree of disclosure – the Court may find, as a matter of law, that the disclosures were adequate in light of how a reasonable consumer would understand them.  Agway's disclosures are detailed enough, and much more detailed than those

---

[4] Response at p. 15.
[5] *See, e.g.,* Response at p. 3.

contained in any of the agreements giving rise to other energy-related class action lawsuits. The Court should disregard Plaintiff's repeated and objectively unsupportable fiction that she reasonably could believe that her Agway rates and service, including comprehensive *EnergyGuard* protection, would be based on the incumbent provider (Central Hudson) offering, or have its rates otherwise tethered solely to "market-related" factors.

Additionally, and curiously, Plaintiff admits (fatally to her cause) that she reviewed her rates and understood that they would vary.[6]  It does not save her case that Plaintiff also believes that "a reasonable consumer... cannot be expected, *at least without the assistance of counsel,* to know that Agway's rates were not in fact commensurate with Agway's costs and other market-related factors..."[7] (emphasis added).  While plaintiff class counsel everywhere would cheer a finding that no consumer ever could be held to honor a contract without a lawyer's explanation and blessing, coupled with a company being obligated to provide detailed financial information (including revenue and cost models, taxes and margin calculations)[8] in the agreement and on a monthly basis, thankfully those propositions do not represent the state of the law in New York or any other jurisdiction.  A court may dismiss any claim (including those made under consumer

---

[6] Response at p. 11: "True, Plaintiff knew the rate Agway charged her each month, but she expected the rate to vary..."

[7] Response at pp. 11, 12.

[8] To remain viable, any business must collect revenues that will exceed its costs.  Among its many costs, Agway must purchase electricity for resale; assemble, train and pay the workforce and procure the parts essential to ensure *EnergyGuard* performance; train, pay and maintain its exceptional customer service team; maintain a financial assurance operation; pay for common costs and overheads, including administrative personnel, computers, buildings, utilities and other costs of operating a business; and account for unforeseen and emergency expenses.  A reasonable consumer should appreciate these obvious factors, and no business has an obligation to disclose to its customers the detailed financial revenue, cost and margin information outside of what would be required of a public company to file in its annual reports.

protection laws) when the context of the transaction would not cause a reasonable consumer to be deceived or misled.[9]

## ARGUMENT

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION

Nothing in the Response changes the key fact that defeats even relaxed CAFA diversity jurisdiction:  the Complaint does not name one competent citizen of Pennsylvania to represent the purported class of Pennsylvania citizens.  Plaintiff cleverly attempts to parry this requirement by mischaracterizing it as whether it has an obligation to show that a class must be certified in advance of proper subject matter jurisdiction, or that a named plaintiff can ultimately certify the entirety of the class.[10]  Defendant does not at this juncture raise an issue as to whether named Plaintiff Gonzales, a New York citizen, can ultimately certify a class of similar New York citizens.  Absent dismissal at this stage, that could be an issue for another time.[11]  Defendant merely and correctly points out that Ms. Gonzales has no standing to assert claims on behalf of any purported Pennsylvania class:  she is not a citizen of Pennsylvania; did not sign Agway's Pennsylvania agreement; and does not appear to have any connection to Pennsylvania or to Agway's service to Pennsylvania citizens.  As such, Plaintiff Gonzales is not a competent

---

[9] *See, e.g., Mantikas v. Kellogg Co.,* 2017 U.S.Dist. LEXIS 83311, 2017 WL 2371183 (May 31, 2017).  See Defendant's Memorandum of Law in Support of Motion to Dismiss at pp. 23-26 and related footnotes.

[10] *Citing F5 Capital v. Pappas*, 856 F.3d 61, 81 (2d Cir.), cert. den. 138 S.Ct. 473 (2017).

