IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAOMI GONZALES,<br><br>                    Plaintiff,<br><br>       v.<br><br>AGWAY ENERGY SERVICES, LLC,<br><br>                    Defendant. | No. 5:18-cv-235 (MAD/ATB) |

**PLAINTIFF'S SUR-REPLY
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

{00291917 }

Plaintiff Naomi Gonzales ("Plaintiff" or "Ms. Gonzales"), by and through her attorneys, respectfully submits this sur-reply in opposition to Defendant Agway Energy Services, LLC's ("Defendant" or "Agway") Motion to Dismiss.

## INTRODUCTION

Pursuant to Plaintiff's Letter Request, ECF No. 50, and the Court's Order granting Plaintiff leave to file a sur-reply, ECF No. 52, Plaintiff's instant memorandum is limited to addressing arguments and misstatements of fact concerning relevant case law that Defendant first advanced in its reply memorandum in support of its Motion to Dismiss ("Reply"). For the reasons discussed herein and in Plaintiff's Response in Opposition to the Motion to Dismiss ("Response"), ECF No. 32, Defendant's Motion to Dismiss should be denied entirely.

## ARGUMENT

**I.     PLAINTIFF ADEQUATELY ALLEGES
        SUBJECT MATTER JURISDICTION AS CAFA'S SUBJECT
        MATTER JURISDICTION EXCEPTIONS ARE INAPPLICABLE.**

As Plaintiff explained in her Response, pursuant to the Class Action Fairness Act ("CAFA"), a district court has original jurisdiction over civil class actions in which the matter in controversy exceeds $5 million and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). Opp'n 16.

On reply, Defendant asserts for the first time that should the Court decide to restrict Plaintiff's proposed class to Agway's New York consumers (though for the reasons articled in Plaintiff's Response, Opp'n 16-19, it should not), the Court "would need to evaluate exceptions to CAFA jurisdiction." Reply 10 n.15. Not so. Defendant's contention that the Court's subject matter jurisdiction over this action may be defeated by CAFA's exemptions is belied by the plain

language of 28 U.S.C. § 1332(d), the face of Plaintiff's Complaint, and this action's procedural history.

CAFA enumerates three narrowly-tailored circumstances when a district court may or must "decline to exercise" jurisdiction despite the court's otherwise proper subject matter jurisdiction over the action:

*First*, CAFA's "interests of justice" exception, which is discretionary, provides that "[a] district court *may*, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate *and* the primary defendants *are citizens of the State in which the action was originally filed* . . ." 28 U.S.C. § 1332(d)(3) (emphases added).

*Second*, CAFA's "local controversy" exception provides that a district court shall decline to exercise jurisdiction over a class in which (1) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate *are citizens of the State in which the action was originally filed . . . [and] (3)* "principal injuries resulting from the alleged conduct or any related conduct of each defendant were *incurred in the State in which the action was originally filed*;" and (4) no other class action "asserting the same or similar factual allegations against any of the defendants" has been filed within three years prior to the present action. 28 U.S.C. § 1332(d)(4)(A) (emphases added).

*Third*, CAFA's "home state" exception provides that "[A] district court shall decline to exercise jurisdiction . . . [if] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, *and* the primary defendants, *are citizens of the State in which the action was originally filed*." 28 U.S.C. § 1332(d)(4)(B) (emphases added).

Irrespective of what class this Court ultimately certifies, CAFA's exceptions are inapplicable. All three exceptions require that at least one third of the class are citizens of the state where the action was originally filed, and here that is Delaware. Even if the class is composed of only New York customers, less than one third will be citizens of Delaware. *See* Complaint, ECF No. 1, ¶¶ 9-12. "Where the language of a statute 'has a plain and unambiguous meaning . . .' courts should proceed no further." *Aros v. United Rentals, Inc.*, No. 10-73, 2011 WL 1647471, at *5 (D. Conn. Apr. 25, 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)) (holding that none of CAFA's three exceptions applied). Because there is no basis for asserting that more than one-third of the proposed class members are citizens of Delaware, none of the CAFA exceptions apply.

