# Exhibit A

2018 WL 3542624
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Heidi LANGAN, on behalf of herself and all others similarly situated, Plaintiff-Appellee,
v.
JOHNSON & JOHNSON CONSUMER COMPANIES, INC., Defendant-Appellant.

No. 17-1605
|
August Term, 2017
|
Argued: February 6, 2018
|
Decided: July 24, 2018

**Synopsis**
**Background:** Consumer brought putative class action against seller of baby bath products, alleging violation of Connecticut Unfair Trade Practices Act (CUTPA) and other state consumer protection laws. The United States District Court for the District of Connecticut, No. 13 Civ. 1471, Jeffrey A. Meyer, J., 2017 WL 985640, certified class. Seller appealed.

**[Holding:]** The Court of Appeals, John M. Walker, Jr., Circuit Judge, held that district court failed to engage in rigorous analysis of similarities and difference in various state laws at issue, and thus remand was necessary.

Vacated and remanded.

West Headnotes (19)

[1]  **Federal Courts**
    Class actions

    Appellate court reviews a district court's decision to certify a class for abuse of discretion, the legal conclusions that informed its decision de novo, and any findings of fact for clear error. Fed. R. Civ. P. 23.

    Cases that cite this headnote

[2]  **Federal Courts**
    Mode and sufficiency of presentation

    Because a plaintiff's standing to sue implicates appellate court's power to hear the case, appellate court must consider the issue even if it was barely raised in and not addressed by the district court.

    Cases that cite this headnote

[3]  **Federal Civil Procedure**
    In general; injury or interest
    **Federal Courts**
    Case or Controversy Requirement

    Article III of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies; to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit. U.S. Const. art. 3, § 2, cl. 1.

    Cases that cite this headnote

[4]  **Federal Civil Procedure**
    In general; injury or interest
    **Federal Civil Procedure**
    Causation; redressability

    To have standing to sue, a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress.

    Cases that cite this headnote

[5]  **Federal Civil Procedure**
    In general; injury or interest

    The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts.

    Cases that cite this headnote

| | |
|---|---|
| **[6]** | **Constitutional Law**<br>— Encroachment on Legislature<br>**Constitutional Law**<br>— Encroachment on Executive<br>**Federal Civil Procedure**<br>— Causation; redressability<br>The standing requirement acknowledges that not all injuries can be remedied by courts, and that even some injuries that could are the responsibility of the political branches instead.<br>Cases that cite this headnote |
| **[7]** | **Constitutional Law**<br>— Advisory Opinions<br>To avoid giving advisory opinions, court requires that parties that come before it have a sufficient stake in the outcome of the case to render it a case or controversy. U.S. Const. art. 3, § 2, cl. 1.<br>Cases that cite this headnote |
| **[8]** | **Federal Civil Procedure**<br>— Class Actions<br>Class actions are an exception to the general rule that one person cannot litigate injuries on behalf of another. Fed. R. Civ. P. 23.<br>Cases that cite this headnote |
| **[9]** | **Federal Civil Procedure**<br>— Class Actions<br>Class actions result in efficiencies of cost, time, and judicial resources and permit a collective recovery where obtaining individual judgments might not be economically feasible. Fed. R. Civ. P. 23.<br>Cases that cite this headnote |
| **[10]** | **Federal Civil Procedure**<br>— Representation of class; typicality; standing in general<br>**Federal Civil Procedure**<br>— Common interest in subject matter, questions and relief; damages issues<br>Whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under rule governing class actions, not a question of standing under Article III. U.S. Const. art. 3, §, 2, cl. 1; Fed. R. Civ. P. 23(b)(3).<br>Cases that cite this headnote |
| **[11]** | **Federal Civil Procedure**<br>— Common interest in subject matter, questions and relief; damages issues<br>Predominance requirement for class certification tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Fed. R. Civ. P. 23(b)(3).<br>Cases that cite this headnote |
| **[12]** | **Federal Civil Procedure**<br>— Common interest in subject matter, questions and relief; damages issues<br>The predominance requirement for class certification is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and these particular issues are more substantial than the issues subject only to individualized proof. Fed. R. Civ. P. 23(b)(3).<br>Cases that cite this headnote |
| **[13]** | **Federal Civil Procedure**<br>— Common interest in subject matter, questions and relief; damages issues<br>Variations in state laws do not necessarily prevent a class from satisfying the predominance requirement for class certification. Fed. R. Civ. P. 23(b)(3).<br>Cases that cite this headnote |
| **[14]** | **Federal Civil Procedure** |

