```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
NAOMI GONZALES,

                          Plaintiff,

vs.                                       5:18-CV-235

AGWAY ENERGY SERVICES, LLC,

                          Defendant.
------------------------------------------------------x
```

*Telephone Conference* - July 27, 2018

James Hanley Federal Building, Syracuse, New York

HONORABLE ANDREW T. BAXTER

United States Magistrate Judge, Presiding

A P P E A R A N C E S (by telephone)

```
For Plaintiff:      FINKELSTEIN, BLANKINSHIP LAW FIRM
                    Attorneys at Law
                    445 Hamilton Avenue
                    White Plains, New York 10601
                      BY:  DOUGLAS G. BLANKINSHIP, ESQ.
                           CHANTAL KHALIL, ESQ.

For Defendant:      BOND SCHOENECK & KING
                    Attorneys at Law
                    200 Delaware Avenue
                    Buffalo, New York 14202
                      BY:  SHARON M. PORCELLIO, ESQ.

                    BEVAN, MOSCA & GIUDITTA
                    Attorneys at Law
                    222 Mount Airy Road
                    Basking Ridge, NJ 07920
                      BY:  JOHN D. COYLE, ESQ.
                           WILLIAM K. MOSCA, JR., ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
P.O. Box 7367
*Syracuse, New York 13261*
*(315)234-8546*

1       THE COURT: Good afternoon. This is Judge Baxter.
2  This is Gonzales versus Agway Energy Services, LLC;
3  5:18-cv-235. Can I have the appearances for plaintiff,
4  please?
5       MR. BLANKINSHIP: Good afternoon, Your Honor. My
6  name is Greg Blankinship with Finkelstein, Blankinship,
7  Frei-Pearson & Garber, for the plaintiff. And on the phone
8  with me today is my associate Chantal Khalil.
9       THE COURT: For the defendant?
10      MS. PORCELLIO: Sharon Porcellio from Bond,
11 Schoeneck & King.
12      MR. MOSCA: And Bill Mosca and John Coyle from
13 Bevan, Mosca & Guiditta.
14      THE COURT: Every time I turn around, our agenda
15 expands in this case. We set the conference originally based
16 on two letter motions; a letter motion to compel the
17 defendants to complete initial document production and to
18 produce witnesses for a 30(b)(6) deposition, which was docket
19 number 61, and the defendant's response, which was docket
20 number 62.
21      Since then we have gotten another letter motion
22 from plaintiff, docket number 64, complaining about a lack of
23 response to interrogatories they served on May 15. And then
24 most recently today at around noontime we got docket number
25 66 from plaintiff, which is a letter motion to reconsider

1  limitations that I put on the scope of discovery based on a
2  recent Second Circuit decision decided on July 24th.  So this
3  is what we like to call in our business a Friday special.  So
4  I'm going to address each of these in turn, starting with
5  first in, first out.
6          With respect to the motion to compel, docket number
7  61, that focuses primarily on the 30(b)(6) depositions, have
8  the parties made any progress in resolving that?  Have there
9  been any other developments you want to bring to my attention
10 before I address that?
11         MR. BLANKINSHIP:  No, Your Honor, we haven't made
12 any progress in resolving that and nothing else has happened
13 on that front.
14         THE COURT:  There was a fair amount of squabbling
15 over the initial limited document production, and I'm not
16 going to get bogged down in the competing narratives on that,
17 but why don't we have Mr. Blankinship or Ms. Khalil explain
18 to us how you think that this production is incomplete,
19 taking into account what you were told about some of the
20 logistical issues relating to ESI for the defendant.
21         MR. BLANKINSHIP:  Your Honor, I would be happy to
22 address those.  From the perspective of the initial document
23 production, I'm willing to take defense counsel's word that
24 they've given us good examples of the pricing spreadsheets
25 and then, obviously, hopefully we'll have a chance to ask the

1  30(b)(6) witness about that at some point.  What we don't
2  have is data regarding the individual plaintiff.  You know,
3  these independent energy companies, like all companies, have
4  customer databases, and there is going to be information
5  particular to the plaintiff, and we would like that produced
6  in advance of a 30(b)(6) deposition from the database so we
7  can use that as a means to question the witness with respect
8  to what kind of information is in that database and what
9  would be relevant to pull out of it and how it can be
10 utilized.
