UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NAOMI GONZALES,

         **Plaintiff,**

 vs.                5:18-cv-235
                     (MAD/ATB)
AGWAY ENERGY SERVICES, LLC,

         **Defendant.**
_____

APPEARANCES:           OF COUNSEL:

**FINKELSTEIN, BLANKINSHIP,**     **D. GREG BLANKINSHIP, ESQ.**
**FREI-PEARSON & GARBER, LLP**    **TODD S. GARBER, ESQ.**
445 Hamilton Avenue, Suite 605      **CHANTAL KHALIL, ESQ.**
White Plains, New York 10601
Attorneys for the Plaintiff and
the Putative Class

**BOND, SCHOENECK & KING, PLLC**  **SHARON M. PROCELLO, ESQ.**
Avant Building, Suite 900         **BRENDAN M. SHEEHAN, ESQ.**
200 Delaware Avenue
Buffalo, New York 14202
Attorneys for the Defendant

**BEVAN, MOSCA & GIUDITTA, P.C.**   **WILLIAM K. MOSCA, JR., ESQ.**
222 Mount Airy Road, Suite 200     **KENNETH J. SHEEHAN, ESQ.**
Basking Ridge, New Jersey 07920    **JOHN D. COYLE, ESQ.**
Attorneys for the Defendant

**BARNES & THORNBURG LLP**      **THOMAS E. HANSON, JR., ESQ.**
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801
Attorneys for the Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Naomi Gonzales brought this putative class action against Defendant Agway Energy Services, LLC ("Agway") on December 6, 2017, in the District of Delaware. *See* Dkt. No. 1. The case was transferred to this court on February 26, 2018, by stipulation of the parties. *See* Dkt. No. 23. Plaintiff alleges certain deceptive and bad-faith pricing practices that caused overpayment by "thousands" of New York and Pennsylvania consumers who were charged a variable rate for electricity from November 2011 to the present. *Id.* at ¶ 4. Plaintiff is a citizen of New York; Defendant is a limited liability Delaware corporation with its principal place of business in Syracuse, New York. *Id.* at ¶¶ 5-6. Before the Court is Defendant's motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. *See* Dkt. No. 13.

## II. BACKGROUND

This case arises out of the alleged unfair and misleading pricing practices of Agway, which is an energy service company ("ESCO"). Plaintiff's counsel has filed nine actions in various federal courts alleging similar deceptive practices by ESCOs. These ESCOs allegedly bait consumers into utility service contracts by offering low introductory rates and then dramatically increasing rates to levels that do not reflect market-related factors. Instead, ESCOs allegedly raise their rates as high as possible without triggering an unprofitable attrition of customers. The defendants suggest that this is evidence that Plaintiff's counsel is engaged in filing frivolous suits against ESCOs. Regardless, in the similar cases brought by Plaintiff's counsel that the parties have pointed to, district courts have nearly always denied the defendants' motions to dismiss, with the Seventh Circuit reversing the one court that granted the motion. *See* Dkt. No. 32 at 1, n.1.

Agway provides natural gas and electricity to approximately 80,000 customers in New York and Pennsylvania. *See* Dkt. No. 1 at ¶ 8. ESCOs buy or generate electricity wholesale for

2

resale or sale to customers by, for example, owning electricity production facilities, purchasing electricity from wholesale brokers, or purchasing futures contracts for the delivery of electricity at a predetermined price. *Id.* at ¶ 14. Utilities are still delivered to customers through their local utility, and customers pay supply and delivery costs to their existing utility. *Id.* at ¶ 15. They pay the cost of the utility itself, however, to the ESCO. *Id*.

Agway solicited Plaintiff in December 2015, representing that it would charge a lower rate than the local utility. *Id.* at ¶ 18. Agway mailed Plaintiff the standard and uniform residential electricity customer agreement that would govern their relationship. *Id*. at ¶ 19. According to the agreement, customers are initially charged a fixed introductory rate for a set number of months. *Id*. at ¶ 20. Once the introductory rate expires, customers are automatically converted to a monthly variable rate. *Id.* This agreement represents that the variable rate "shall each month reflect the cost of electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), related transmission and distribution charges and other market-related factors, plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins." *Id.* at ¶ 21.

Plaintiff alleges that "Agway's variable rate does not reflect market costs for wholesale electricity is also demonstrated by the disconnect between fluctuations in wholesale electricity prices and costs . . . and Agway's rates." *Id.* at ¶ 29. This resulted in Plaintiff being charged substantially more over the course of her billing cycles than were she to have remained with her local utility, Central Hudson. *Id*. at ¶¶ 30-34. Plaintiff brings this putative class action on behalf of all Pennsylvania and New York customers charged a variable rate for residential electricity services by Agway from November 2011 up to the filing of this action.

### III. DISCUSSION

3

A.   **Subject Matter Jurisdiction**

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

"CAFA confers original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).  At this time, the allegation that some class member maintains diversity with Defendant is sufficient to establish minimal diversity under CAFA.  28 U.S.C. § 1332(d)(1)(D) ("the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.").

Defendant cites to *In re Propranolol Antitrust Litigation*, where the court dismissed various state statutory claims for lack of standing where there was no named plaintiff who had suffered injury under those statutes. *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 727 (S.D.N.Y. 2017). However, the court noted only that each state law claim "must be accompanied by a named plaintiff who has suffered an injury under that state's *statute*[.]" *Id*. (emphasis added). The present facts differ importantly in that there are no state-specific statutes at issue because the claims under the General Business Law are brought only on behalf of the New York class. Here, the "crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.2d 108, 127 (2d Cir. 2013) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)) (further citation omitted).

The instant state law breach of contract claims applicable to the entire class do not differ materially. "As courts have noted, state contract law defines breach consistently such that the question will usually be the same in all jurisdiction." *Id*. (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach . . ."), *abrogated in part on other grounds by Bridge v. Phoenix Bond Indem. Co.*, 553 U.S. 639 (2008)). Since Pennsylvania shares the elements of a breach of contract claim with New York, named Plaintiff's injury is representative of the putative class.

Additionally, Defendant argues that venue is improper in this Court, requiring transfer to a court sitting in Pennsylvania. *See* Dkt. No. 48 at 6. Defendant's argument hinges upon a forum-selection clause in its contract with members of the putative Pennsylvania class requiring application of Pennsylvania law and specifying Pennsylvania courts. *Id.* "[A] forum selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or

Rule 12(b)(3)[.]" *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 59 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id*. at 62.

However, a forum-selection clause has no bearing on whether this Court has subject matter jurisdiction over this case or whether venue is statutorily proper under 28 U.S.C. § 1391. Further, the Supreme Court in *Atlantic Marine* explicitly held that Rule 12(b)(3) is not suitable mechanism for enforcing forum-selection clauses and that enforcement should be sought by motion pursuant to section 1404(a). *Id.* at 59. Because no section 1404(a) motion is before the Court, and the issue has not been briefed, the Court declines to consider whether transfer is proper at this time. The forum-selection clause neither strips this Court of subject matter jurisdiction, nor does it make venue improper. Therefore, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied.

**B.     Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v.*

6

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### 1. *Section 349 of the New York General Business Law*

Section 349 of the General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service in this state." GBL § 349(a). "To state a claim under Section 349, a plaintiff must allege 'first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Chen v. Hiko Energy, LLC*, No. 14 CV 1771, 2014 WL 7389011, *3 (S.D.N.Y. Dec. 29, 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). Section 349-d of the General Business Law "targets abuses in the

7

energy services market." *Simmons v. Ambit Energy Holdings, LLC*, No. 13-CV-6240, 2014 WL 5026252, *2 (S.D.N.Y. Sept. 30, 2014). Section 349-d provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services." GBL § 349-d(3).

Defendant contends that Plaintiff's claim must fail "as a matter of law" because "the Agreement sets forth a straightforward and correct articulation of the pricing structure." *See* Dkt. No. 13 at 24. Defendant attempts to distinguish similar cases like *Chen v. Hiko Energy, LLC*, based on non-representative parenthetical quotations. *See e.g.*, Dkt. No. 13 at 26, n.30. The core allegations in *Chen* related to "variable monthly rates" which would reflect "the wholesale cost of electricity or gas, as well as various market-related factors, plus all sales and other applicable taxes, fees, charges or other assessments and [the ESCO's] costs, expenses and margins." *Chen*, 2014 WL 7389011 at *4. The crux of the allegations in this case are nearly indistinguishable.

Agway's agreement represents that the variable monthly rate "shall each month reflect the cost of electricity acquired by Agway from all sources . . . related transmission and distribution charges and other market-related factors, plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins." *See* Dkt. No. 1 at ¶ 21. Defendant argues that it has not been misleading because it never represented that savings were guaranteed. *See* Dkt. No. 13 at 28. But this is inapposite to whether Defendant in fact charged rates to Plaintiff and putative class members that were based only upon those factors explicitly enumerated in the contract, as required by the contract. Defendant's contention that its *EnergyGuard* product in some way justifies an increase in the variable rate is plausibly inconsistent with the terms of the agreement. Plaintiff has plausibly alleged that Agway's rates were "not in fact competitive market rates based on the wholesale cost of electricity" or the

8

factors set forth in the agreement. *See* Dkt. No. 1 at ¶ 25. On a breach of contract theory, Plaintiff would have been damaged in an amount equal to the difference between the rate charged and the rate that would have been charged had Agway based its rates on the factors represented in the agreement.

Since the Court determines that Plaintiff has adequately pleaded a claim under Sections 349 and 349-d of the General Business Law, Defendant's motion to dismiss this claim is denied.

### 2. *Breach of Contract*

"To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citations omitted). Here, Plaintiff has alleged that Agway breached the terms of the agreement by failing to calculate its variable rates according to the factors represented in the agreement resulting in damages as noted above. The argument does not turn, as Defendant contends, on whether the rates were "higher rates than [Plaintiff] would have paid to the incumbent utility, Central Hudson." *See* Dkt. No. 13 at 31. Rather, Plaintiff asserts that Defendant failed to charge rates that were calculated according to the agreed upon factors. *See* Dkt. No. 1 at ¶ 38. Defendants motion to dismiss this claim is denied.

### 3. *Breach of Implied Covenant*

"[A] claim for breach of the implied covenant of good faith and fair dealing must be dismissed when it is merely duplicative of a breach of contract claim." *Chen*, 2014 WL 7389011 at *6 (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Because Plaintiff's breach of the implied covenant of good faith and fair dealing amounts to a breach of the underlying contract, this claim is dismissed as redundant. *See Cruz*, 720 F.3d at 125.

9

*4.     Unjust Enrichment*

"An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (collecting cases). "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* (citations omitted). This case presents no such unusual circumstances, and the claims in this case arise from conduct governed by the contract at issue. Plaintiff's unjust enrichment claim is accordingly dismissed.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 22, 2018
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge