# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO MARTINEZ, as Administrator for the Estate of Naomi Gonzalez, Deceased,<br><br>     Plaintiff,<br><br>v.<br><br>AGWAY ENERGY SERVICES, LLC,<br><br>     Defendant. | Case No. 5:18-cv-00235 MAD-ATB |

---

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS

---

**COYLE LAW GROUP LLP**
John D. Coyle, Esq. (700112)
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel. (973) 801-0454
Email: jcoyle@coylelawgroup.com

**BOND, SCHOENECK & KING, PLLC**
Sharon M. Porcellio, Esq. (102382)
Brendan H. Sheehan, Esq. (517403)
Avant Building—Suite 900
200 Delaware Avenue
Buffalo, NY 14202-2107
Tel. (716) 416-7044
Fax (716) 416-7344
Email: porcels@bsk.com
Email: bsheehan@bsk.com
*Attorneys for Agway Energy Services LLC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.       PLAINTIFF MUST SHOW, BY A PREPONDERANCE OF THE EVIDENCE, THAT ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE MET ................................................................. 3

    II.      PLAINTIFF FAILS TO MEET THE REQUIREMENT OF COMMONALITY BY A PREPONDERANCE OF THE EVIDENCE .................. 4

    III.    PLAINTIFF FAILS TO MEET THE REQUIREMENT OF TYPICALITY BY A PREPONDERANCE OF THE EVIDENCE ................................................. 9

    IV.    PLAINTIFF FAILS TO MEET THE REQUIREMENT OF ADEQUACY OF REPRESENTATION BY A PREPONDERANCE OF THE EVIDENCE ................................................................................................. 14

    V.     PLAINTIFF FAILS TO MEET THE REQUIREMENTS OF RULE 23(b)(2) AND (b)(3) BY A PREPONDERANCE OF THE EVIDENCE ............. 14

          A.      Rule 23(b)(2) Does Not Apply Because This Action Is Primarily for Money Damages ....................................................................... 15

          B.      Rule 23(b)(3) Does Not Apply Because Plaintiff Cannot Meet the Predominance Requirement ..................................................................... 16

CONCLUSION ............................................................................................................. 17

**TABLE OF AUTHORITIES**

**CASES**

Page

*Adickes v. Hellerstedt,* 753 F. App'x 236 (5th Cir. 2018) ............................................................. 4

*Adler v. Bank of Am., N.A.*, No. 13 CV 4866 (VB), 2015 U.S. Dist. LEXIS 66018 (S.D.N.Y. Mar. 24, 2015) .................................................................................................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 16

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 101 (S.D.N.Y. 2006) ................................................................................................................................ 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) ........................... 11

*Burka v. N.Y. City Trans. Auth.*, 110 F.R.D. 595 (S.D.N.Y. 1986) ............................................... 13

*Calabrese v. CSC Holdings, Inc.*, No. CV 02-5171 (DLI) (JO), 2009 U.S. Dist. LEXIS 134944 (E.D.N.Y. Feb. 2, 2009) ..................................................................................... 4, 16

*Carollo v. United Capital Corp.*, No. 6:16-CV-13(DNH), 2021 U.S. Dist. LEXIS 55550 (N.D.N.Y. Mar. 24, 2021) .................................................................................................. 4, 5

*Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159 (W.D.N.Y. 2003) ........................... 16

*Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................... 10

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................. 10, 13

*In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ............................................ 3, 4

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) .................................................... 10

*Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019) ..................................... 11

*Marisol A. v. Giuliani,* 126 F.3d 372 (2d Cir. 1997) ............................................................... 4, 10

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247 (2d Cir. 2002) ........................................................ 16

*Novella v. Westchester Cty*, 661 F.3d 128 (2d Cir. 2011) ............................................................. 3

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) .......................................................... 3

*Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147 (2d Cir. 2001) ..................................... 15

*Sydney v. Time Warner Entm't-Advance/Newhouse P'ship, No.* 5:13-CV-286 (FJS/TWD),

2021 U.S. Dist. LEXIS 63130 (N.D.N.Y. Mar. 30, 2021).............................................5, 10

*Sykes v. Mel S. Harris and Assocs. LLC,* 780 F.3d 70, 80 (2d Cir. 2015).......................................5

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc*., 546 F.3d 196 (2d
Cir. 2008). .................................................................................................................3, 4

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .....................................................................5

## STATUTES

**Page**

Fed. R. Civ. P. 23 ..............................................................................................................1, 3, 11

Fed. R. Civ. P. 23(a) ...................................................................................................3, 9, 14, 16

Fed. R. Civ. P. 23(a)(4)..................................................................................................................14

Fed. R. Civ. P. 23(b) .................................................................................................................3, 14

Fed. R. Civ. P. 23(b)(2)...........................................................................................................15, 16

Fed. R. Civ. P. 23(b)(3)......................................................................................................15, 16, 17

Fed. R. Civ. P. 23(c)(2)..................................................................................................................15

Fed. R. Civ. P. 23(c)(3)..................................................................................................................15

## PRELIMINARY STATEMENT

Plaintiff's motion seeks to certify Antonio Martinez as a class representative on behalf of all Agway Energy LLC ("Agway") electricity customers in the states of Pennsylvania and New York. As discussed below, and in Agway's parallel motion to deny certification, this is despite the fact that Mr. Martinez did not enroll with Agway and does not know: a) what was said when his mother enrolled with Agway; b) why she enrolled with Agway; or c) how she values home or product warranties. As Plaintiff herself certified in answers to interrogatories, "Plaintiff believes she vaguely mentioned the existence of this action to her son, Antonio Martinez." Plaintiff fails to meet his burden under Rule 23 of the Federal Rules of Civil Procedure to establish all of the factors for class certification and this motion must be denied.

The failures outlined above are dispositive because the undisputed facts here are that his late mother Naomi Gonzalez enrolled with Agway for electrical service plus Agway's air conditioning and electrical wiring warranty program EnergyGuard^TM. Plaintiff's central claim in this entire lawsuit has been that EnergyGuard is worthless and that Agway "breached its contract" with Ms. Gonzalez by charging her more than her local utility. While that faulty legal premise is the focus of Agway's pending motion for summary judgment, it is still relevant here with respect to Plaintiff's burden of establishing the requirements under Rule 23. This motion requires Plaintiff to prove that Mr. Martinez's claims are common with and typical of the Agway's actual customers and that he would be an adequate representative to represent the tens of thousands of customers across Pennsylvania and New York who received EnergyGuard from Agway.

Despite Plaintiff's claim that EnergyGuard is valueless, the New York Public Service Commission ("PSC") concluded otherwise. As discussed in the summary judgment motion, after a four-year regulatory proceeding, the PSC determined that no energy supply company ("ESCO") can charge more than the local utility for electricity plus a value-added product except Agway.

(Document No. 137-5; 137-7). "Because Agway provided detailed evidence demonstrating that EnergyGuard provides a unique benefit that may be reasonably comparable to its costs, Agway may continue to offer EnergyGuard during this interim period." (Document No. 137-5, at 54).

This conclusion is shared by the thousands and thousands of Agway customers who have had needed repairs covered, up to $2,000.00 per calendar year. But in addition to those thousands of dollars of coverage, EnergyGuard provides "peace of mind," as Agway's Welcome Letter to Ms. Gonzalez promised. A person insured with major medical health insurance, or a long-term disability policy, or term life insurance receives a tangible benefit knowing the coverage is in place even if no claim is filed. According to the Board of Governors of the Federal Reserve System, 36% of adults could not pay an unexpected $400.00 bill with "cash or its equivalent."[1] Under Plaintiff's systemically flawed reasoning, $2,000.00 in coverage is without any value unless a claim is filed. By that absurd reasoning, a term life insurance policy that runs until your children come of age has "no value" unless you actually die.

At the top of Agway's Welcome Letter to Ms. Gonzalez is a multi-color logo that reads "EnergyGuard - *Peace of Mind Comes Standard*" and is accompanied by an EnergyGuard brochure containing the details of the program. (Document No. 137-10). Ms. Gonzalez received this peace of mind for two calendar years, receiving $4,000.00 worth of coverage. However, according to Plaintiff's expert Frank Felder, Ph.D. this peace of mind was valueless, and his calculations look only at the actual repair costs spent. The reason for this unsound conclusion is obvious: if Plaintiff acknowledged that there were an issue as to the value to the EnergyGuard coverage, it would have then required an examination into the repair history and risk valuation for

---

[1] https://www.federalreserve.gov/publications/2021-economic-well-being-of-us-households-in-2020-dealing-with-unexpected-expenses.htm

all customers.

A consumer with a new central air conditioning unit might value $1,000.00 in annual coverage differently than a consumer with an older system. The same would apply for customers who had previous wiring problems in their house. Having Agway provide $1,000 towards an electrician's bill—without deductible—is something that could certainly be valued differently by consumers. Not only for the customers themselves, but also for a customer who watched a neighbor or friend struggle to pay for electrical repairs.

Plaintiff fails to satisfy the Rule 23 class certification factors because Mr. Martinez failed to demonstrate with evidence claims that are typical of Agway customers who received a financial benefit from Agway's EnergyGuard service or who received the peace of mind knowing that the coverage was in place if needed. Accordingly, Plaintiff's motion for class certification must be denied.

## ARGUMENT

### I. PLAINTIFF MUST SHOW, BY A PREPONDERANCE OF THE EVIDENCE, THAT ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE MET.

Plaintiff Antonio Martinez is not entitled to class certification unless he has proven, by a preponderance of the evidence, that all of the requirements for class certification are met. Under Rule 23(a), Plaintiff must establish the first four prerequisites of numerosity, commonality, typicality, and adequacy. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). Plaintiff must then satisfy one of the requirements under Rule 23(b).

A plaintiff must show, by a preponderance of the evidence, that each and every one of the *Rule* 23 requirements are met. *Novella v. Westchester Cty*, 661 F.3d 128, 149 (2d Cir. 2011) (citing *Teamsters Local 445 Freight Div. Pension Fund*, 546 F.3d at 202; *In re Initial Pub. Offering Sec.*

*Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*In re IPO*"); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997)). For that reason, a court's analysis "cannot rely on mere allegations in a complaint nor even on 'some showing' that the plaintiff is entitled to class certification; instead, the plaintiffs must affirmatively establish each requirement of class certification to the court's satisfaction by a preponderance of the evidence." *Calabrese v. CSC Holdings, Inc.*, No. CV 02-5171 (DLI) (JO), 2009 U.S. Dist. LEXIS 134944, at *15 (E.D.N.Y. Feb. 2, 2009). The standards in this Circuit direct courts to examine the substantive evidence, even getting to evidence underlying the merits of the case, to determine whether Plaintiff has met his burden:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;

> (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; [and]

> (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement.

*Teamsters Local 445 Freight Div. Pension Fund*, 546 F.3d at 202 (quoting *In re IPO*, 471 F.3d at 41); *see also Adickes v. Hellerstedt*, 753 F. App'x 236, 248 (5th Cir. 2018) (vacating class certification where, among other things, a district court failed to meaningfully analyze the fitness of the class representatives).

## II. PLAINTIFF FAILS TO MEET THE REQUIREMENT OF COMMONALITY BY A PREPONDERANCE OF THE EVIDENCE.

In order to meet the requirement of commonality, Plaintiff must show that "the determination of a single issue will resolve that issue as to 'the validity of each one of the claims in one stroke.'" *Carollo v. United Capital Corp.*, No. 6:16-CV-13(DNH), 2021 U.S. Dist. LEXIS

55550, at *19 (N.D.N.Y. Mar. 24, 2021) (quoting *Dukes*, 564 U.S. at 350). Plaintiff is required to demonstrate that the class members "suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that it is capable of class wide resolution." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 5:13-CV-286 (FJS/TWD), 2021 U.S. Dist. LEXIS 63130, at *10-11 (N.D.N.Y. Mar. 30, 2021) (emphasis added) (quoting *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted)).

Plaintiff's motion argues that there are two common issues: (A) the issue of liability: "whether Agway set its rate in conformity with its customer agreements and in good faith" (Br. at p.20), and (B) the issue of damages (Br. at p.21). Plaintiff, who bears the burden of proof on this (and all other) prerequisites for class certification, has failed to adduce evidence showing that those two issues are subject to class wide resolution. Because Agway uniquely provides its customers with a product of additional value beyond mere electrical supply, and because Plaintiff has failed to take that product into consideration, Plaintiff has failed to show that a class action will generate "common answers" to the issues Plaintiff identifies.

Plaintiff's most striking error is in building his argument on the false premise that Agway's rate can be directly compared with the local utility's rate to determine whether its rate is "competitive." Plaintiff's brief states (at p.5): "The only material difference to reasonable customers is whether the utility or an ESCO sets the price for the customer's energy supply," and "there would be no logical reason for a customer to switch from a local utility to an ESCO, such

as Agway, if the customer did not believe that the ESCO offered competitive rates." Those statements are simply false. Critically, he also finds no support in the record: the only citations in support are two paragraphs of the Plaintiff's Complaint (which of course do not constitute evidence), and pages 4 and 5 of the Plaintiff's expert report, which upon review contain nothing about whether the "only material difference" is price, or if there is only one possible "logical reason" a consumer might have to choose Agway over another supplier. The truth, of course, is that a consumer might choose Agway because the EnergyGuard product included with its service adds value. This is exactly why the New York PSC found "credible evidence" of the "energy-related value of this product." (Document No. 137-5, p.23).

This fact—that Agway provides something of value to its customers beyond mere electricity—makes Agway unique among ESCOs. The PSC reached that very conclusion when it prohibited every ESCO, other than Agway, from selling value-added products: "Because, with the exception of Agway's EnergyGuard product, no meaningful evidence was provided to demonstrate that any energy-related value-added product or service currently offered provides benefits to customers comparable to its costs, the provision of such a product or service is not sufficient at this time to demonstrate that an ESCO offering benefits customers and should be permitted." (Document No. 137-5, p.53 (emphasis added)); see also *id.* at p.53-54 (stating that "with the exception of Agway's EnergyGuard product," no other variable rate products may be offered for sale above the utility price on the basis that the ESCO also includes an "energy-related value-added product or service.")).

Plaintiff cannot sweep this reality under the rug by proclaiming the opposite and citing his own Complaint and his expert's report as substantiation for his ill-formed rationale. As Agway's expert, Dr. Debra J. Aron, noted, Plaintiff's expert simply didn't bother to consider what the

consumer was paying for:

> [Plaintiff's expert] made no attempt to quantify the value of electric EnergyGuard to consumers, to assess what the market price of electric EnergyGuard would be if sold separately, what the prices of comparable warranty products, if any, are in the market, what Agway's margin is on electric EnergyGuard, what the margins on comparable warranty products in the marketplace, if any, are, what Agway's costs of risk bearing are, or any other relevant facts. Dr. Felder even ignored entirely the consumer survey results in the record that provide insight into the satisfaction of Agway customers with electric EnergyGuard service. These survey results show that consumers who received electric EnergyGuard repair service were overwhelmingly pleased with the service and some indicated in the additional comments that they would have been unable to afford the repairs without it.

(Document No. 137-12, p.4 ¶ 16).

Plaintiff admits that Agway discloses EnergyGuard as a value-added product in its Welcome Letters. (Document No. 136-1, at p.10 (quoting Agway's Welcome Letter); Document No. 136-14). But this is not the only disclosure Agway made. When Ms. Gonzalez confirmed her enrollment with Agway during the recorded Third-Party Verification ("TPV") Call, she specifically agreed that she was automatically receiving EnergyGuard, and that she was not guaranteed to save money:

> ALLIE: Thank you. For your electric, this is to confirm that you'll be enrolling with Agway Energy Services as your energy supplier, you will be placed on Agway's monthly variable rate Electricity Program with your first month introductory price being 4.4 cents per kilowatt hour. You will then continue to receive Agway's competitive market based monthly variable rate until you notify Agway of your wish to cancel. **Participation in this program is not a guarantee of future savings.** You will no longer have to pay the New York State sales tax on the delivery charges from your utility and by choosing Agway as your electricity supplier, you will receive a credit up to 4/10 of a cent per kilowatt hour on your delivery bills. Do you agree?

> MS. GONZALEZ: Yes.

> ALLIE: Thank you. Along with this program, you will also

> automatically receive the **Agway Energy Guard Repair Program** that provides coverage for your center air conditioning unit and electric wiring in your home.

(Document No. 137-14 ¶ 35; 137-9) (emphasis added).

Plaintiff goes to great lengths to dismiss the indisputable fact that EnergyGuard provided anything of value to any customer, clearly recognizing that it precludes his proffered common issue from classwide resolution. Plaintiff even falsely describes EnergyGuard in an attempt to justify disregarding it altogether as an issue, pretending that Agway's costs—including EnergyGuard—were not disclosed as a factor in its variable rate and run "[c]ontrary to Agway's representations in its Welcome Package." (Document No. 136-1, at p.13). "Moreover," Plaintiff argues, "Agway includes its EnergyGuard costs in its variable rates for all customers, irrespective of whether customers actually avail themselves of EnergyGuard." (*Id.*). As an insurance product, all customers were charged whether or not they end up making a claim. That is *of course* how insurance works, pooling funds in order to pay claims.

And *of course,* Agway's costs are disclosed as a factor in its variable rate: "The Electric Variable Rate shall each month reflect the cost of electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), related transmission and distribution charges and other market-related factors, **plus all applicable taxes, fees, charges or other assessments and Agway's costs, expenses and margins.**") (Document No. 136-10). Furthermore, Plaintiff's supposed "factual statements" are once again unsupported by their own citations to the record. (Document No. 136-12, 212:1 to 215:12; Document No. 136-9, 85:12-20; 98:23 to 99:9).

The reality of this case is not what Plaintiff's counsel wants it to be: a cookie-cutter ESCO case where an A-B price comparison between ESCO price and utility price can determine, classwide, whether consumers overpaid for electricity. (*See* Document No. 136-1. at p.15 ("Any reasonable consumer, including Ms. Gonzalez, would understand based on these representations

that the variable rate would reflect Agway's wholesale energy costs, and would be competitive with local utilities' and other ESCO's rates.") (citing for support only ¶ 21 of Plaintiff's own Complaint)). Plaintiff has failed to support those underlying premises and has therefore cannot meet his burden to establish same by a preponderance of the evidence. Moreover, the evidence shows these premises are false. Agway's disclosures expressly state that savings are not guaranteed, and that costs other than wholesale energy costs are factors in Agway's pricing. (Document No. 137-10). Plaintiff cannot invent a common issue where none exists.

As the evidence demonstrates, there _is_ a material difference to reasonable customers other than "whether the utility or an ESCO sets the price for the customer's energy supply," and there _is_ a "logical reason for a customer to switch from a local utility to an ESCO, such as Agway, [even] if the customer did not believe that the ESCO offered competitive rates," where "competitive" has been defined by Plaintiff to require an A-B comparison with the utility.

In each and every of the supposedly similar cases cited by the Plaintiff, the ESCO and the utility each provided the same service—energy supply only. Thus, Plaintiff is simply wrong when he repeatedly contends that no reasonable consumer would choose to pay a higher price for Agway's service. In this case, there is a subjective valuation being made by each and every Agway customer, which is the value of the EnergyGuard insurance program. Because of that issue, which is particular to each class member, it cannot be subject to class wide resolution.

## III. PLAINTIFF FAILS TO MEET THE REQUIREMENT OF TYPICALITY BY A PREPONDERANCE OF THE EVIDENCE.

Plaintiff is required demonstrate by a preponderance of the evidence that the claims of Mr. Martinez, the representative party, are typical of the claims of the class. Fed. R. Civ. P. 23(a). He has not done so, in part for reasons that overlap with the commonality requirement, and for additional reasons specific to Mr. Martinez's particular circumstances that render him an atypical

representative of the class.

The requirements of commonality and typicality "tend to merge into one another" because the "crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A.*, 126 F.3d at 376 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Typicality is met "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Sydney,* 2021 U.S. Dist. LEXIS 63130, at *14 (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (internal quotation marks omitted)).

Plaintiff fails to meet the evidentiary standard in arguing for typicality. Plaintiff argues that Mr. Martinez is a typical class representative merely because "[e]ach Welcome Package contained the same deceptive and false descriptions of Agway's pricing methodology" (Document No. 136-1, p.23). But, as discussed at length in the previous section of this brief, his argument fails to identify an issue with respect to that Welcome Package with underlying evidence demonstrating the factual or legal issue by a preponderance of the evidence. Again, it is Plaintiff's burden not merely to describe the factual circumstances that makes Mr. Martinez a typical class member, but to support that description with facts from the record. *See Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 98 (S.D.N.Y. 2009). Plaintiff cannot point to the supposedly "deceptive and false descriptions" in this case because they are not present. The record shows that Agway was forthcoming with respect to pricing and the inclusion of the EnergyGuard service, and Plaintiff has not demonstrated otherwise. Accordingly, Plaintiff has not demonstrated his supposedly typical claim.

Moreover, Mr. Martinez's particular circumstances render him an atypical member of the

class because, he has *never* been a customer of Agway or any other ESCO. While he has been legally substituted in place of his late mother, he has no knowledge of the essential facts that would allow him to be a representative for a typical Agway customer. He does not know why his late mother chose to enroll with Agway. He does not know whether she previously experienced electrical wiring problems—or knew someone who did. He does not know whether she typically purchased extended warranties or other similar products. Thus, Mr. Martinez does not have essential knowledge that would be typical with any other Agway customer.

While minor factual variations between individual claims do not preclude typicality, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (internal quotation marks omitted).

The original named plaintiff in this matter, Naomi Gonzalez, unfortunately passed away in October 2020. (Document No. 136-14, ¶46). Mr. Martinez, as Administrator for her Estate, was substituted for his later mother by Court Order dated April 1, 2021. (Document No. 136-14, ¶ 47). Although substitution of an authorized executor of an estate was appropriate under Rule 25(a) of the Federal Rules of Civil Procedure, that is irrelevant as to whether a class should be certified under Rule 23. *See Adler v. Bank of Am., N.A.*, No. 13 CV 4866 (VB), 2015 U.S. Dist. LEXIS 66018, at *5 (S.D.N.Y. Mar. 24, 2015) (citing cases where "the courts granted motions for substitution, then subsequently denied the substituted plaintiffs' motions to certify").

Mr. Martinez is unique. He never switched electric suppliers, to Agway or to any other company. (Document No. 138-3, p. 42:2-7)). Plaintiff attempts to limit his claims to address Agway's representations in its Welcome Package, but the underlying factual issues as to every

other putative class member is not so limited. Agway made representations by telephone to potential customers explaining EnergyGuard and informing the consumer that savings were not guaranteed. (Document No. 137-9). Mr. Martinez has no personal knowledge of the sales call from Agway to Ms. Gonzalez. (Document No. 138-3, p. 34:2-15). Ms. Gonzalez nor Mr. Martinez's father ever spoke to him about the call with Agway. (*Id.*, 36:12-20). Accordingly, Mr. Martinez is not aware of Ms. Gonzalez's state of mind based on her initial call with Agway, including her expectations or her interest in signing up with Agway. (*Id.*, 37:19-25; 39:3-5; 40:7-11). He has no information regarding what his mother understood regarding the representation made by Agway that there was no guarantee of future savings, or that she would receive EnergyGuard as part of Agway's services. (*Id.*, 57:22 to 59:23 ("I can't speculate as to what my mom understood.")). The last sworn statement by Ms. Gonzalez in this matter was her answers to Interrogatories (never amended), which confirmed this, "Plaintiff believes she vaguely mentioned the existence of this action to her son, Antonio Martinez.") (Declaration of John D. Coyle, dated September 27, 2021, Ex. A, p. 7).

A legally appropriate class representative would testify about how she/he/they was deceived (if indeed she/he/they was deceived) by Agway's representations. Because Mr. Martinez cannot even speculate as to what Ms. Gonzalez understood, he could not and did not provide any meaningful testimony. If he were a typical class member, he could explain why he was unhappy (if indeed he was unhappy) with Agway's services. But Mr. Martinez has no knowledge about this. Instead, he had to admit that, in a recording of Ms. Gonzalez, she stated that she was canceling service with Agway not due to cost but because she was moving. (Document No. 138-3, p. 85:11-14). She did not express unhappiness with what she was charged by Agway and, as a matter of fact, she said she might consider reenrolling with Agway. (*Id.*, 86:10-16).

In this respect, Mr. Martinez's lack of typicality overlaps with his failure to meet the adequacy-of-representation requirement. Courts have noted this tendency of these requirements to overlap. *See, e.g.*, *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 101 (S.D.N.Y. 2006) (the commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement" because "[t]he more similar the claims and defenses of the class and its representatives, the more likely the representative will champion the interests of the class") (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. at 157 n.13 (1982) and *Burka v. N.Y. City Trans. Auth.*, 110 F.R.D. 595, 601 (S.D.N.Y. 1986) (internal quotation marks omitted)).

Here, Mr. Martinez's claims are very narrowly tailored to a theory that ignores that Ms. Gonzalez had spoken with an Agway representative and agreed to switch to Agway's service, based on representations made by Agway. It ignores any role that EnergyGuard would have played in her decision to continue service with Agway month after month. It ignores the fact that she was terminating her relationship with Agway for a reason that had nothing to do with price. This theory takes Mr. Martinez's very atypical situation and forces it upon the entire proposed class. He construes to the Agreement as a "solicitation"—rather than what it was, an Agreement already entered into—for the claim that Ms. Gonzalez was deceived. The common issue of deception has not and cannot be shown for the reasons already argued, but more importantly for typicality, this demonstrates why the proposed class representative's claim is highly atypical. Mr. Martinez cannot base his claim on facts that *any other proposed class member could*: the representations made by Agway to the proposed class member when he/she/they agreed to switch services, for example. By way of defense Agway could and should be able to rely on facts about, for instance, the proposed class member's use and value of the EnergyGuard program; but not Mr. Martinez, who was never a customer, did not know what EnergyGuard was before this case, and has no idea

what Ms. Gonzalez thought about it. As such, he cannot demonstrate typicality.

## IV. PLAINTIFF FAILS TO MEET THE REQUIREMENT OF ADEQUACY OF REPRESENTATION BY A PREPONDERANCE OF THE EVIDENCE.

Agway's pending Motion to Deny Class Certification, filed on August 6, 2021, sets forth the reasons why Mr. Martinez cannot "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). For the sake of economy, and because the granting of that motion would render this opposition moot, we do not repeat here the arguments set forth in that Motion.

We add only the following responses to specific arguments in support of the instant Motion for Certification: Plaintiff's counsel raises three points which, though true, do not make Mr. Martinez an adequate representative (Document No. 136-1, p.24-25): (1) Mr. Martinez went along with Plaintiff's counsel in petitioning the Surrogate's Court to represent Ms. Gonzalez's Estate in this case; (2) Mr. Martinez sat for a noticed deposition that he had no choice but to sit for; and (3) he signed a self-serving certification written by his attorneys. These facts are insufficient to overcome his lack of knowledge of any of the underlying facts including any alleged deception of Ms. Gonzalez, or any representation causing her to maintain Agway's services. (See, Document No. 138-1, pp.5-11.

Plaintiff further states, incorrectly, that there are no conflicts of interest with other putative class members. On the contrary, this lawsuit attempts to preclude Agway from providing EnergyGuard to any putative class member in the future. This point was argued in our brief in support of Motion to Deny Class Certification. (See, Document No. 138-1, pp.11-13.

## V. PLAINTIFF FAILS TO MEET THE REQUIREMENTS OF RULE 23(b)(2) AND (b)(3) BY A PREPONDERANCE OF THE EVIDENCE.

Although class certification should be denied due to Plaintiff's failure to satisfy the four prerequisites under Rule 23(a), we address for the sake of completeness the requirements under Rule 23(b). For the reasons set forth below, Plaintiff fails to meet the requirements under either

Rule 23(b)(2) or (b)(3).

**A.    Rule 23(b)(2) Does Not Apply Because This Action Is Primarily for Money Damages.**

For a class action under Rule 23(b)(2), a plaintiff must show that the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  In determining whether this requirement is met, "a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 164 (2d Cir. 2001).  "Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery."  *Id.*

Where money damages are not merely incidental to a claim, Rule 23(b)(2) "poses a due process risk because this provision does not expressly afford the procedural protections of notice and opt out."  *Robinson*, 267 F.3d at 166 (citing Fed. R. Civ. P. 23(b)(2), Fed. R. Civ. P. 23(b)(3), and Fed. R. Civ. P. 23(c)(2), (3)).

Plaintiff has failed to meet this standard because, as admitted on the first page of his moving brief, this lawsuit primarily seeks money damages from Agway.  (*See* Document No. 136-1, p.1 (contending that the putative class members "suffered tens of millions of dollars in overcharges")).  Plaintiff's Complaint (at p.21) sets forth nine forms of relief which, other than certifying the class (No. 1) and the catch-all "such other and further relief" (No. 9), all begin with money damages.  Plaintiff seeks treble damages under New York statutes as well as punitive damages.  (Document No. 1).  "A request for treble damages cannot in any way be considered an attempt to secure

equitable relief." *Calabrese*, 2009 U.S. Dist. LEXIS 134944, at *62; *Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159, 205 n.19 (W.D.N.Y. 2003) (citing cases "where the mere request for treble damages in an antitrust action was held to place the action outside the parameters of class certification under Rule 23(b)(2)"). The only two causes of action for which injunctive relief is even mentioned (Nos. 2 and 3) open with a request for treble damages and are only applicable to New York putative subclass members.

The proposed class consists of Agway customers between November 2011 and the present, including all *former* customers who have nothing to gain by injunctive relief, and would never have filed this action only to enjoin Agway in some way. Because this case is predominantly for money damages, certification under Rule 23(b)(2) is not available.

### B.    Rule 23(b)(3) Does Not Apply Because Plaintiff Cannot Meet the Predominance Requirement.

A class action may not be certified under Rule 23(b)(3) unless "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The requirement of predominance is "a more demanding criterion than the commonality inquiry under Rule 23(a)." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

For all of the reasons discussed in section II, *supra*, why Plaintiff has failed to demonstrate commonality, Plaintiff has *a fortiori* failed to demonstrate that common issues predominate. The problem, again, is that Plaintiff failed to identify with evidentiary support the issues it claims are common to the class. Plaintiff argues that it can prove liability for breach of contract simply by reference to Agway's rates and comparing them with the local utilities. (Document No. 136-1,

16

pp.32-33, 38).  Out of nowhere, Plaintiff declares that EnergyGuard should be provided for free.  (*Id.*, p.36 (citing nothing)).  Plaintiff cannot remove from this case the factual and legal issues regarding EnergyGuard by pretending the issues do not exist.  And Plaintiff cannot prevail without demonstrating, by a preponderance of the evidence, that the issues as defined by Plaintiff predominate.  He has failed to do so.

Because Plaintiff has failed to ground his theory of liability on a common issue supported by the facts, he cannot show that common issues predominate under Rule 23(b)(3).

## CONCLUSION

A class action plaintiff faces a rigorous analysis by the Court and bears the burden of demonstrating that each requirement of Rule 23 is met by a preponderance of the evidence.  Citations to Plaintiff's pleadings and to sources that otherwise fail to support the underlying facts are insufficient as a matter of law to meet this rigorous standard.  Because Plaintiff has intentionally ignored facts central to this matter, not least of all the value of Agway's EnergyGuard product and the factual gulf between Mr. Martinez, the putative class representative, and the other putative class members, Plaintiff is not entitled to class certification and his motion should be denied.

*s/ John D. Coyle*
**COYLE LAW GROUP LLP**
John D. Coyle, Esq. (700112)
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel. (973) 801-0454
Email: jcoyle@coylelawgroup.com

**BOND, SCHOENECK & KING, PLLC**
Sharon M. Porcellio, Esq. (102382)
Brendan H. Sheehan, Esq. (517403)
Avant Building—Suite 900
200 Delaware Avenue
Buffalo, New York 14202-2107

Tel. (716) 416-7044
Fax (716) 416-7344
Email: porcels@bsk.com

*Attorneys for Agway Energy Services, LLC*