**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| ANTONIO MARTINEZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 5:18-cv-00235-MAD-ATB |
| -against- | : | |
| | : | |
| AGWAY ENERGY SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................1

   I.     PLAINTIFF SATISFIES THE COMMONALITY REQUIREMENT. ...........................5

     A.   The Merits Are Not At Issue On This Motion. ................................................5

     B.   Defendant's EnergyGuard Provision Is Not Determinative Of Commonality. ................6

     C.   Class Members' Subjective Valuations Of EnergyGuard Are Irrelevant. ........................6

     D.   Agway's Contract Precludes EnergyGuard's Inclusion In The Variable Rate. ................8

   II.     PLAINTIFF SATISFIES THE TYPICALITY REQUIREMENT. ...............................10

   III.   PLAINTIFF SATISFIES THE ADEQUACY REQUIREMENT. ................................12

   IV.   PLAINTIFF SATISFIES THE RULE 23(b)(2) REQUIREMENTS. ...........................13

   V.    PLAINTIFF SATISFIES THE RULE 23(b)(3) REQUIREMENTS. ...........................14

CONCLUSION ...............................................................................................................17

Page(s)

**Cases**

*Allen v. Holiday Universal*,
    249 F.R.D. 166 (E.D. Pa. 2008) ........................................................................ 11

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ......................................................................................... 14

*Bally v. State Farm Life Ins. Co.*,
    No. 18-04954, 2021 WL 1668004 (N.D. Cal. Apr. 28, 2021) ................................. 7

*Bell v. Gateway Energy Services Corp.*,
    No. 31168/2018 (Rockland Cnty. Super. Ct. Jan. 8, 2021), NYSCEF Doc. No. 152 ................ 2

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................. 12

*BLT Steak LLC v. Liberty Power Corp, L.L.C.*,
    No. 151293/2013 (N.Y. Cnty. Super. Ct Aug. 14, 2020), NYSCEF Doc. No. 376 ................... 2

*Calabrese v. CSC Holdings, Inc.*,
    No. 02-5171, 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) ..................................... 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007) ............................................................................. 10

*Claridge v. N. Am. Power & Gas, LLC*, No.,
    No. 15-1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016) .................................... 2

*Daniel v. Am. Bd. of Emergency*,
    269 F. Supp. 2d 159 (W.D.N.Y. 2003) ................................................................ 13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................... 5

*Feller v. Transamerica Life Ins. Co.*,
    No. 16-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ................................. 7

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-8405, 2013 WL 12224042 (S.D.N.Y. July 12, 2013) ................................... 7

*Freeman Investments, L.P. v. P. Life Ins. Co.*,
    No. 09-55513, 2013 WL 11884 (9th Cir. 2013) .................................................... 7

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
 317 F.R.D. 374 (S.D.N.Y. 2016)........................................................................ 12

*Gonzales v. Agway Energy Servs., LLC*,
 No. 18-235, 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018) ................................. 10

*Haddock v. Nationwide Fin. Servs., Inc.*,
 293 F.R.D. 272 (D. Conn. 2013)........................................................................ 14

*Hill v. City of New York*,
 No. 13-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ............................... 13

*In re McCormick & Company, Inc., Pepper Products Marketing and Sales Practice Litig.*,
 422 F. Supp. 3d 194 (D.D.C. 2019) .................................................................. 12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 277 F.R.D. 52 (D. Mass. 2011) ........................................................................ 10

*In re Scotts EZ Seed Litig.*,
 304 F.R.D. 397 (S.D.N.Y. 2015)........................................................................ 11

*Jensen v. Cablevision Sys. Corp.*
 372 F. Supp. 3d 95 (E.D.N.Y. 2019).................................................................. 11

*Jermyn v. Best Buy Stores, L.P.*,
 276 F.R.D. 167 (S.D.N.Y. 2011)........................................................................ 14

*Jie Zhang v. Wen Mei, Inc.*,
 No. 14-1647, 2015 WL 6442545 (E.D.N.Y. Oct. 23, 2015)............................. 4, 10

*Johnson v. Nextel Commc'ns Inc.*,
 780 F.3d 128 (2d Cir. 2015)................................................................................ 5

*Kamerman v. Ockap Corp.*,
 112 F.R.D. 195 (S.D.N.Y. 1986)........................................................................ 10

*Koch v. Acker, Merrall & Condit Co.*,
 18 N.Y.3d 940 (2012) ...................................................................................... 11

*LNC Investments, Inc. v. First Fidelity Bank, N.A. N.J.*,
 173 F.3d 454 (2d Cir. 1999).............................................................................. 12

*Maurizio v. Goldsmith*,
 230 F.3d 518 (2d Cir. 2000).............................................................................. 11

*Negrete v. Allianz Life Ins. Co. of N. Am.*, No.,
 No. 05-6838, 2013 WL 3353852 (C.D. Cal. July 3, 2013)................................. 12

*Ogilvy Grp. Sweden, AB v. Tiger Telematics, Inc.*,
   No. 05-8488, 2006 WL 547785 (S.D.N.Y. Mar. 7, 2006) ....................................... 11

*Roberts v. Verde Energy, USA, Inc.*,
   No. 07-156060160, 2019 WL 1276501 (Conn. Super. Ct. Feb. 1, 2019) ................................. 2

*Roberts v. Verde Energy, USA, Inc.*,
   No. 07-156060160, 2017 WL 6601993 (Conn. Super. Ct. Dec. 6, 2017) ................................. 2

*Robinson v. Metro-N. Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ..................................................................... 13

*Shamberg v. Ahlstrom*,
   111 F.R.D. 689 (D.N.J. 1986) ............................................................... 11, 12

*Stinson v. City of New York*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ................................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................... 6, 13

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012) .................................................................. 7

*Zhang v. Ichiban Grp., LLC*,
   No. 17-148, 2021 WL 3030052 (N.D.N.Y. May 21, 2021) ........................................... 5, 6, 10

## **Statutes**

N.Y. General Business Law § 349 ................................................................. 11, 14, 15

N.Y. General Business Law § 349-d ................................................................... 15

## INTRODUCTION

Plaintiff Antonio Martinez ("Plaintiff" or "Mr. Martinez"), in his capacity as the executor of the estate of Naomi Gonzalez, respectfully submits this reply memorandum of law in support of Plaintiff's Motion for Class Certification (ECF No. 136) and in response to Defendant Agway Energy Services, LLC's ("Defendant" or "Agway") Opposition to Plaintiff's Motion for Class Certification (ECF No. 150).[1]

In its Opposition, Defendant does not dispute any of the facts germane to class certification of this action. Defendant does not dispute that Agway provided all putative class members (the "Class" or "Class Members") with its standard and uniform residential electricity welcome letter and customer disclosure statement (collectively, "Welcome Package" or "customer agreement") that would govern their relationships. Defendant does not dispute that the Welcome Package customers receive is standardized, generated using the same template, and printed based on a mail-merge file from Agway's customer database. Defendant does not dispute that Agway's customer agreement contains uniform substantive representations and disclosures, including Agway's description of its variable rate pricing methodology. Defendant does not dispute that Agway's representations and disclosures, including regarding its variable rate, have been consistent over time. Defendant does not dispute that all Class Members received the uniform representations regarding EnergyGuard. Defendant does not dispute that it sets its teaser introductory rates in a uniform manner. Defendant does not dispute that all Class

---

[1] In the instant reply, Plaintiff will refer to his Memorandum of Law in Support of Class Certification (ECF No. 136-1) as Plaintiff's "Motion," and Defendant's Brief in Opposition to Plaintiff's Motion to Certify Class (ECF No. 150) as Defendant's "Opposition" or "Opp." Additionally, Plaintiff will refer to Defendant's Memorandum of Law in Support of its affirmative Motion to Deny Certification (ECF No. 138-1) as Defendant's "Denial Motion," and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Deny Class Certification (ECF No. 149) as Plaintiff's "Opposition to Denial Motion."

Members are automatically shifted from Agway's introductory rate to its monthly variable rate after the initial term. Defendant does not dispute that Agway sets its variable rates in a uniform manner and using a uniform fixed adder. Defendant does not dispute that the Class is sufficiently numerous to satisfy numerosity. Defendant does not dispute that Ms. Gonzalez's claims arise out of the same course of conduct as those of the Class. Defendant does not dispute that class counsel is qualified, experienced, and able to conduct the litigation on behalf of the Class. Defendant does not dispute that Agway's business records readily identify Class Members, thereby satisfying ascertainability. Defendant does not dispute that a class action is superior to other available methods for the fair and efficient adjudication of the claims at issue here. Defendant does not dispute the similarities between the instant action and the four cases in which courts granted contested motions to certify classes of customers of energy companies (like Agway) who were overcharged under the terms of their written customer agreements.[2] Instead, Defendant's Opposition raises five issues, all of which are meritless and few of which are relevant to this Court's determination as to whether to certify a class.

*First*, Defendant argues that Plaintiff does not satisfy commonality because "Agway uniquely provides its customers with a product of additional value beyond mere electrical supply, and because Plaintiff has failed to take that product into consideration." Opp. at 4-9. But all Agway customers receive EnergyGuard, and whether EnergyGuard's cost or value should be considered when assessing damages is a merits issue thoroughly addressed by Plaintiff's expert

---

[2] *See, e.g.*, Motion, ECF No. 136-1, at 3 (citing *Bell v. Gateway Energy Services Corp.*, No. 31168/2018 (Rockland Cnty. Super. Ct. Jan. 8, 2021), NYSCEF Doc. No. 152; *BLT Steak LLC v. Liberty Power Corp, L.L.C.*, No. 151293/2013 (N.Y. Cnty. Super. Ct Aug. 14, 2020), NYSCEF Doc. No. 376; *Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016); and *Roberts v. Verde Energy, USA, Inc.*, No. 15-6060160, 2017 WL 6601993 (Conn. Super. Ct. Dec. 6, 2017), *aff'd*, 2019 WL 1276501 (Conn. Super. Ct. Feb. 1, 2019)).

Dr. Frank Felder. And as Plaintiff has explained *ad nauseum*, EnergyGuard has no bearing on this case because EnergyGuard-related costs -- let alone the purported value of the "Peace of Mind" associated with EnergyGuard -- were not disclosed as a variable rate pricing factor. Even if the jury determines that Agway was allowed to include EnergyGuard costs in the variable rate, Dr. Felder conducts all of his analyses "without and with [Agway's EnergyGuard] costs in case they are determined to be appropriate," as is explicit in Tables 4 and 6 of his report. Expert Report of Dr. Frank Felder (July 23, 2020) ("Felder Report"), ECF No. 136-3, at 13, Table 4, and Table 6; *accord* Expert Rebuttal Report of Frank Felder, Ph.D. (Oct. 13, 2020) ("Felder Rebuttal Report"), ECF No. 136-10, at Exhibit 3. If Plaintiff's interpretation of the contract is correct, then EnergyGuard's costs are irrelevant (much less its "value"). If Defendant is correct, then the EnergyGuard costs Agway incurred ($583,900) can be deducted from the more than $30,000,000 in damages it owes Class Members because it overcharged for electricity under the uniform customer agreement. Individual issues are relevant only if Plaintiff must account for the idiosyncratic "value" consumers might place on EnergyGuard, but the contract only (at best) allows Defendant to include the *cost* of EnergyGuard. And Defendant's analogy between EnergyGuard and an insurance product actually belies its argument because, of course, insurance products are valued on an objective basis every day in the marketplace. If Defendant's argument was correct, no court would ever certify a class of insurance purchasers because consumers differently value the "peace of mind" that comes with insurance. Indeed, no consumer class action could ever be certified because consumers always have different subjective valuations of product characteristics. But contract and consumer protection claims are determined on an objective basis; subjective views regarding the "value" of a product or service are irrelevant.

*Second*, Defendant asserts that Plaintiff does not satisfy typicality because Plaintiff is serving as the executor to his mother's estate (for whom Defendant does not dispute typicality)

and was not himself an Agway customer. Opp. 9-14. Defendant's position is contrary to well established case law, which provides that "in a Rule 23 certification context, the executor of an estate stands in the shoes of the decedent and thus if the decedent would be a proper class representative, the executor of his estate would also be proper." *Jie Zhang v. Wen Mei, Inc.*, No. 14-1647, 2015 WL 6442545, at *6 (E.D.N.Y. Oct. 23, 2015). And these arguments were addressed in the Opposition to Denial Motion at 13-16.

*Third*, Defendant argues that Plaintiff does not satisfy adequacy because Plaintiff is not sufficiently knowledgeable about the underlying facts of this action. Opp. at 14. Defendant's argument is both wrong on the facts and based on an unsubstantiated heightened knowledgeability standard that is undermined by the weight of precedent. Again, these arguments were addressed in the Opposition to Denial Motion at 9-16.[3]

*Fourth*, Defendant disputes whether Plaintiff can seek injunctive relief because Plaintiff also seeks monetary relief. Opp. at 15-16. However, Defendant's assertion is predicated on a fundamental misunderstanding of Plaintiff's pleadings, which seek a Rule 23(b)(2) Class for injunctive and declaratory relief, and a Rule 23(b)(3) Class for monetary damages. Thus, Plaintiff's request for monetary relief does not preclude certification of an injunctive relief class.

*Finally*, Defendant asserts that Plaintiff does not satisfy predominance because Plaintiff allegedly cannot prove liability. Opp. at 16-17. Much like Defendant's argument against commonality, Defendant's predominance argument fails because it is focused on the merits of this action, which are not relevant to class certification.

---

[3] These second and third arguments are straight regurgitations of the arguments Defendant raised in its Denial Motion. Given that both motions combined are less than the allotted forty pages, it is obvious that Defendant brought its Denial Motion solely as a stratagem to allow it a reply brief on this issue. Plaintiff respectfully suggests that the Court not tolerate such sharp practices and that it should cast a gimlet eye on any reply filed by Defendant on these issues.

Accordingly, Defendant's Opposition does not provide a basis to deny certification.

## I. PLAINTIFF SATISFIES THE COMMONALITY REQUIREMENT.

Defendant does not dispute Plaintiff's basis for commonality, namely, that "Agway made uniform representations to all class members regarding its variable rate pricing methodology and . . . its variable rates were set in a uniform manner," such that "whether Agway set its rate in conformity with its customer agreements and in good faith" present common questions that will dominate this action. Motion at 20. Instead, Defendant myopically focuses on the merits of Plaintiff's claims, arguing that Plaintiff does not satisfy commonality because "Agway uniquely provides its customers with a product of additional value beyond mere electrical supply, and because Plaintiff has failed to take that product into consideration." Opp. at 4-9. Of course, the contract (at best) allows Agway to account for the *cost*, not *value*, of EnergyGuard, but in either event, the question of whether Agway's rates are higher than allowed under the contract is a merits issue common to all Class Members. Defendant's merits-based arguments are unavailing because they have no relevance to Rule 23's commonality inquiry.

### A. The Merits Are Not At Issue On This Motion.

Defendant's insistence that the Court focus on the merits is contrary to well established precedent. "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Zhang v. Ichiban Grp., LLC*, No. 17-148, 2021 WL 3030052, at *4 (N.D.N.Y. May 21, 2021) (D'Agostino, J.) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "'Furthermore, in order to certify a class, the proponent of class certification need not show that the common questions will be answered, on the merits, in favor of the class.'" *Id.* (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)). *Zhang v. Ichiban Grp.* is instructive. In *Zhang*, the defendants argued that the plaintiffs

"cannot establish that there are common questions of fact" because there are some class members who "have no claims against Defendants," which the defendants demonstrated through affidavits. *Id.* Your Honor rejected the defendants' argument and explained that "[t]his is exactly the type of free-ranging merits argument that courts have cautioned against." *Id.*

Here, whether Agway properly disclosed EnergyGuard's cost or its value as a pricing factor is a merits question common to all Class Members. Given the undisputed uniformity of Defendant's representations to the Class, the adequacy of Defendant's disclosures presents a question that is common to the Class.

**B.**      **Defendant's EnergyGuard Provision Is Not Determinative Of Commonality.**

Defendant's principal argument regarding whether Plaintiff can satisfy the commonality requirement is that Agway is unique among ESCOs because of its EnergyGuard product. Opp. at 6. However, Defendant's uniqueness in relation to other ESCOs is not at issue. The issue is whether Plaintiff and Class Members can demonstrate harm by Agway through a common injury and common proof, not whether Defendant is distinguishable from its competitors. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011).

**C.**      **Class Members' Subjective Valuations Of EnergyGuard Are Irrelevant.**

There is no basis to suggest that each Class Member's "subjective valuation" is relevant to this action. *See* Opp. at 9. Defendant cannot point to a single part of its contract that states, or even insinuates, that customers will be charged an inflated variable rate due to the purported "value" of EnergyGuard.[4] *See id.* at 5-9. This issue is common across the entire Class, and Defendant does not attempt to argue otherwise.

---

[4] As discussed at length in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, the New York Public Service Commission's decision has no bearing on whether Defendant complied with its contractual obligations and representations, nor do they support Defendant's position. ECF No. 151 at 4-10 (collecting cases).

Moreover, each Class Member's subjective valuation of EnergyGuard (which Defendant describes as an insurance product) is irrelevant to the Court's analysis. Courts in this Circuit and elsewhere have assessed the value of insurance products and policies using an objective standard, even though the plaintiffs and class members may have varied personal valuation of these policies. For example, in *Fleisher v. Phoenix Life Ins. Co.*, No. 11-8405, 2013 WL 12224042, at *4 (S.D.N.Y. July 12, 2013), the court certified classes for breach of contract claims arising out of improper premium rate increases based upon standardized insurance pricing policies. As the court explained:

> The insurance policies at issue contain provisions regarding how COI [cost of insurance] rates are set and what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes. Even if the appropriate interpretation of these terms is disputed, that issue will be resolved when this court decides "the accepted meaning in the industry" of the same provisions in these uniform policies. How any one individual insured may have interpreted his or her contract is of no moment. *Freeman*, 2013 WL 11884, at *2. The key issue regarding this class is whether Phoenix increased the COI in a way or in a manner that violated the terms of the form insurance contracts. . . . The lawfulness of Phoenix's actions as to each member of the Classes will not depend on issues specific to that individual, but will instead depend on the common answer to the common contention that Phoenix used an impermissible basis to increase the COI for a large group of policyholders in one fell swoop.

No. 11-8405, 2013 WL 12224042, at *13-14 (S.D.N.Y. July 12, 2013). *See also Feller v. Transamerica Life Ins. Co.*, No. 16-01378, 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017) ("'[T]he subjective expectations of an insured class member would have little if any bearing on the breach of contract analysis.'") (quoting *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012)) (certifying classes of insurance policyholders). *See also Bally v. State Farm Life Ins. Co.*, No. 18-04954, 2021 WL 1668004, at *9 (N.D. Cal. Apr. 28, 2021) (holding that customers' subjective understandings of the policy are not relevant because the applicable standard is "objectively reasonable expectations of the insured"; explaining that ambiguous

insurance policy provisions must be construed in the insured's favor; and denying insurer's summary judgment motion regarding class claim that insurer breached its contract by charging policyholders for additional, unidentified expenses in connection with the cost of insurance).

**D.      Agway's Contract Precludes EnergyGuard's Inclusion In The Variable Rate.**

Defendant purports to include EnergyGuard in its variable rates, even though the language of its customer contracts precludes Agway from doing so. *See, e.g.*, Motion at 7-11, 13, 15, 36-37; Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 151, at 3, 11-12, 13-14. Defendant's reliance on its Third-Party Verification ("TPV") call recordings, which preceded the formation of the written contract, is misplaced. Opp. at 7-8. In fact, the contract's integration clause limits the customer contract's terms to "the Cover letter and any approved addenda." Opp. at 7-8; Gonzalez Welcome Letter & Contract, ECF No. 136-18, at GONZALEZ 000002; Compilation of Customer Disclosure Statements, ECF No. 136-11.

Even if, *arguendo*, Agway's customer contracts did not contain an integration clause precluding consideration of the standardized TPV calls, the TPV calls do not disclose that customers will be charged a variable rate based upon the purported "value" of the "Peace of Mind" EnergyGuard provides customers. Opp. at 7-8. In fact, the TPV call transcript that Defendant quotes in its Opposition reveals that Agway required customers to first agree to the introductory rate and subsequent variable rate pricing methodology, and only disclosed the provision of EnergyGuard *after* customers confirmed their understanding of Agway's pricing structure. *Id.* (quoting representative asking customer "Do you agree?" after describing pricing structure, and requiring confirmation before disclosing EnergyGuard); *cf.* Rule 30(b)(6) Deposition Transcript of Agway Energy's Corporate Representative Michael Schueler (Aug. 30, 2018) ("Schueler I Dep. Tr."), relevant excerpts attached as **Exhibit 1** to the Declaration of Todd S. Garber ("Garber Decl."), at 142:14-143:18 ("Q: So it's fairly important that that script is then

8

followed by the third-party verification companies as it's language that has been approved or

reviewed by The New York Public Commission; is that your understanding? A. Yes, sir.").

Moreover, the portion of the TPV transcript that mentioned EnergyGuard only stated that,

"Along with this [electricity supply] program, you will automatically receive the Agway

EnergyGuard Repair Program that provides coverage for your center [sic] air conditioning unit

and electric wiring in your home." Opp. at 7-8. Because Agway's TPV script disclosed

EnergyGuard separate and apart from its pricing methodology, and never mentioned that

customers would also be charged for EnergyGuard (as opposed to "automatically" receiving

EnergyGuard coverage), there is no basis for Agway to now claim that based on the TPV call,

customers should have reasonably understood that EnergyGuard's "value" would be part of

Agway's pricing structure. *Id.*

     Defendant's repeated guaranteed savings argument is likewise unavailing. Opp. at 7-8.

As the Court explained in its incisive opinion flatly rejecting Defendant's EnergyGuard

argument in the first instance:

> Agway's agreement represents that the variable monthly rate "shall each month
> reflect the cost of electricity acquired by Agway from all sources . . . related
> transmission and distribution charges and other market-related factors, plus all
> applicable taxes, fees, charges or other assessments and Agway's costs, expenses
> and margins." **Defendant argues that it has not been misleading because it
> never represented that savings were guaranteed. But this is inapposite to
> whether Defendant in fact charged rates to Plaintiff and putative class
> members that were based only upon those factors explicitly enumerated in the
> contract, as required by the contract. Defendant's contention that its
> EnergyGuard product in some way justifies an increase in the variable rate is
> plausibly inconsistent with the terms of the agreement.** Plaintiff has plausibly
> alleged that Agway's rates were "not in fact competitive market rates based on the
> wholesale cost of electricity" or the factors set forth in the agreement.

*Gonzales v. Agway Energy Servs., LLC*, No. 18-235, 2018 WL 5118509, at *4 (N.D.N.Y. Oct.

22, 2018) (emphasis added). Defendant should not be heard to relitigate its contract's guaranteed

savings provision in light of the Court's prior decision. And of course, all Class Members are subject to this contract provision, precluding the predominance of any related individual issues.

Accordingly, Defendant provides no cognizable basis for finding that commonality does not exist.

## II.    PLAINTIFF SATISFIES THE TYPICALITY REQUIREMENT.

Defendant does not dispute that Ms. Gonzalez's experience was typical of all Class Members. Opp. 9-14. Instead, Defendant argues that Plaintiff's claims are not typical to those of the Class because he is serving as the executor to his mother's estate and was not himself an Agway customer, and therefore cannot be sufficiently knowledgeable about the circumstances to satisfy typicality. Opp. 9-14. Defendant's position misunderstands the thrust of the typicality inquiry, which focuses on the defendant's behavior, not the plaintiff's behavior. *See, e.g.*, *Zhang v. Ichiban Grp.*, 2021 WL 3030052, at \*5 ("'[Typicality] is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'") (granting conditional certification, holding that executor of deceased plaintiff's estate is appropriate class representative, and quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007)). Moreover, Defendant's position is contrary to well established case law, which provides that "in a Rule 23 certification context, the executor of an estate stands in the shoes of the decedent and thus if the decedent would be a proper class representative, the executor of his estate would also be proper." *Zhang v. Wen Mei*, 2015 WL 6442545, at \*6 (citing *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 196 (S.D.N.Y. 1986), and *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 58 (D. Mass. 2011)) (finding that executors of deceased plaintiff's estate satisfied Rule 23 requirements, including typicality)); *Allen v. Holiday Universal*, 249 F.R.D. 166, 178-80 (E.D. Pa. 2008) (assessing deceased

plaintiff's typicality with respect to the class, *not* the estate executor's typicality, and holding that typicality was satisfied); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 695-98 (D.N.J. 1986) (examining the decedent's circumstances and finding that typicality was satisfied).

Defendant does not cite a single case in which a court found that typicality was not satisfied because the plaintiff is the representative of a deceased plaintiff's estate. Rather, the one case Defendant relies upon bears no resemblance to this case. Opp. at 11. In *Jensen v. Cablevision Sys. Corp.*, the court held that the plaintiff -- who was not a deceased plaintiff's executor -- did not satisfy typicality because the plaintiff uniquely opted out of an arbitration provision that was an applicable defense for "over 99 percent of the proposed class." 372 F. Supp. 3d 95, 124 (E.D.N.Y. 2019).

Defendant also asserts that Plaintiff's claims are not typical of the class because he cannot testify to his mother's reliance on Agway's misrepresentations. Opp. at 11-14. This argument is nothing more than a red herring addressed in the Opposition to Denial Motion at 19-22. Reliance is not an element of any claim in this action. *See, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (holding that GBL § 349 does not require proof of reliance; rather, under GBL § 349, "a deceptive act is defined as one 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012), and quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)); *Ogilvy Grp. Sweden, AB v. Tiger Telematics, Inc.*, No. 05-8488, 2006 WL 547785, at *2 (S.D.N.Y. Mar. 7, 2006) ("Reliance is not a required element for a breach of

contract claim.") (citing *LNC Investments, Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 461 (2d Cir. 1999)).[56]

Thus, Defendant's arguments against a finding of typicality are meritless.

## III.   **PLAINTIFF SATISFIES THE ADEQUACY REQUIREMENT.**

Defendant asserts that Plaintiff's efforts to pursue this action on behalf of his mother's estate "are insufficient to overcome his lack of knowledge of any of the underlying facts including any alleged deception of Ms. Gonzalez, or any representation causing her to maintain Agway's services."  Opp. at 14 (citing Denial Motion, ECF No. 138-1, at 5-11).  Once again, Defendant does not cite a single case in support of its unstated knowledgeability standard, nor could it.  As Plaintiff detailed at length in his Opposition to Defendant's Motion to Deny Certification, Plaintiff has demonstrated an excellent understanding of the facts and issues related to this action, and is therefore more than sufficiently knowledgeable to satisfy the adequacy requirement.  *See* Opposition to Defendant's Denial Motion, ECF No. 149, at 9-19.

Defendant also briefly asserts that Plaintiff's interests are antagonistic to those of the Class, and predicates that argument on one narrow issue: "this lawsuit attempts to preclude

---

[5] *See also Shamberg*, 111 F.R.D. at 695-98 ("[Q]uestions of reliance are 'not an impediment' to class certification" (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975))); *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. 05-6838, 2013 WL 3353852, at *4 (C.D. Cal. July 3, 2013) (denying motion to decertify class due to the plaintiff's passing, and holding that the defendant's argument that the executor could not prove reliance on the alleged misrepresentations was meritless).  Only objective evidence is relevant in consumer protection claims.  *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (claims regarding misleading consumer products "do not require proof as to individual understandings and can be judged based on the objective standard provided"); *In re McCormick & Company, Inc., Pepper Products Marketing and Sales Practice Litig.*, 422 F. Supp. 3d 194, 244-45 (D.D.C. 2019) (proof of deceptive actions would be "judged by an objective, reasonable consumer standard" and can by satisfied "without any individualized proof of reliance").

[6] Defendant also argues that typicality is not satisfied because Plaintiff should not prevail on the merits.  The merits are not relevant to the Court's Rule 23 analysis.  *See supra* at § I.A.

Agway from providing EnergyGuard to any putative class member in the future." Opp. at 14 (citing Denial Motion, ECF No. 138-1, at 11-13). Defendant's characterization is false, which is why Defendant does not reference a single source for its allegation. *Id.*[7] At no point in this litigation has either Plaintiff or Ms. Gonzalez sought to prevent Agway from offering EnergyGuard. Rather, Plaintiff seeks to preclude Agway from continuing to make false representations regarding its pricing methodology and to rectify the harm that it has caused to thousands of unsuspecting consumers. *See, e.g.*, Complaint, ECF No. 1, ¶¶ 56-58, 64-65, 73 (describing requested relief).

Thus, Defendant's arguments against Plaintiff's adequacy are meritless.

## IV.    PLAINTIFF SATISFIES THE RULE 23(b)(2) REQUIREMENTS.

Defendant does not contest that it acted uniformly toward the Class, such that injunctive relief would be appropriate relief with respect to the Class as a whole. *See* Rule 23(b)(2). Instead, Defendant argues that the Court should not certify Plaintiff's proposed Class pursuant to Rule 23(b)(2) because "this lawsuit primarily seeks money damages from Agway." Opp. at 15-16 (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001); *Calabrese v. CSC Holdings, Inc.*, No. 02-5171, 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009); *Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159 (W.D.N.Y. 2003)). Defendant's argument is predicated on outdated case law. Since the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), courts in this Circuit have consistently held that a plaintiff may certify an injunctive and declaratory relief class under Rule 23(b)(2), and separately certify a monetary damages class under Rule 23(b)(3). *See, e.g.*, *Hill v. City of New York*, No. 13-6147,

---

[7] Defendant cites its Denial Motion, ECF No. 138-1, at 11-13, which likewise does not reference any filings or testimony from Plaintiff or Ms. Gonzalez. Rather, Defendant's Denial Motion cites to its own Answer to Plaintiff's Complaint, ECF No. 97.

2019 WL 1900503, at *3 n.7 (E.D.N.Y. Apr. 29, 2019) (certifying (b)(2) and (b)(3) classes).

Unlike *Robinson*, *Calabrese*, and *Daniel*, in this case, Plaintiff's proposed Rule 23(b)(2) class does not seek monetary relief. Rather, Plaintiff here seeks a Rule 23(b)(2) class for an injunction against further statutory violations. *See*, *e.g.*, *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 174 (S.D.N.Y. 2011) (distinguishing *Robinson*, which sought both injunctive and monetary relief through (b)(2) certification, and denying motion to decertify (b)(2) and (b)(3) classes). Plaintiff separately seeks certification of a Rule 23(b)(3) class for monetary damages. *Id.* (explaining that GBL violations entitle plaintiffs to both classes of relief); *Haddock v. Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 285 (D. Conn. 2013) (holding that a court may certify an "injunction class" under (b)(2) and a "damages class" under (b)(3)) (collecting cases); *Stinson v. City of New York*, 282 F.R.D. 360, 381 (S.D.N.Y. 2012) (holding that a plaintiff may certify "a class under Rule 23(b)(2) for purposes of injunctive relief and under Rule 23(b)(3) for purposes of money damages"). Accordingly, Plaintiff's request for monetary relief does not preclude certification of his injunctive relief class.

## V.    PLAINTIFF SATISFIES THE RULE 23(b)(3) REQUIREMENTS.

The predominance inquiry is satisfied where "common questions predominate over any questions affecting only individual class members." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Mirroring its argument with respect to the commonality inquiry, Defendant's assertion that Plaintiff does not satisfy predominance hinges on Defendant's misguided assertion that Plaintiff cannot prevail on the merits. Once again, Defendant's argument is inapposite and unavailing.

First, Defendant claims without specific citation or explanation that Plaintiff "failed to identify with evidentiary support the issues it claims are common to the class." Opp. at 16. Not so. *See* Motion at 1-2, 4-17, 32-34, 36-38. Plaintiff's claims rely upon Defendant's standardized

customer agreements and pricing practices, which applied in a uniform manner to all Class Members.  Agway breached its customer agreement through a uniform practice of overcharging its customers.  Relevant issues regarding Plaintiff's breach of contract claim are: (1) whether Defendant has breached its contract; and (2) the amount of any damages.  Each of these issues relies upon common proof of Agway's overcharges.  The evidentiary support underlying Plaintiff's contract claims involve the misrepresentations made by Agway regarding its pricing practices within its customer agreements, Agway's variable rates, Agway's actual costs, and local utilities' contemporaneous rates, which will be used to determine Class Members' overcharges using a uniform formula.  Similarly, Plaintiff's claims under NYGBL §§ 349 and 349-d are premised on two common questions: (1) whether Agway's representations regarding its variable rate have the capacity to deceive a reasonable consumer; and (2) whether Agway's customers were injured by that deception.  Plaintiff will demonstrate that Agway violated these statutes through common and generalized evidence of Agway's misrepresentations in its customer agreements.  Plaintiff's expert will also establish damages in a uniform manner with standardized formulas to automatically generate the precise damages applicable to each Class Member.

Second, Defendant claims that Plaintiff intends to "prove liability for breach of contract simply by reference to Agway's rates and comparing them with local utilities."  Opp. at 16.  Not so.  Plaintiff will demonstrate that Defendant failed to comply with the language of its own customer agreements and contractual pricing obligations.  Plaintiff will further demonstrate that Defendant's variable rates were significantly higher than rates actually based on the terms of Defendant's contracts.  As described in Dr. Felder's Expert Report, Agway's variable rates were significantly higher than its costs plus a reasonable profit margin.  *See, e.g.*, Felder Rebuttal, ECF No. 136-10, at Exhibit 3.  Similarly, as one manner of demonstrating Defendant's failure to

set variable rates in the manner stated in its contracts, Dr. Felder established that Agway's rates were significantly higher than local utilities' contemporaneous rates, which are a reasonable comparison to competitive wholesale market cost-based rates. *Id.*; *see also, e.g.*, *Donin v. Just Energy Group Inc.*, No. 17-5787, at 14 (E.D.N.Y. Sept. 24, 2021), ECF No. 111 (Kuntz, J.), attached as **Exhibit 2** to Garber Decl. (finding that the plaintiff's comparison of the defendant's variable rate to the local utilities' contemporaneous rates "substantiate[d] [plaintiff's] claim that Defendant's failed to base their variable rates on 'business and market conditions.'"). Using various common forms of evidence, Plaintiff will show that Defendant failed to set its variable rates in a manner consistent with the terms of its contract.

Finally, Defendant alleges that "Plaintiff declares that EnergyGuard should be provided for free." Opp. at 17. Leaving aside that Plaintiff does no such thing, Dr. Felder included Agway's EnergyGuard costs in his damages methodologies should the jury decide such costs should be included. *See, e.g.*, Felder Report, ECF No. 136-3, at 13, Table 4, and Table 6; Felder Rebuttal, ECF No. 136-10, at Exhibit 3. Once again, Defendant seeks to rely exclusively on EnergyGuard as proof that Defendant should be allowed to charge exorbitant prices to consumers for a service "automatically" provided at no extra cost and that consumers may never use. Not only does Defendant's argument defy the language of its own customer agreements, but it also fails to provide a basis for denying class certification under Rule 23(b)(3).

Beyond Defendant's generalization that there is insufficient evidentiary support or its inaccurate rebuttals of Plaintiff's methods of proof, Defendant has provided no argument and no evidence that Plaintiff fails to meet its burden of proof. Plaintiff meets the requirements of Rule 23(b)(3) by demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

## **CONCLUSION**

For all the aforementioned reasons, Plaintiff respectfully requests that the Court grant

Plaintiff's Motion for Class Certification, and thereby certify the Class and Sub-Class, appoint

Mr. Martinez as Class Representative, and appoint Finkelstein, Blankinship, Frei-Pearson &

Garber, LLP attorneys as Class Counsel.

Dated:  White Plains, New York
       October 18, 2021

By:     *s/ Todd S. Garber*
        Todd S. Garber
        D. Greg Blankinship
        Chantal Khalil
        **FINKELSTEIN, BLANKINSHIP,**
        **FREI-PEARSON & GARBER, LLP**
        One North Broadway, Suite 900
        White Plains, NY 10601
        Tel: (914) 298-3283
        Fax: (914) 824-1561
        tgarber@fbfglaw.com
        gblankinship@fbfglaw.com
        ckhalil@fbfglaw.com

        *Attorneys for Plaintiff*
        *and the Putative Class*