[11] Defendant notes that Plaintiff's arguments in opposition to dismiss the Consumer GBL and other contract claims are apparently based on the argument that Plaintiff's subjective understanding of disclosed pricing information should control a dismissal motion outcome.  To the extent that this or any other related customer complaint could turn on the subjective understanding of each customer, this matter would involve a key issue not common to all customers in this purported class.

representative of that purported class, and Respondent cannot identify any such competent representative that it represents.[12]

Plaintiff continues to argue that there must be, out there somewhere, a few past customers of Agway's New York service who have since moved on to other states, but still would have claims against Defendant similar to Plaintiff's instant claim.[13]  Plaintiff should not be permitted to maintain CAFA jurisdiction based on this phantom class, with no competent class representative.[14]  Also, to the extent these people exist or could be found, they likely would constitute a small fraction of the entire purported class, and therefore defeat CAFA jurisdiction under one of the major exceptions.[15]  Plaintiff has failed to carry her burden of establishing federal jurisdiction, and this Court should decline to assert jurisdiction.[16]

---

[12] *In re: HSBC Bank, USA, N.A.,* 1 F. Supp.3d 34, 50 (E.D.N.Y. 2014)(plaintiff lacked standing to assert claims on behalf of a class under the laws of a state where plaintiff never lived or resided, and citing numerous cases for that proposition); *Accord, Parks v. Dick's Sporting Goods, Inc.* 2006 U.S. Dist. LEXIS 39763 (W.D.N.Y. June 15, 2006); *Mantikas v. Kellogg Co.,* 2017 U.S. Dist. LEXIS 83311, 2017 WL 2371183 (May 31, 2017)(dismissing common law quasi-contract claims).   Likewise, Plaintiff's reliance on *Langan v. Johnson & Johnson Consumer Co., Inc.,* (Response at p. 8, fn. 4) is misplaced.  There, a court upheld multiple state class certifications where the consumer protection laws of the states did not materially differ. Here, Pennsylvania consumer protection laws (and their application by the courts) differ in material respects from New York laws, so much so that some other Pennsylvania energy lawsuits do not even raise Pennsylvania consumer protection laws in their pleadings.  *See, e.g., Silvis v. Ambit Energy, L.P.,* 674 Fed. Appx. 164, 2017 U.S. App. LEXIS 334 (2017 WL 75761); *Brown v. Agway*, 18-cv-00321 (W. D. Pa. 2018).

[13] Response at pp. 9-11.

[14] *In re Propanolol Antitrust Litigation*, 249 F. Supp. 3d 712 (S.D.N.Y. 2017); *Stewart v. Ocean State Jobbers, Inc.*, 2018 U.S. Dist. LEXIS 5716, 2018 WL 379011 (D. Conn. 2018).

[15] 28 U.S.C. sec. 1332(D)(3) and (4) set forth exceptions to CAFA jurisdiction applicable to the instant matter.  Following dismissal/removal of the purported Pennsylvania class, and absent outright dismissal on the named plaintiff issue, the Court would need to evaluate exceptions to CAFA jurisdiction.  These exceptions include (i)  local controversies; (ii) home state; and (iii) interests of justice.  They are designed to enable state courts to retain cases when the controversy is strongly linked to that state, and lacks the character of a genuinely national litigation that would favor a federal forum.  *Abdale v. North Shore-Long Island Health Sys., Inc.,* No. 13-1238, 2014 WL 2945721 (E.D.N.Y. June 30, 2014)(citing additional cases, including *Hart v. FedEx Ground Package Sys. Inc.,* 457 F3d 675 (7th Cir. 2006)).  These exceptions generally involve

## II.  DEFENDANT'S TRANSFER ARGUMENT IS NOT MOOT

Plaintiff claims that Defendant's transfer argument is moot.  To the contrary, it is very much alive as to the purported class of Pennsylvania customers.  Because Plaintiff could not name a Pennsylvania citizen in her Complaint, the only competent Plaintiff was a New York citizen taking Agway service in New York under a New York contract.  That contract's forum clause specified venue in a New York court, and that New York law would govern.

By insisting that the purported Pennsylvania class remain as additional plaintiffs in this case, Plaintiff implicates Agway's Pennsylvania agreement.  This is a Pennsylvania-specific agreement; requires application of Pennsylvania law; and contains a forum selection clause specifying Pennsylvania courts.[17]  Venue for this purported class is therefore improper in this or in any other New York court, and to the extent that this Court would even exercise jurisdiction over a Pennsylvania class, it would be obligated under *Atlantic Marine*[18] to transfer that class to a Pennsylvania court.

Furthermore, there is a current, recently filed purported class action lawsuit pending against Agway in the Federal District Court for the Western District of Pennsylvania.  It names as Plaintiff an alleged Pennsylvania citizen claiming to be an Agway *EnergyGuard* electric customer, and also alleges the same conduct for which Gonzales complains in the instant matter.

---

situations where large numbers of the purported class, as well as the principal defendant, reside in the same state.  In such instances, the reason for diversity jurisdiction is greatly lessened, as neither a plaintiff nor a defendant would have valid reason to fear adjudication in state court.  In fact, some courts have ordered limited discovery on these CAFA exceptions to determine whether they would retain jurisdiction.  *See, e.g., Abdale*, *supra.*

[16] The party seeking access to a federal court bears the burden of establishing federal jurisdiction.  *Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 58 (2d Cir. 2006).  The party asserting CAFA jurisdiction bears the identical burden.  *Abdale, supra* at fn. 16.

[17] *See* Exhibit A (Agway's Pennsylvania Agreement) appended to the Schueler Reply Affidavit.

[18] *Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49.* 134 S. Ct. 568 (2013).  See discussion of factors in Defendant's Memorandum in Support of Dismissal at pp. 12-14.

There is no good reason to require Agway to defend against a purported class of Pennsylvania customers in two different Federal District Courts, one sitting in New York and the other in Pennsylvania. Simply put, the Pennsylvania case should proceed in Pennsylvania, whether it is a result of this Court declining jurisdiction, or by a forum transfer as required by *Atlantic Marine*.

## III.  THE VOLUNTARY PAYMENT DOCTRINE DEFEATS PLAINTIFF'S CLAIM

The voluntary payment doctrine bars Plaintiff's Complaint, and for the very reasons that Plaintiff admits in her Response: she knew the rate Agway charged her every month, and she expected that rate to vary.[19] These admissions are consistent with the reasons Defendant set forth in its pleading seeking dismissal, and only serve to strengthen an already compelling ground for dismissal. Defendant's agreement clearly set forth the basis for pricing, including the fact that the rates would vary for "market-based" *plus* other factors, and also that no savings were guaranteed. This is sufficient reason to dismiss the Complaint consistent with the *Gimbel Brothers, DRMAK Realty* and *Buermeyer* cases discussed in Defendants's Memorandum in Support of its Motion to Dismiss.[20]

Plaintiff attempts to escape by now alleging in her Response that "she did not have full possession of the facts, namely that Agway was not charging her a rate commensurate with its wholesale costs and market factors but was simply engaged in price gouging."[21] Plaintiff's Response here is deficient in two respects. First, it continues to misrepresent the pricing

---

[19] Response at p. 11.

[20] *Gimbel Bros., Inc. v. Brook Shopping Centers, Inc.,* 118 A.D.2d 532, 535-536, 499 N.Y.S.2d 435 (App. Div. 2nd Dept. 1986); *DRMAK Realty LLC v. Progressive Credit Union,* 133 A.D.3d 401, 405, 18 N.Y.S.3d 618 (App. Div. 1st Dept. 2015). *Buermeyer v. Suburban Propane, L.P.*, Index No. 5367 (N.Y. Supreme Ct. 2011). *See* Memorandum in Support of Motion to Dismiss at pp. 15, 16.

[21] Response at pp. 11, 12.

description set forth in the Agway agreement by quoting only a small part of that description. Again, in full, the agreement sets forth in detail that the variable rate:

> "shall each month reflect the cost of electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), related transmission and distribution charges and other market-related factors, *plus* all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins."   (Agreement at par. 21)(emphasis added).

This is a full and complete description of the basis for Agway's variable rates.  It sets forth in all respects how Agway prices its services, including taxes, fees, charges, assessments, costs, expenses and margins.  Defendant makes no representation that it will price based on the incumbent's pricing, nor should it:  Agway offers a different service, one that includes the *EnergyGuard* guarantee, a service the incumbent does not provide.[22]   Second, Plaintiff's allegation that she did not know that Defendant "was simply engaged in price-gouging" is but a colorful, conclusory mischaracterization of the reality here; such name-calling does not rise to the level of factual specificity necessary to counter dismissal.

Plaintiff cites to the *Spagnola* and *McCracken* cases as "directly on point."  They are not on point.  Neither case involves a company pricing disclosure as full or as fair as the Agway agreement disclosure; and neither case involves inclusion of a value-added guaranteed service (the equivalent of *EnergyGuard*) with intrinsic value to a customer above and beyond the actual provision of electric power.  Neither case involves the extent and degree of disclosure for the pricing mechanism that Agway set forth so conspicuously in its Agreement.  Also, Plaintiff misstates the holding in *Spagnola*, claiming that the Court reversed the dismissal "because the plaintiff did not have full knowledge of the facts."  The Court actually held that the state of the pleadings did not establish what plaintiff knew or should have known based on the disclosure

---

[22] Defendant notes that Plaintiff does not even address the issue of how other ESCOs price, or the services they render, in her Response.

made (a disclosure not at fulsome as in the instant case), thus leaving the issue open for later determination.   *Accord, McCracken* (level of disclosure insufficient for dismissal at pleadings stage).[23]

In short, the detailed pricing information set forth in Defendant's Agreement (including the fact that savings are not guaranteed) is sufficient as a matter of law to constitute adequate disclosure and to foreclose Plaintiff's unreasonable claims of deception.  For these reasons, the Court should uphold dismissal based on the voluntary payment doctrine.

## IV.   THE NEW YORK UNIFORM COMMERCIAL CODE DEFEATS THE COMPLAINT

Plaintiff points this Court to no precedent of the New York Court of Appeals that addresses or settles the issue Defendant raises in its Motion to Dismiss.  Plaintiff has no alternative but to concede that the issue of electricity as a "good" or a "service" has not been addressed squarely and definitively by New York's highest court.[24]  Plaintiff also does not contest the cases Defendant cites in support of the proposition that the modern and authoritative trend is for courts to rule that electricity is indeed a "good" under the state UCC, and that purchasers are therefore bound to adhere to UCC 2-607 notice requirements:  "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy..."[25]

---

[23] The level of disclosure is the issue in other cases Plaintiff cites in her Response, where court rulings turned on plaintiffs' actual or constructive knowledge of disclosures that could not be found adequate as a matter of law to bind a reasonable consumer.  *See, e.g., Samuel v. Time Warner; Needham & Co. v. Access Staffing; Fink v. Time Warner Cable.*

[24] In fact, the issue has not been addressed squarely by the New York Appellate Court; the dicta in *Farina v. Niagara Mohawk Power Corp.*, 81 A.D.2d 700, 438 N.Y.S.2d 645 (N.Y. App. Div. 1981) arose in a product liability suit involving overhead power lines.  The issue before this Court remains substantively unaddressed by any New York appellate court.

[25] UCC sec. 2-607 (3)(a).

Plaintiff's counter-argument is that this Court should slavishly adhere to New York decisions[26] (both in state and federal courts) that have followed the unfortunate *Farina* dicta, even though that court apparently limited its decision to tort claims involving electricity in overhead power lines, which it found was "not quite in a marketable state." *Farina* was decided in a completely different context (tort) than that squarely presented in this case; contained limiting language that addressed the nature of electricity as it existed while still in overhead power lines, and not delivered "in a marketable state" as it was in this case; and its dicta has been eroded by the carefully reasoned decisions of many federal and state courts. The instant case, a purported major class action, presents the very type of case that this Court should use as a platform to determine (via an educated *Erie*[27] prediction) that New York's highest court, consistent with the modern and authoritative trend of federal and state precedents, would hold that electricity is a "good" within the UCC's definition.[28]

Plaintiff points to language contained in the NY PSC Consumer Bill of Rights defining "energy services" to include "electricity and/or natural gas," and certain Agway references to "services," as proof that electricity is indeed a service. The *Escalera* Court's comprehensive

---

[26] For instance, Plaintiff cites to *Flood v. Just Energy Mktg. Corp.,* 2017 U.S. Dist. LEXIS 60337 (S.D.N.Y. 2017), which stated that in the context of an FLSA dispute, the sale of electricity was a service. *Flood* cited the discredited *Farina* and *Norcon* cases, and as readily seen, without addressing the issue that is squarely presented here. *Flood* also cited to the NY PSC Bill of Rights language that Plaintiff raises here, but which is easily distinguished by reason of the *Escalera* Court's reasoning discussed *infra.* (*see* fns. 29 and 30 and associated text).

[27] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[28] Plaintiff relegates to a footnote (properly) her argument that service of the Complaint was adequate notice under UCC sec. 2-607. Response at p. 16, fn. 13. The purpose of this notice requirement is to give companies an opportunity to resolve issues before instituting any legal action. Courts that recognize this policy do not permit a complaint to serve as proper notice. *See, e.g., St. Clair v. Kroger Co.,* 581 F. Supp.2d 896 (N.D. Ohio 2008); *In re: 5-hour ENERGY Marketing and Sales Practices Litig.,* 2015 U.S. Dist. LEXIS 191705 (C.D. Cal. 2015)(applying PA law). *Panda Capital Corp. v. Kopo Int'l, Inc.,* 662 N.Y.S.2d 584, 242 A.D. 2d 690 (2d Dept. 1997) is distinguishable, since plaintiff there had repeatedly made its objections to Kopo's pattern of deficient performance known prior to the filing of the complaint.

discussion of this issue is quite instructive: just as similar uses of the word "services" with respect to gas and water does not transform them from goods into services, a similar description of electrical energy "services" likewise does not transform the essential nature of that good.[29]  As that Court aptly noted: "Instead of looking at the labels… the Court must look at the substance of the transactions and the economic reality."[30]

## V.  PLAINTIFF'S GBL, CONTRACT AND QUASI-CONTRACT CLAIMS SHOULD BE DISMISSED

### A.  Standard of Review

Plaintiff argues all GBL, contract and quasi-contract claims under a general heading of "plausibility," and cites to the well-established *Iqbal* and *Twombly* standards.  The Court well knows the standards for evaluating dismissal motions, and Defendant does not repeat them here. Defendant instead addresses the claims *seriatim*, as they appear in the Response.

### B.  General Business Law Secs. 349 and 349-d Claims

Plaintiff concurs with Defendant's assertions that (i) claims based on both of the cited GBL sections have the same elements; and (ii) New York law establishes an objective standard for determining culpable conduct: whether a defendant's acts or practices are materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances.[31] Plaintiff cannot and does not refute that a court may, as a matter of law, determine that a defendant's acts or practices did not rise to an actionable level, and therefore warrant dismissal at the pleadings stages.[32]

---

[29] *Escalera* at pp. 370, 371.

[30] *Id.* at p. 370. Accepting Plaintiff's argument in this regard would lead to the absurd conclusion that natural gas is a service and not a tangible good.

[31] Response at p. 18.

[32] *Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.*, 85 N.Y.2d 20 (1995).

Interestingly, Plaintiff fails to address the authorities Defendant cites on p. 24 of its initial brief.  These cases all involved courts dismissing GBL claims based on the adequacy (as a matter of law) of the description of pricing terms and fees.  The cases also establish the principle that claims alleging that the amounts charged for certain products or services, even if substantial, do not implicate GBL Sec. 349.  *Super Glue v. Avis.*  The question of whether the amounts charged under a contract are unreasonable or excessive are not cognizable under GBL sec. 349. *Zuckerman.*[33]

Two of the principal cases cited in favor of dismissal in this respect, *Super Glue v. Avis* and *Lewis v. Hertz,*[34] are especially instructive.  Both cases dismissed complaints because the terms of the challenged pricing practice were disclosed in the agreement, or otherwise should have been obvious to the consumer.  Those authorities discuss a critical issue that Plaintiff continues to ignore: Plaintiff was in an excellent position, in fact a better position than Defendant, to engage in comparison shopping for the desired product.  Plaintiff could have contacted any of many ESCOs that compete for customers in New York to determine the various offers and terms of service, including whether any of these companies offered a product similar to *EnergyGuard*.  Plaintiff also could have requested of the incumbent carrier (Central Hudson) whether it had a similar, competing product.  To this day, Plaintiff has failed to address the existence of or pricing by other competitors in this market; where Defendant's pricing fit within the range of other ESCO pricing (to the extent Plaintiff continues to question the "competitive"

---

[33] *Zuckerman v. BMG Direct Mktg.*, 290 A.D.2d 330, 737 N.Y.S.2d 14 (App. Div. 2002).

[34] *Super Glue Corp. v. Avis Rent A Car System, Inc.,* 159 A.D.2d 68, 557 N.Y.S.2d 959 (2d Dept. 1990); *Lewis v. Hertz Corp.,* 181 A.D.2d 493, 581 N.Y.S.2d 305 (1st Dept. 1992).

aspect of Agway's rates); and why Plaintiff failed to conduct any comparison or inquiry, as was not only her right, but her responsibility under the cited authorities.[35]

Plaintiff quickly attempts to pivot from similar energy case precedents that would defeat her complaint here, including the *Richard II* and *Slack* decisions. They deserve more consideration. With respect to the Court's ruling in *Richard II*, where the Court dismissed a similar claim against an ESCO based on that company's reservation of substantial variable rate pricing discretion, Plaintiff has no real answer, other than to characterize the case as "wrongly decided."[36] Similarly, Plaintiff attempts to limit the *Slack* decision to propane only, while conceding that the Court dismissed the complaint based on the defendant's reservation of substantial variable rate pricing flexibility.[37] Interestingly, Plaintiff attempts to distinguish *Slack* on the basis that the "other factors" language in the agreement granted the defendant sufficient flexibility to raise rates because "unlike here, did not limit those considerations to market factors."[38] Agway's agreement contains no such limitation to "market factors" – it expressly provides that the variable rate can reflect market-related factors *plus* all applicable taxes, fees,

---

[35] For example, the NY PSC maintains a website that lists various ESCOs and their rates. http://documents.dps.ny.gov/PTC/home. Also, Plaintiff complains that Agway initially charges customers a "fixed introductory rate for a set number of months." These introductory rates are standard in this and many other industries (e.g., mortgages, cable, Internet and phone service); there is nothing deceptive or unlawful about use of these types of rates. *See, e.g., Newby v. Bank of Am. Corp.,* 2013 U.S. Dist. LEXIS 33276 (E.D.N.Y. 2013).

[36] *Richard v. Direct Energy Servs.,* 246 F. Supp.3d 538 (D.Conn. 2017)(*Richard II*)(upholding defendant's retention of substantial variable rate pricing flexibility based on enumerated factors in the agreement).

[37] *Slack v. Suburban Propane Partners, L.P.,* No. 10-2548, 2010 WL 3810870 (D.N.J. Sept. 21, 2010)(variable rates set forth in agreement as "subject to future change based on market fluctuations and other factors" warranted dismissal of deceptive practices complaint). Also, propane and electricity are both forms of energy (propane is commonly used to fuel generators to produce electricity), and this purported distinction is of no consequence.

[38] Response at p. 28.

charges or other assessments and Agway's costs, expenses and margins."  The word "plus" is one of expansion, not limitation – and brings this matter more into *Slack's* ambit.[39]

Plaintiff instead cites to *Chen v. Hiko Energy,* a case involving an ESCO agreement, which she characterizes as "nearly indistinguishable" from the Agway agreement.  What makes this case very distinguishable is the fact that Hiko did not offer an *EnergyGuard* equivalent: it offered no integral value-added, energy-related guarantee for electrical equipment repair and wiring parts and maintenance.  The *Chen* court was not required to, and did not, render any opinion on the value proposition that a reasonable consumer would see in having an *EnergyGuard*-like component packaged in the product.  Also, unlike the Agway agreement, the Hiko agreement did not state at all, let alone in obvious print, that savings were *not* guaranteed.

Plaintiff's reliance on *Claridge* and *Wise* are similarly misplaced for the same reasons that distinguish *Chen*; additionally, those courts both noted that the pricing in question greatly exceeded prevailing market rates and prices charged by competitors.  Here, Plaintiff still does not reference the prices that other ESCOs charge for their product, let alone whether those competitors are offering high-value equipment and wiring coverage to permit a true "apples to apples" comparison.  Her reliance here is ill-founded.[40]

---

[39] Plaintiff cites the word "demographics" to suggest that Agway engages in impermissible discrimination.  The word "demography" also can be used to refer to population density and size, according to the Merriam Webster online definition.  Plaintiff refers to a NY PSC matter involving an Agway waiver request (based on the *EnergyGuard* product) to serve low income customers.  Because the PSC requires a showing of guaranteed savings off of incumbent rates for any ESCO wishing to serve low income customers, Agway's waiver was denied.  Plaintiff's insinuation that Agway discriminates impermissibly against any customer group, or that the PSC made any such suggestion, is as ridiculous as it is both incorrect and offensive.  Response at p. 24.

[40] Likewise, Plaintiff's dismissive treatment of her agreement's "savings are not guaranteed" disclosure is unreasonable.  This was not a "disclaimer" hidden in fine print somewhere.  This statement was clearly and conspicuously set forth in the Schumer Box disclosure as a principal term.

After pages of focusing on "market-related factors" (just one of the pricing components in Agway's agreement), plaintiff finally admits her true line of attack, and in doing so, unwittingly exposes the fatal vulnerability of her case. Plaintiff claims (for the first time) that all factors that Defendant lists as part of the electric variable rate ("related transmission and distribution charges and other market-related factors, plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins") are "relatively insignificant" compared to Defendant's cost for purchasing electricity.[41] Plaintiff's real complaint is that she is paying too much under her contract, that the amount charged is "unreasonable or excessive" – the type of claim that GBL Sec. 349 does not address. *Lewis; Super Glue*.

In summary, what Plaintiff again misses, and fatally to her case, is that (i) the elements of the variable rate are set forth in detail; (ii) savings are explicitly not guaranteed; (iii) she does not account for the intrinsic value proposition inherent in *EnergyGuard*; and (iv) her essential complaint is not that she was deceived, but rather that, in retrospect, she simply thinks she paid too much for what she received.[42] Her late regrets do not equate to a valid GBL Sec. 349 claim for deception.[43]

---

[41] Response at p. 24.

[42] In her Response, Plaintiff expressly admits that no reasonable consumer could ever be deceived by Agway's agreement unless such idea was planted in her head by an attorney: "a reasonable consumer... cannot be expected, *at least without the assistance of counsel*, to know that Agway's rates were not in fact commensurate with Agway's costs and other market-related factors..." (emphasis added). Response at pp. 11, 12. Plaintiff thereby admits that she did not in fact *rely* on the Agway pricing descriptions in making her decisions to purchase, and then to continue without complaint, her Agway service. There is, therefore, no causation between the complained-of conduct and Plaintiff's actions; she simply thinks, after the fact, that she paid too much.

[43] Plaintiff's argument that *EnergyGuard* is a "gratuitous" offering and not explicitly mentioned as part of the variable rate components (Response at p. 26) is unavailing and continues to miss the point – this is a product with intrinsic value, and different customers may value it differently, but common sense and practical experience impart that many customers are satisfied and feel more secure when purchasing a product with the equivalent of an extended warranty. It has

## VI.   PLAINTIFF'S BREACH OF CONTRACT CLAIMS LIKEWISE SHOULD BE DISMISSED

The same reasons underpinning dismissal of the GBL claims also compel dismissal of the contract claim.   Defendant provided Plaintiff with reliable electric power and the valuable *EnergyGuard* guarantee.   Plaintiff does not claim that Defendant failed to supply or honor any aspect of the offering she purchased.   Her complaint boils down (again) to the proposition that "the Agreement provides that pricing will be based on wholesale and other market-related costs…"[44]   The Agreement is not so limited, as Defendant discusses at length on pp. 12 and 13 of this brief, and simply incorporates those same points here in opposition to this claim.

Plaintiff is reduced to arguing that the Agreement is "ambiguous," concerning the importance of the variable rate factors.   This Agreement, however, is quite clear – and only Plaintiff can truly and subjectively decide the value to her of the added comfort that *EnergyGuard* supplied.   The Court, however, is not so constrained, and may objectively decide this claim based on how a reasonable consumer would appreciate the Agreement's clear language and the *EnergyGuard* guarantee.[45]

## VII.  THE COURT SHOULD DISMISS THE IMPLIED COVENANT CLAIM

Defendant's initial Memorandum notes that Plaintiff did not allege any facts that even remotely show that Agway acted malevolently or in bad faith.[46]   Plaintiff's assertion now that "Notably, Defendant does not dispute that Plaintiff plausibly alleges a claim under the implied

---

value above actual cost, and no reasonable person would think this was not included in the overall cost of the integrated product offering, especially given its maximum potential benefit to Plaintiff of $4,000 over the life of the agreement (two calendar years, but subject to her cancellation without penalty).  Its inclusion is thus consonant with UBP sec. 5(B)(4)(b).

[44] Response at p. 32.

[45] Plaintiff's cite to *Viridian* for a damages measurement fails because Defendant here did not limit variable rate determination to "wholesale market conditions."

[46] Memorandum in support of motion to dismiss at p. 34, fn. 35.

covenant of good faith and fair dealing" is blatantly untrue.  Also, the case that Plaintiff repeatedly cites throughout her Response as particularly instructive – *Chen v. Hiko* – is curiously missing from her discussion and citations in this section.  This is no accident.  The *Chen* court dismissed the implied covenant claim because it rested on the same alleged practices as the contract breach claim, and therefore (just as in this matter) was duplicative and legally deficient.[47]

## VIII.  THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM

Plaintiff makes no attempt to contradict the well-established principle that no action will lie for unjust enrichment when a valid contract exists.  Plaintiff instead cites to Fed. R. Civ. P. 8(d)(2) that claims can be made "alternatively or hypothetically."  Nothing in that Rule defeats the body of jurisprudence Defendant cites in its initial pleading.[48]  In fact, in three ESCO cases, the courts dismissed the unjust enrichment claims where an agreement existed between the parties.[49]

---

[47] UCC sec. 2-305 is also instructive here.  There can be no claim of bad faith where the buyer is not captive to the seller's pricing.  *Richard Short Oil Co. v. Texaco, Inc.,* 799 F.2d 415 (8th Cir. 1986).  Plaintiff in this case does not (and could not) allege that she could not switch energy providers, or that there was a dearth of provider choice in this competitive market.  In fact, under the Agway agreement she entered into, Plaintiff could have terminated that contract at any time, without charge.

[48] See also *Tyman v. Pfizer, Inc.,* 2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. 2017)(Magistrate recommended dismissal of unjust enrichment claim, accepted in 2018 U.S. Dist. LEXIS 8222 (S.D.N.Y. 2018); *Nelson v. MillerCoors, LLC,* 2017 U.S. Dist. LEXIS 104884 (S.D.N.Y. 2018)(even pleaded in the alternative, an unjust enrichment claim is properly dismissed where plaintiff fails to explain how it differs, and is not merely duplicative, of other causes of action).

[49] *Simmons v. Ambit Energy Holdings,* LLC, 2016 N.Y. Misc. LEXIS 3954 (N.Y. Sup. Ct. Oct. 19, 2016)(dismissed unjust enrichment claim where it duplicated GBL 349 claims and parties had an express agreement); *Chen, supra*; *Wise v. Energy Plus Holdings, LLC,* No. 11-7345 (S.D.N.Y. 2012)(consumer protection statutory claim availability caused dismissal of unjust enrichment claim).

## CONCLUSION

For the reasons stated in its Memorandum of Law in Support of its Motion to Dismiss, and for the reasons further stated in this Reply Memorandum, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint.

Dated:  April 2, 2018                              Respectfully submitted,

                                                   BOND, SCHOENECK & KING PLLC


                                                   By:  */s Sharon M. Porcello*
                                                        Sharon M. Porcellio
                                                        Bar Roll No. 102382
                                                        Brendan M. Sheehan
                                                   Avant Building, Suite 900
                                                   200 Delaware Avenue
                                                   Buffalo, New York  14202
                                                   Telephone:  (716) 416-7000
                                                   E-mail: sporcellio@bsk.com
                                                   E-mail: bsheehan@bsk.com

                                                   BEVAN, MOSCA & GIUDITTA, P.C.
                                                       William K. Mosca, Esq.
                                                       Kenneth J. Sheehan, Esq.
                                                       John D. Coyle, Esq.
                                                       222 Mount Airy Road, Suite 200
                                                       Basking Ridge, NJ  07920
                                                       Telephone: (908) 753-8300
                                                       E-mail: wmosca@bmg.law
                                                       E-mail: ksheehan @bmg.law
                                                       E-mail: jcoyle@bmg.law

                                                   *Attorneys for Defendant*

1301194.1