## II.   DEFENDANT'S NEW TRANSFER ARGUMENTS FAIL.

On February 12, 2018, the parties stipulated to transfer to the Northern District of New York, ECF No. 19, rendering Defendant's initial contentions concerning transfer moot. Notwithstanding, Defendant for the first time now contends that its transfer argument "is very much alive as to the purported class of Pennsylvania customers," and asserts that the forum selection clause in the Pennsylvania agreement requires transfer of the putative class members' claims to a Pennsylvania court. Reply 11-12. Not so. The determination of proper venue focuses on the named plaintiff, not unnamed putative class members, and the existence of copycat litigation in Pennsylvania does not change this analysis.

### A.   Venue Considerations Focus On The Named Plaintiffs, Not Proposed Class Members.

Whether Plaintiff can represent similarly situated Pennsylvania victims who may otherwise be subject to a forum selection clause is presently of no moment, as the class' geographic scope is an issue to be determined at the class certification stage. *See Standard Fire*

{00291917 }

3

*Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("[A] nonnamed class member is [not] a party to the class-action litigation before the class is certified."); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004) ("[P]utative class members are not parties to an action prior to class certification.") (citing *Zepeda v. U.S. I.N.S.*, 753 F.2d 719 (9th Cir. 1983))).

*In re Broadcast.com, Inc.*, No. 00-18, 2000 WL 35586773 (E.D. Tex. Aug. 31, 2000) is particularly instructive.  There, the defendant, Yahoo!, asserted "that dismissal or transfer is appropriate based on the fact that absent class members registering after July, 1999 affirmatively agreed to the terms of service containing the forum selection clause." *Id.* at *7.  The forum selection provision Yahoo! sought to enforce stated, "You and Yahoo agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California." *Id.* at *2.  The plaintiffs -- who, as here, were not bound by the forum selection clause but sought to represent individuals who were purportedly bound -- filed the action in the Eastern District of Texas.  The court denied the defendant's motion, holding, "the court has certified no class; accordingly, the fact whether absent class members may be bound by a forum selection clause is irrelevant at this stage of the proceedings.  Of course, Yahoo! is free to re-urge this argument if and when the court certifies any class." *Id.* at *7.

*Curtis v. Wheaton Franciscan Servs., Inc.* is likewise on point.  No. 16-4232, 2016 WL 6432579 (N.D. Ill. Oct. 31, 2016).  In *Curtis*, the defendants moved to enforce a forum selection clause that did not apply to the plaintiffs but that allegedly applied to some putative class members. *Id.* at *7.  The court denied defendants' motion to transfer, concluding that the defendants' venue "arguments are premature on the present motions to transfer given that they precede class certification.  Only three plaintiffs are before the court right now, and none are

bound by a forum selection clause." *Id.*[1] Since Plaintiff is indisputably not bound by the Pennsylvania forum selection clause, the same result should follow here.

Moreover, prohibiting named plaintiffs from representing class members in other states, thereby requiring separate cases for each state, would promulgate the problems CAFA was enacted to resolve: overlapping and uncoordinated actions in multiple courts, leading to tremendous redundancy and possibly conflicting outcomes caused by multiple judges in different courts adjudicating the same issues. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-17 (1997)).

### B.     The Existence Of A Copycat Action Is Inconsequential.

Defendant's new argument that *Brown v. Agway*, 18-cv-00321 (W.D. Pa. 2018) -- a copycat action belatedly filed against Agway in Pennsylvania -- weighs in favor of transfer of the putative Pennsylvanian class members' claims to Pennsylvania likewise lacks merit. Reply 11-12. Not only does this contention fail for the same reasons articulated above, but this position is also foreclosed by the first-filed doctrine. As the Second Circuit explained in *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, "[t]he first-filed rule states that, in determining the proper venue, '[w]here there are two competing lawsuits, the first suit should have priority.'" 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)); *accord Moscati v. Kelly*, No. 15-0937, 2015 WL 3605768, at *2 (E.D.N.Y. June 5, 2015) ("The rule allows courts to avoid duplicate litigation by adhering to the inherently fair concept

---

[1] Citing *Henrichs v. Nova Biomedical Corp.*, No. 14-2, 2014 WL 2611825, at *2 (S.D. Tex. June 11, 2014) ("[T]he law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives.") (internal quotation marks omitted); *Joseph v. Liberty Nat'l Life Ins. Co.*, No. 08-20117, 2008 WL 2026006, at *1 (S.D. Fla. May 9, 2008) ("[I]n considering venue, the inquiry must be focused only on the named Plaintiffs and not the potential class members.").

that the party who commenced the first suit should generally be the party to attain its choice of venue.") (citation and quotation marks omitted).

The first-filed rule is particularly applicable here as substantial portions of the copycat *Brown* complaint are nearly identical to Plaintiff's Complaint filed four months prior. *Compare Gonzales* Complaint ¶¶ 1-4, 14-15, 21-22, 24-25, and 35-37 *with Brown* Complaint ¶¶ 1-6, 20-21, 36-37, and 42-46. Additionally, the causes of action alleged in Plaintiff's Complaint subsume the claims alleged in the later-filed action (breach of contract and unjust enrichment). *Compare Gonzales* Complaint ¶¶ 66-73 and 80-83 *with Brown* Complaint ¶¶ 64-74.

Accordingly, there is no basis for transfer.

### III.   DEFENDANT MISCONSTRUES *MIRKIN V. VIRIDIAN ENERGY*.

In response to Defendant's argument that Plaintiff did not suffer cognizable damages arising out of Defendant's nefarious conduct, Plaintiff cited to, *inter alia*, *Mirkin v. Viridian Energy, Inc.*, No. 15-1057, 2016 WL 3661106, at *9 (D. Conn. July 5, 2016) where the court held that an energy consumer's contractual damages are the difference between the ESCO's actual rates and the rates the consumer would have been charged had the ESCO based its rate on the agreed-upon pricing components. Opp'n 33 ("But the difference between the utility and Viridian's rate is not at issue in the breach of contract claim. Instead, the damages here would be the difference between what Viridian charged the plaintiffs and what it would have charged if its rates were actually based on "wholesale market conditions.")).

In order to distinguish *Mirkin*, Defendant misstates its relevant facts. Specifically, Defendant misleadingly states that "Plaintiff's cite to *Viridian* for a damages measurement fails because Defendant here did not limit variable rate determinations to 'wholesale market conditions.'" Reply 16 n.45. But Agway's contract and Viridian's are the same. Viridian

{00291917 }

6

Energy represented that its variable rate would fluctuate based on wholesale market conditions, "*plus* any applicable fees, charges or taxes." *Mirkin*, 2016 WL 3661106, at *3 (emphasis added). Likewise, Agway's contract represents that its variable rate will be based on wholesale costs and market factors "*plus* all applicable taxes, fees, charges or other assessments . . ." Indeed, Defendant heavily relies on the word "plus" in its own description of its variable rate in seeking to evade liability for having a price untethered from its actual wholesale costs. *See* Reply 12 ("Defendant's agreement clearly set forth the basis for pricing, including the fact that the rates would vary for 'market-based' *plus* other factors, and also that no savings were guaranteed.") (emphasis original); *id.* at 12 ("Again, in full, the agreement sets forth in detail that the variable rate: 'shall each month reflect the cost of electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), related transmission and distribution charges and other market-related factors, *plus* all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins.'") (emphasis original); *id.* at 18-19 ("[Agway's agreement] expressly provides that the variable rate can reflect market-related factors *plus* all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins. The word 'plus' is one of expansion, not limitation . . .") (emphasis original).

    *Mirkin* is directly on point and Plaintiff similarly plausibly alleged her breach of contract claim.

## CONCLUSION

    For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

Dated: April 16, 2018

        Respectfully Submitted,

        *D. Greg Blankinship*
        D. Greg Blankinship
        Todd S. Garber
        Chantal Khalil
        **FINKELSTEIN, BLANKINSHIP,**
        **FREI-PEARSON & GARBER, LLP**
        445 Hamilton Avenue, Suite 605
        White Plains, New York 10601
        Tel: (914) 298-3281
        Fax: (914) 824-1561
        gblankinship@fbfglaw.com
        tgarber@fbfglaw.com
        ckhalil@fbfglaw.com

        *Attorneys for Plaintiff*
        *and the Putative Class*