Evidence;pleadings and supplementary material

As with all requirements for class certification, a party seeking certification has the ultimate burden to demonstrate that any variations in relevant state laws do not predominate over the similarities. Fed. R. Civ. P. 23.

Cases that cite this headnote

[15]  **Federal Civil Procedure**
Discretion of court

**Federal Courts**
Class actions

The decision to certify a class is a discretionary determination, which appellate court will only overturn if the district court abused its discretion; to be afforded this deference, however, the certification must be sufficiently supported and explained. Fed. R. Civ. P. 23.

Cases that cite this headnote

[16]  **Federal Courts**
Need for further evidence, findings, or conclusions

District court failed to engage in rigorous analysis of similarities and difference in various state consumer protection laws at issue when granting motion for class certification, and thus remand was necessary to determine whether state law similarities or differences would predominate, in consumer's action against seller of baby bath products, although both parties submitted complicated and confusing summaries of state consumer protection laws in 18 states; district court's analysis consisted of one paragraph, district court did not sufficiently engage with seller's arguments about reliance, instead concluding that it appeared that none of the states' high courts had insisted on reliance, other identified differences, including whether intent to deceive was required and whether causation could be presumed, were not discussed, and district court only stated generally that identified differences were minor and should not overwhelm questions common to class. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

[17]  **Federal Civil Procedure**
Common interest in subject matter, questions and relief;damages issues

District court has a duty, before certifying a class, to take a close look at whether the common legal questions predominate over individual ones. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

[18]  **Federal Civil Procedure**
Common interest in subject matter, questions and relief;damages issues

To determine whether variations in relevant state laws do not predominate over the similarities, as required for class certification, district courts must do more than take the plaintiff's word that no material differences exist; rather, district courts themselves must undertake a considered analysis of the differences in state laws. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

[19]  **Federal Civil Procedure**
Identification of class;subclasses

A district court that relies on subclasses to cure predominance issues as a prerequisite to certification must identify the required subclasses and explain why they are necessary. Fed. R. Civ. P. 23(b)(3).

Cases that cite this headnote

Appeal from the United States District Court for the District of Connecticut. No. 13 Civ. 1471—Jeffrey A. Meyer, *Judge*.

**Attorneys and Law Firms**

Mark P. Kindall, Izard, Kindall & Raabe, LLP, West Hartford, CT (Nicole A. Veno, Simsbury, CT, on the brief ), for Plaintiff-Appellee.

Harold P. Weinberger (Eileen M. Patt, Benjamin M. Arrow, on the brief ), Kramer Levin Naftalis & Frankel LLP, New York, NY, for Defendant-Appellant.

Before: Walker, Lynch, and Chin, Circuit Judges.

**Opinion**

John M. Walker, Jr., Circuit Judge:

 **\*1** Connecticut resident Heidi Langan sued Johnson & Johnson Consumer Companies, Inc. ("Johnson & Johnson") on behalf of herself and "all others similarly situated" for deceptive labeling. Plaintiff alleged that several of the company's baby products were labeled "natural" when they were not. Langan claimed that this labeling violated the Connecticut Unfair Trade Practices Act (CUTPA), as well as the state consumer protection laws of twenty other states, and sought to certify a plaintiff class. After both parties moved for summary judgment, the district court denied both motions, and certified a class of consumers who purchased two baby bath products in eighteen states.[1] We granted Johnson & Johnson leave to appeal the class certification. On appeal, Johnson & Johnson principally challenges the district court's conclusions that (1) Langan has Article III standing to bring a class-action claim on behalf of consumers in states other than Connecticut and (2) the state laws in the other states are sufficiently similar to support certifying the class. Although we hold that Langan has Article III standing, on the record before us, it is not clear that the district court undertook the requisite considered analysis of the material differences in the state laws at issue before concluding that their similarities predominated over their differences. We therefore VACATE the district court's grant of certification, and REMAND for further proceedings consistent with this opinion.

**BACKGROUND**

 **\*2** Connecticut resident Heidi Langan purchased several Johnson & Johnson sunscreens and bath products for her baby in 2012. Langan alleges that she purchased those products in part because their labels said they contained "natural" ingredients. In reality, the products were made up of a high percentage of non-natural, non-water ingredients.

In October 2013, Langan sued Johnson & Johnson on behalf of herself and "all others similarly situated" alleging that the company's labeling was deceptive and violated CUTPA as well as the "mini-FTC acts" of twenty other states. Langan sought to certify a plaintiff class and requested compensatory and punitive damages as well as attorney's fees. Both parties moved for summary judgment.

The district court denied both parties' motions for summary judgment and certified a class as to two bath products, but not the sunscreens. The two products, sold under the Aveeno Baby Brand, were the "Calming Comfort Bath" ("bath") and the "Wash and Shampoo" ("wash"). App'x 197. Johnson & Johnson petitioned for permission to appeal pursuant to Federal Rules of Civil Procedure 23(f), and we granted leave. On appeal, Johnson & Johnson principally challenges the district court's conclusions that (1) Langan has Article III standing to bring a class-action claim on behalf of consumers in states other than Connecticut, and (2) the state laws in the other states are sufficiently similar to support certifying the class.[2]

**DISCUSSION**

 [1] "We review a district court's decision to certify a class under Rule 23 for abuse of discretion, the legal conclusions that informed its decision *de novo*, and any findings of fact for clear error." Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 79 (2d Cir. 2015) (internal quotation marks omitted).

### I. Article III Standing

 **\*3** [2] Johnson & Johnson argues that Langan lacks constitutional standing to represent putative class members whose claims are governed by the laws of states other than Connecticut. Because a plaintiff's standing to sue implicates our power to hear the case, we must consider the issue even though it was barely raised in and not addressed by the district court. See Keepers, Inc. v.

*City of Milford,* 807 F.3d 24, 39 (2d Cir. 2015) (noting that standing may be raised "for the first time on appeal").

**[3]** **[4]** "Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.' " *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (internal quotation marks omitted). "To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Id.* (internal quotation marks and alterations omitted). To have standing to sue, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Id.*

Unremarkably, the parties agree that Connecticut's consumer protection statute, CUTPA, does not apply to the purchase of bath and wash products in other states. Likewise, the parties agree that Langan herself has standing to sue Johnson & Johnson under CUTPA because she alleged that she paid a premium in Connecticut for the products, based on Johnson & Johnson's representations that they were natural, and that those injuries can be redressed by an order compelling Johnson & Johnson to pay Langan money damages. *See Mahon*, 683 F.3d at 62.

The only point of contention is whether Langan has standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws. Because there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed in *In re Foodservice Inc. Pricing Litigation,* 729 F.3d 108 (2d Cir. 2013): as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), *id.* At 126–27, not a question of "adjudicatory competence" under Article III, *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). Compare *Richards v. Direct Energy Servs., LLC,* 120 F.Supp.3d 148, 154–56 (D. Conn. 2015) (denying certification as to out-of-state class members for lack of standing), with *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 376–77 (E.D.N.Y. 2010) (distinguishing standing from the Rule 23 inquiry and certifying class action brought under laws of multiple states after finding no standing problem).

"[A]s the Supreme Court has acknowledged, there is some 'tension' in its case law as to whether 'variation' between (1) a named plaintiff's claims and (2) the claims of putative class members 'is a matter of Article III standing ... or whether it goes to the propriety of class certification ....' " *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 160 (2d Cir. 2012) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 263 & n.15, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003)). To understand why variations in state law present a class certification problem and not a constitutional standing problem, it is helpful to consider the complicated relationship between the standing requirement and class actions generally.

**\*4** **[5]** **[6]** **[7]** The doctrine of standing tests whether a prospective litigant may properly invoke the power of the federal courts. *See Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The standing requirement acknowledges that not all injuries can be remedied by courts, and that even some injuries that could are the responsibility of the political branches instead. *See id.* ("The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches." (internal quotation marks and alterations omitted)); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). To avoid giving advisory opinions, we require that parties that come before us have a sufficient stake in the outcome of the case to render it a case or controversy. *See Steel Co.,* 523 U.S. at 97, 101, 118 S.Ct. 1003; *see also* U.S. Const. art. III, § 2.

**[8]** **[9]** Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Through Rule 23, Congress has authorized plaintiffs to bring, under limited circumstances, a suit in federal court on behalf of, not just themselves, but others who were similarly injured. *See id.* at 348–49, 131 S.Ct. 2541. Such suits result in efficiencies of cost, time, and judicial resources and permit a collective recovery where obtaining individual judgments might not be economically feasible. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("The policy at the very core of the

class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks omitted) ); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Although a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties "possess the same interest" and "suffer[ed] the same injury" gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases. *Wal-Mart*, 564 U.S. at 348–49, 131 S.Ct. 2541.

This requirement is easy enough to satisfy when the would-be class members' cases are substantially identical. For example, a plaintiff who purchased the same product, on the same day, at the same place, from the same defendant, because of the same misleading offer as many other purchasers would plainly have standing to sue on behalf of those similarly situated purchasers.

In reality, it rarely happens that the circumstances surrounding one plaintiff's claim end up being identical to the claims of another putative class member, let alone all of the others. Anticipating this, some of Rule 23's requirements (*e.g.*, commonality and typicality under 23(a), and predominance under 23(b) ) exist to prevent courts from certifying classes that do not share sufficiently similar characteristics. *See Wal-Mart*, 564 U.S. at 349, 131 S.Ct. 2541. At some point, however, a named plaintiff's claims can be so different from the claims of his putative class members that they present an issue not of the prudence of certifying a class under Rule 23 but of constitutional standing. *See Mahon*, 683 F.3d at 62–63. The question for our purposes is at what point the claim of a named plaintiff is so different from the claims of her would-be class members that the exception that we make to the general standing requirements for class actions should not apply. Our caselaw supplies a few answers.

We have held that the claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff. In *Mahon*, we considered a putative consumer class action against title insurance companies that allegedly concealed the availability of reduced rates. *See id.* at 60. The district court denied certification as to one of the defendant companies that had not actually sold insurance to the plaintiff, and we affirmed. *See id.* at 60–61. Even though the company used forms and practices that were similar to those used by the company that did sell to the plaintiff and was owned by the same parent company, we held that the plaintiff lacked standing to sue the company that had not actually misled her because, "with respect to each asserted claim" against each defendant, "a plaintiff must always have suffered a distinct and palpable injury to herself." *Id.* at 64 (alterations, quotation marks, and emphasis omitted).

*5 On the other hand, non-identical injuries of the same general character can support standing. *See NECA*, 693 F.3d at 148–49. In *NECA*, we held that the plaintiff, a purchaser of mortgage-backed certificates, could certify a class including certificate holders outside the specific tranche from which the named plaintiff purchased certificates, even though the certificates from each tranche varied in their payout priority. *See id.* at 164. We reasoned that these different payment priorities did not render a certificate holder who would be paid sooner incapable of representing a certificate holder who would be paid later, or vice versa, because all certificate holders had "the same necessary stake in litigating whether [the] lenders ... abandoned their" responsibilities to follow underwriting guidelines. *Id.* (internal quotation marks omitted). Compare *Gratz*, 539 U.S. at 262–63, 123 S.Ct. 2411 (finding no standing problem even though factual differences existed between the challenged race-based transfer policy applied to plaintiff and the freshman admissions policy applicable to others in class), with *Blum v. Yaretsky*, 457 U.S. 991, 1001–02, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that plaintiffs in state-run facilities who were threatened with transfers to facilities with lower levels of care did not have standing to sue on behalf of patients who were threatened with transfers to higher levels of care because the conditions of the transfers were "sufficiently different" such that "judicial assessment of their procedural adequacy would be wholly gratuitous and advisory").

The question in this case is whether there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct. Although we have not expressly resolved this question, we have previously assumed that this is an issue best addressed under Rule 23, rather than as a standing issue. *See*

*In re Foodservice*, 729 F.3d at 112. For example, in *In re Foodservice*, we considered a consumer class action against a food distributor that, the plaintiffs alleged, fraudulently overbilled its customers. *See id.* The defendants appealed the district court's certification of the class, claiming that certification was improper because the class action implicated the distinct contract laws of multiple states. *See id.* at 126. We rejected that argument and affirmed the certification, reasoning that "putative class actions involving the laws of multiple states are often not properly certified *pursuant to Rule 23(b)(3)* because the variation in the legal issues to be addressed overwhelms the issues common to the class." *Id.* at 126–27 (emphasis added).

This approach of considering variations in state laws as questions of predominance under Rule 23(b)(3), rather than standing under Article III, makes sense. For one, it acknowledges the obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate. *See In re Bayer Corp.*, 701 F.Supp.2d at 377 ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."). Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place. *See id.*

This approach also accords with the Supreme Court's preference for dealing with modest variations between class members' claims as substantive questions, not jurisdictional ones. *See Gratz*, 539 U.S. at 266, 123 S.Ct. 2411 (explaining that differences in use of race between transfer- and freshman-admissions policies "clearly ha[d] no effect on petitioners' standing to challenge the [policies]" but "might be relevant to a narrow tailoring analysis"); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("The standing determination is quite separate from certification of the class.").

Finally, the only other circuit to have addressed this issue has reached the same conclusion. *See Morrison*, 649 F.3d at 536 (explaining that whether plaintiff could bring putative class action on behalf of out-of-state class members "ha[d] nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be").

*\*6* We are not convinced by the reasoning of those district courts that have addressed the issue we confront as a standing issue. For example, in *Richards v. Direct Energy Servs., LLC*, the district court concluded that a Connecticut plaintiff that alleged that the defendant energy company had attracted customers with misleading promises of low rates lacked standing to sue on behalf of Massachusetts consumers who were injured by the same defendant. 120 F.Supp.3d at 151. The court reasoned that "[w]ithout an allegation that [the named plaintiff] personally was injured in Massachusetts," the plaintiff's claim was essentially that, like the plaintiffs in Massachusetts, he had "suffered in some indefinite way in common with people generally." *Id.* at 155 (internal quotation marks and alteration omitted). This reasoning falters upon its premise: the harm the plaintiff alleged was not a general grievance common to people generally; it was a specific grievance based on the defendant's falsely advertised rates, suffered by specific people (Connecticut and Massachusetts customers of the defendant), under a specific set of circumstances. *See id.* We fail to see how the fact that the defendant's wrongful conduct impacted customers in two states rendered the injuries of the Massachusetts consumers somehow more indefinite than the identical injuries of the Connecticut consumers.[3]

[10] Accordingly, we conclude that whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III. Since Langan's individual standing to sue is not in doubt, we turn to the question of whether the district court correctly determined that the predominance requirement of Rule 23(b)(3) was satisfied.

## II. Predominance

[11] [12] Langan attempted to certify a class under Rule 23(b)(3), the provision that allows for the common "opt-

out" class action, a class action designed to bind all class members except those who affirmatively choose to be excluded. *See Amchem*, 521 U.S. at 614–15, 117 S.Ct. 2231; *see also* Scott Dodson, *An Opt-In Option for Class Actions*, 115 Mich. L. Rev. 171, 177–79 (2016). To ensure that binding absent class members is fair, *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), before a district court may certify a class under Rule 23(b)(3) the party seeking certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks omitted). The predominance requirement is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof," and "these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).

 [13]  [14] Variations in state laws do not necessarily prevent a class from satisfying the predominance requirement. *See In re U.S. Foodservice*, 729 F.3d at 127 (holding that there was no predominance problem with a putative class action brought under the state contract law of various states where all of the jurisdictions had adopted the Uniform Commercial Code). As with all Rule 23 requirements, the party seeking certification has the ultimate burden to demonstrate that any variations in relevant state laws do not predominate over the similarities. *See Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541; *In re U.S. Foodservice*, 729 F.3d at 127 (finding no predominance issue where defendant had alleged but not proffered evidence to support its claim that variation in evidentiary standards among states overwhelmed the similarities).

 *7  [15] The decision to certify a class is a discretionary determination, which we will only overturn if the district court abused its discretion. *See In re U.S. Foodservice,* 729 F.3d at 116. To be afforded this deference, however, the certification must be sufficiently supported and explained. *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1006 (D.C. Cir. 1986) ("[I]t is unquestionably the role of an appellate court to ensure that class certification determinations are made pursuant to appropriate legal standards.").

 [16] The district court found that Langan had shown predominance since there was no indication that any of the minor differences Johnson & Johnson identified between the various state consumer protection laws "should overwhelm the questions common to the class" given that "[a]ll the states have a private right of action for consumer protection violations, allow class actions, and have various other important similarities." App'x 195–96. On appeal, Johnson & Johnson argues that the district court erred by failing to engage in a rigorous analysis of the similarities and differences in the various state laws at issue. We agree.

 [17] Under Rule 23(b)(3), the district court has a "duty," before certifying a class, to "take a close look" at whether the common legal questions predominate over individual ones. *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (internal quotation marks omitted). Although, to date, we have not explained what such a "close look" requires, out-of-circuit precedent offers helpful guidance.

 [18] To begin, district courts must do more than take the plaintiff's word that no material differences exist. *See Walsh*, 807 F.2d at 1016 (refusing to accept "on faith" the plaintiffs' claims on appeal that "no variations in state ... laws relevant to [the] case exist[ed]"). Rather, district courts themselves must undertake a considered analysis of the differences in state laws. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010). In *Sacred Heart*, the Eleventh Circuit reversed the district court's certification of a class of hospitals that claimed they were underpaid for medical services by a health maintenance organization. *See id.* The district court, in discussing the potential predominance issue regarding certain differences in relevant state laws, had stated only that there were "some variations" but that since the laws of "only six states" were involved, common issues would not be overwhelmed. *Id.* The Eleventh Circuit found this cursory explanation not to be a "serious analysis of the variations in applicable state law," and that by certifying a class based on it, the district court abused its discretion. *Id.*

 [19] As part of its analysis, a district court that relies on subclasses to cure predominance issues as a prerequisite

to certification must identify the required subclasses and explain why they are necessary. See *id.* at 1183. In *Sacred Heart*, the district court had also suggested in passing that identifying subclasses could be a way to address predominance problems. The district court, however, had not identified any potential subclasses, nor discussed how those subclasses would cure the predominance issues. *See id.* The Eleventh Circuit concluded that the district court's oblique reference to subclasses failed to explain how subclasses would prevent "the proliferation of disparate factual and legal issues," given that, in addition to the state law variations, material provisions of the individual contracts for legal services varied as well. *Id.* Because these factual and legal differences suggested a need for multiple sets of subclasses, the district court's mere mention of subclasses was not an "adequate response." *Id.*

**\*8** We are not convinced that the district court here undertook the requisite considered analysis of the variations in state law and the potential need for subclasses that might result from those variations. Although both parties submitted complicated and conflicting summaries of the state consumer protection laws in eighteen states, the district court's analysis consisted of one paragraph. In that paragraph, it is our view that the district court did not sufficiently engage with Johnson & Johnson's arguments about reliance, instead concluding that "it appears" that none of the states' high courts have insisted on reliance. *See* App'x at 195. The other identified differences—including whether intent to deceive is required, and whether causation can be presumed—were not discussed. As in *Sacred Heart*, the district court only stated generally that the identified differences were "minor" and "should [not] overwhelm the questions common to the class." App'x at 195. We believe that more precise and greater depth of analysis is required to comport with the "close look" required by the precedent.

Accordingly, we remand the case to the district court to conduct a more thorough analysis. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012) (vacating grant of class certification and remanding for further consideration as to predominance where it was not clear from the record on appeal "whether variations in state law might cause class members' interests to diverge"); *Walsh*, 807 F.2d at 1019 (remanding to the district court after clarifying the Rule 23(b)(3) predominance inquiry so the district court could redo the analysis). Although this court is free to consider variations in state laws in the first instance, *see, e.g.*, *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 146–48 (2d Cir. 2015), the judgment whether to certify a class under Rule 23(b)(3) is a discretionary determination that we think is best made by the district court upon appropriate analysis of the circumstances of the case. *See generally In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 31 (2d Cir. 2006), *decision clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007). Out of respect for the district court's comparative advantage at weighing whether, under the circumstances of this case, state law similarities or differences will predominate, we remand the case to the able district judge to carefully analyze the relevant state laws, decide whether subclasses are appropriate, reconsider the predominance question, and explain in greater detail its conclusion on that question.

## CONCLUSION

For these reasons, we VACATE the district court's grant of certification, and REMAND for further proceedings consistent with this opinion.

**All Citations**

--- F.3d ----, 2018 WL 3542624

---

Footnotes

1   Although the district court inadvertently omitted Alaska from the list of relevant states on page 26 and in n.3 of its opinion, the district court did include Alaska in the list of states for which it certified a class. Accordingly, we refer to a plaintiff class in eighteen states.

2   Johnson & Johnson also argues that that the district court erred by not requiring Langan to demonstrate that the proposed class was "administratively feasible." This argument is foreclosed by *In re Petrobras Sec.*, 862 F.3d 250, 267–70 (2d Cir. 2017) (rejecting the argument that proposed classes must be "administratively feasible" and holding that the class was "clearly objective" and "sufficiently definite" where it included people who acquired specific securities during a specific period in "domestic transactions" because class was "identified by subject matter, timing, and location," which made it "objectively possible" to ascertain members (emphasis omitted) ). Since the class at issue here is identified by subject

matter (purchasers of the two products), timing (before November 2012 and 2013 respectively), and location (the eighteen identified states), it is likewise "clearly objective" and "sufficiently definite" such that determining who purchased the products is undoubtedly "objectively possible." *Id.* at 269–70. Moreover, we think Johnson & Johnson's identification concerns are overstated. In *Petrobas*, we cited approvingly the district court's grant of certification where the district court allowed putative class members to provide a sworn affidavit indicating when and where they purchased the olive oil at issue (862 F.3d at 267 (citing *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ) ). Since we think it is more likely that a consumer would remember the time frame in which he purchased a bath or wash for his baby—that is, when his child was still a baby—than when he purchased a bottle of olive oil, we see no ascertainability problem with having the class members submit sworn affidavits describing the circumstances under which the purchases were made.

3  Johnson & Johnson's argument that *Mahon*, discussed earlier, requires a different result is unpersuasive. First, *Mahon*'s rejection of "analyz[ing] class certification before Article III standing" only requires that a district court first determine that the party plaintiff was actually injured by each of the named defendants before proceeding to the Rule 23 inquiry. *See Mahon,* 683 F.3d at 64. Second, because the redressability and fundamental fairness concerns that arise when a plaintiff attempts to haul a non-injurious defendant into court are not present when a plaintiff initiates a class action under various state laws prohibiting similar conduct by the same defendant, this case is distinguishable from *Mahon*. *See id.* at 65–66.

---

**End of Document**                                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.