11         And, Your Honor, the issue about the documents, we
12 certainly want to have them resolved, but we really only want
13 the documents as an aide to the 30(b)(6) deposition, that's
14 really it.  That and some answers to our basic interrogatory
15 requests are where we're focused on.  If I can just take a
16 moment and give you a little bit of our thought process and
17 why we suggested we do it this way.
18         It's our thought at the start of this discovery
19 process we would take targeted focused discovery and figure
20 out basically what it is that we're ultimately going to need,
21 what kind of documents and databases exist and what's going
22 to be proportional to the needs of that case.  To that end,
23 promptly after our Rule 26 conference back in May, we issued
24 a Rule 30(b)(6) deposition notice, which is focused at a high
25 level on what defendant's policies and procedures are with

1   respect to setting the variable rates and how they go about
2   marketing to consumers.  And we also wanted some high level
3   information about what kind of data and documents exist with
4   respect to individual customers, and also the data that they
5   use when they set the variable rate.
6           And it's our experience in doing these kind of
7   depositions in a number of other cases against independent
8   energy companies that the basic documents we've asked for is
9   a useful aide in working through these issues with the
10  deponent.  That's why we issued the 30(b)(6) notice.
11          And I would be happy to address some of the other
12  issues with respect to why we think that the defendant should
13  be required to follow the rules and provide a witness or why
14  we don't think that the notice is overbroad.  I'm not sure
15  how much detail Your Honor wants at this point.
16          THE COURT:  At this point I'm just trying to focus
17  on what you're missing from the initial limited document
18  production.  So what you're saying basically is it relates to
19  the database that goes into the pricing formula.
20          MR. BLANKINSHIP:  Well, Your Honor, I think, I
21  mean, if defendant is correct that they've produced an
22  example of the pricing spreadsheet they used to set the
23  variable rate, then I think we're good on that.  I think the
24  only piece we're really missing is customer data and the way
25  we propose -- and there is obviously going to be a large

1  amount of that, they have numerous customers for the period
2  of time.  So what we would propose just for the initial
3  purpose of the deposition is they just produce the data
4  that's relevant; that shouldn't be onerous.  And I would
5  imagine if their IT person sat down, it would take them an
6  hour.  It's just not that much data because it's only about
7  one plaintiff.  But it would give us a feel for what the
8  database looks like and what's in there and it will be a
9  useful tool for the deposition.
10          THE COURT:  Focusing just on any deficiencies in
11 this limited document production and that clarification of
12 what plaintiff is looking for from the customer data, what,
13 if anything, does the defense want to say?
14          MR. COYLE:  There is a big disparity between the
15 parties' positions about what Mr. Blankinship says as a high
16 level, every time he characterizes this he says --
17          THE COURT:  Stop.  Stop.  Look, we're going to get
18 into the 30(b)(6) notice for just a minute.  My question is
19 can you give him the customer data with respect to the
20 plaintiff and complete this initial document production?
21 That's just the small piece I'm chewing on right now.
22          MR. COYLE:  Then I apologize to the Court.  We're
23 back to the circular question which is, I've approached
24 trying to get ESI discovery.  This is maintained in the
25 database.  The information will be extrapolated and produced.

1   I tried to ask what format it is to be produced, and I have
2   no answer.  I can produce all of the data for Mrs. Gonzales
3   within a very expedited period of time as soon as
4   Mr. Blankinship tells me how I can give it to him.
5              MR. BLANKINSHIP:  Your Honor, I have to admit I'm
6   at a little bit of a loss.  I don't think we're talking about
7   a big data extraction here.  I imagine that if the CEO of
8   Agway wanted a printout of all the information about
9   Ms. Gonzales, there wouldn't be this quibbling about what
10  form.  I just want them to print out whatever data they have.
11  And I'm sure whatever form they want to give to me in this
12  initial production will be just fine.  I've done this a half
13  a dozen times with other independent companies, I've never
14  really run into this kind of roadblock.  Certainly whatever
15  format they produce, I'll be happy to use it.
16             THE COURT:  And I don't profess to be an expert on
17  ESI and I'm thankful everyday that I'm in a little district
18  in Upstate New York where we don't have huge squabbles about
19  ESI, but I do think it's a little naive to say you'll take
20  whatever format it can come in because you might get a PDF
21  that's a thousand pages long and the columns don't line up or
22  something like that.  So I would encourage you to have a
23  brief conversation with Mr. Coyle at another time in terms of
24  what the options are, in terms of how it's produced, the
25  native formats on a disk that you can manipulate or search.

1   I don't know what the options are, but, you know, I've had
2   too many cases where somebody says yeah, yeah, just print
3   them out for me and then they're not happy with what they get
4   just because of the difficulty sometimes transitioning from
5   electronic data to paper.  Sounds like it's a fairly narrow
6   issue and one that you ought to be able to work out.
7              MR. BLANKINSHIP:  I agree, Your Honor.  I would be
8   happy to discuss it with him.
9              MR. COYLE:  I will get this information from Agway,
10  I will present it in a printed form, and if this is not
11  acceptable to Mr. Blankinship, we'll find what is.
12             THE COURT:  Sounds like a plan.  So we're through
13  step 1A.
14             The other thing you've argued about that I'm not
15  going to get dragged into is the question of how this should
16  have been cued up for me, whether one side should have moved
17  for a motion to compel or the other side should have moved
18  for a protective order.  My ground rules basically for
19  non-dispositive or discovery motions are a little simpler;
20  somebody needs to write me a letter and just very briefly cue
21  up the issue and I have a phone conference and we figure it
22  out.  So that's how we're doing it now.
23             The more fundamental issue is the conflict about
24  the Rule 30(b)(6) deposition, and that seems to boil down to
25  what the scope of this admittedly early deposition should be.

1  Agway seems willing to proffer someone to provide a basic
2  overview of its ESCO business policies, but what they're
3  concerned about at least on paper the 30(b)(6) notice seems
4  to try to lock in an Agway witness as to a comprehensive
5  account of most of its ESCO business practices, which would
6  require a witness to do a comprehensive review of a huge
7  volume of documents relating to the entire business line at
8  least in New York over a period of several years.
9          So why don't we start by having each side try to
10 verbalize what it is they're looking for here and maybe we
11 can overcome the disconnect between what Agway seems to think
12 the plaintiff wants and the relative detail and formality of
13 the 30(b)(6) notice.
14         So, Mr. Blankinship, you're looking for stuff at a
15 high level.  There seems to be some debate over what that
16 means and whether there is some way that you can get an
17 overview without then trying to bind Agway to a somewhat
18 overview preliminary description of their business practices.
19         MR. BLANKINSHIP:  I would be happy to try to
20 address that, Your Honor.  And again, I've actually done
21 these about half a dozen times, and every time it's never
22 taken the full seven hours.  And I've used almost literally
23 the exact same deposition notice every time and it has never
24 required court intervention before.
25         And I think the fact that we continually mention

1   things like the policies and procedures by which things
2   occurred should make clear that we're not asking for an
3   explanation of every single transaction, every single
4   customer interaction.  What I'm going to ask for first is a
5   basic description about how Agway goes about setting its
6   variable rate.  I want to know who the people are who are
7   responsible for making those decisions.  I want to know about
8   the process.  Do they sit around in a conference room and do
9   they use specific spreadsheets?  What is the general industry
10  data that they consider?  How do they know what competitors
11  are charging?  And what kind of databases do they have
12  reflected in the wholesale cost of gas?  Along those lines.
13          I'll ask them to identify the factors that they
14  consider when setting the variable rate.  And I'm not saying
15  you have to tell me whether or not they considered that there
16  was a higher temperature in May one year.  I'm going to ask
17  how do you consider weather when you're looking at these
18  types of questions.  And then I'm going to want to have
19  testimony about what kind of databases and documents exist so
20  that we can then have a basic understanding of what materials
21  there are that are germane.
22          That way the parties can all be on the same page
23  about what the relevant information is as proportional to the
24  needs of the case.  What I don't want to have happen is for
25  the defendant to go off on its own, collect what they think

1  is relevant information, hand it over and say, well, we're
2  done now, it's too costly to have to do it twice. I don't
3  want them to do it twice. I want it to happen in an orderly
4  fashion. And if we can have discovery about that basic
5  information, we can do that.
6          Of course, the other piece is we want some basic
7  information about how they go about marketing. And I'm not
8  saying that they need to list every single marketing piece
9  that's ever been sent out. I just want a general description
10 of who's in charge of marketing, how they go about
11 determining how to market to consumers and generally how they
12 view that.
13         THE COURT: So Mr. Coyle?
14         MR. COYLE: I don't have a problem with that.
15         THE COURT: There is a court reporter here so you
16 can make a transcript of this, and if the deposition goes off
17 in some other direction, you've got some sense of what
18 Mr. Blankinship is looking for. So you're saying you're okay
19 with that general description of what the deposition would
20 be?
21         MR. COYLE: That description fits the connection of
22 a high level overview. I don't need to repeat the positions
23 expressed in my papers, my opinions, that's not what the
24 order requested, if that's what Mr. Blankinship would like to
25 be limited in the information he just requested, of course.

1              THE COURT:  I'm going to move on before it gets
2    more complicated.
3              MR. BLANKINSHIP:  Your Honor, if I may before you
4    move on.  Part of the issue we have in this case is getting
5    some commitments as to when these events are going to occur.
6    Can we set a deadline of, say, two weeks when they will
7    produce a witness on a mutually agreeable date?
8              MR. COYLE:  I think two weeks is probably quick
9    only because the person who is going to be that witness who I
10   have reached out to to get the information of the initial
11   disclosure is on vacation.  I believe he is coming back
12   Monday.  I do not know his schedule right now, by I see no
13   reason that we couldn't -- we will absolutely do this in the
14   month of August.  I will do my best to do it in two weeks, I
15   can try for two weeks, but if you give me three, I can
16   definitely make three.
17             MR. BLANKINSHIP:  Yeah, we can live with that.
18             THE COURT:  Okay.  So the next issue is the
19   interrogatories.  Are those still outstanding, Mr. Coyle?
20             MR. COYLE:  No.
21             MR. BLANKINSHIP:  I'm going to disagree with that,
22   Your Honor.
23             THE COURT:  Okay.
24             MR. COYLE:  I'll be more specific.  There are
25   written responses in the interrogatories and document

1  requests, so they are written responses out there, the
2  substance of which we are in disagreement.
3              THE COURT:  And were those just filed recently?
4              MR. COYLE:  This week, Your Honor, just two days
5  ago.  I don't remember if it was recently.
6              MR. MOSCA:  They were filed Wednesday.
7              THE COURT:  You have not had an opportunity to meet
8  and confer with respect to those objections?
9              MR. COYLE:  We had tried to schedule something for
10 today.  I had an urgent matter come up in another case and I
11 was unfortunately not able to do that, so that's my fault
12 that we did not.
13             THE COURT:  So I haven't seen the responses or the
14 objections, so I'm going to direct the parties to meet and
15 confer.  And by that I mean actually speak with each other,
16 whether it be over the telephone or in person, as opposed to
17 just exchanging e-mails.  And if our first two topics this
18 afternoon are any indication, you might actually find some
19 common ground if you actually take the time to talk with each
20 other.
21             If that's not the case, I'm sure you'll write me
22 and I will intervene, if I need to.  But I'm not going to get
23 involved in a squabble over objections to interrogatories
24 that were filed a few days ago that the parties haven't even
25 discussed.

1            MR. COYLE:  Greg, when you get off the phone, if
2    you could send me your availability Monday, Wednesday.
3            MR. BLANKINSHIP:  I would be happy to, thank you.
4            THE COURT:  Last, but not least, the *Langan* case.
5    That did come across my radar this morning and then I saw the
6    letter.  I am not going to -- I'm not going to address a
7    motion to reconsider my limitation of the initial discovery
8    to New York today.  I acknowledge that that decision is
9    certainly going to be relevant to Judge D'Agostino's
10   evaluation of at least part of the pending motion.  But the
11   one piece in my very quick review of the *Langan* case that
12   also has to be addressed is the extent to which the New York
13   and Pennsylvania laws with respect to the ESCOs are similar
14   and I'm not going to -- I don't think it's appropriate for me
15   to address that in the first instance.
16           In any event, given as I understand it that the
17   vast majority of the customers are in New York and the
18   struggle that the parties have had to address the initial
19   phase of discovery as it relates to New York, I think it just
20   makes more sense as an initial matter that you proceed to
21   focus on the New York side of the house in initial discovery
22   and then, you know, depending on where we are after you
23   complete that, if Judge D'Agostino hasn't addressed the
24   motion, then I can reconsider my ruling and expand the scope
25   of discovery.  But I think the course of conduct that you've

1   outlined with the Rule 30(b)(6) deposition to get the lay of

2   the land to help you focus what's going to be proportional

3   discovery strategy going forward, it's logical for you to

4   continue down that path and I don't think that it's essential

5   that it includes a Pennsylvania piece of the case at this

6   stage.

7            MR. MOSCA:  Your Honor, if I may.  First I would

8   like to have an opportunity on behalf of the defendants to

9   file a written response to Mr. Blankinship's letter.  We just

10  spoke of the case today when he brought it to our attention.

11  And one of the things I noticed is it doesn't say anything

12  about venue in that case, and we actually have a venue clause

13  in our Pennsylvania contract, so there is a lot to be -- some

14  of our response to that as already laid out in our motion to

15  dismiss the case doesn't address those things, but I would

16  like to have an opportunity to file a short written response

17  to Mr. Blankinship's letter here.

18           THE COURT:  I think that's perfectly appropriate.

19  I would I think focus your energies on responding to Judge

20  D'Agostino rather than me, but I will certainly review that

21  as well.  And to the extent we revisit the scope of discovery

22  issue before Judge D'Agostino has resolved the motion, then I

23  will certainly consider that as well.

24           MR. MOSCA:  Thank you, Your Honor.  If you could in

25  your text order then afterwards, if you could just show that

1  you've given us leave to file with the Court, and obviously
2  we'll make sure that we send the letter to the judge and copy
3  you, but however you'd like to have that done, we'll do it.
4              THE COURT:  Well, the one little complication I
5  would say is that Judge D'Agostino is much more active than
6  the other district judges in managing dispositive motions, so
7  what I would suggest you do, rather than me stick my neck out
8  and say it's fine for you to write a letter, for all I know
9  she could strike Mr. Blankinship's letter because he didn't
10 ask permission to file it first, but I would just file it
11 first with a cover letter asking for leave to respond and
12 then file your response.  And I suspect given that the horse
13 is already out of the barn and it's a significant new
14 development, she'll certainly allow you to respond, but
15 rather than me give you that permission, I think you should
16 ask from her because she's very active in managing her
17 dispositive motion calendar.
18             MR. MOSCA:  We'll do so, Your Honor.  And to the
19 extent that you confer with Judge D'Agostino in the meantime,
20 please advise her that we are certainly going to ask for her
21 permission and get something on file quickly.
22             THE COURT:  We'll put that in the minute entry so
23 that she knows it's coming.
24             MR. MOSCA:  Thank you, Your Honor.
25             THE COURT:  Anything else we need to discuss today?

1   Mr. Blankinship?
2           MR. BLANKINSHIP:  No, Your Honor, we appreciate it.
3           THE COURT:  Mr. Coyle, anything else?
4           MR. COYLE:  No, Your Honor.  Before we turn off.
5   Greg, if you want, maybe we can save the trouble of getting
6   transcripts from the court if you just send a letter or
7   e-mail outlining the scope of the deposition and we'll write
8   back and then we won't have to get the transcripts.
9           MR. BLANKINSHIP:  I think we'll stick to the
10  transcripts.
11          THE COURT:  Eileen McDonough is our court reporter.
12  There's a form on the website to request the transcript, and
13  she can expedite if you're willing to pay accordingly.
14          MR. MOSCA:  Thank you, Your Honor.  And, Sharon,
15  perhaps you can get that for us and we'll go from there.
16          MS. PORCELLIO:  Will do.
17          THE COURT:  Thank you, Counsel.
18                  *           *           *
19
20
21
22
23
24
25

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter