UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTONIO MARTINEZ, in his capacity as
executor of Naomi Gonzales' estate,

                              **Plaintiff,**

   vs.                                            5:18-CV-00235
                                                       (MAD/ATB)

AGWAY ENERGY SERVICES, LLC,

                              **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**FINKELSTEIN, BLANKINSHIP,**        **TODD S. GARBER, ESQ.**
**FREI-PEARSON & GARBER, LLP**      **CHANTAL KHALIL, ESQ.**
One North Broadway, Suite 900          **DOUGLAS G. BLANKINSHIP, ESQ.**
White Plains, New York 10601
Attorneys for Plaintiff

**BOND SCHOENECK & KING, PLLC**    **BRENDAN M. SHEEHAN, ESQ.**
One Lincoln Center                             **SHARON M. PORCELLIO, ESQ.**
Syracuse, New York 13202
Attorneys for Defendant

**COYLE LAW GROUP LLP**               **JOHN D. COYLE, ESQ.**
55 Madison Avenue - Suite 400
Morristown, New Jersey 07960
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Naomi Gonzales ("Decedent") commenced this putative class action against Defendant Agway Energy Services, LLC, on December 6, 2017. *See* Dkt. No. 1. Decedent purported to bring this action on her own behalf and on behalf of (1) a class consisting of Defendant's New York and Pennsylvania customers charged a variable rate for residential electricity services from

November 2011 to the present; and (2) a sub-class of Defendant's New York customers charged a variable rate for residential electricity services from November 2011 to the present. *See id.* at ¶¶ 42-43. Decedent asserted five claims against Defendant: (1) violations of New York General Business Law ("GBL") § 349; (2) violations of GBL § 349-d; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) unjust enrichment. *See id.* at ¶¶ 47-83.

On January 29, 2018, Defendant filed a motion to dismiss. *See* Dkt. No. 12. On October 22, 2018, this Court dismissed the breach of implied covenant of good faith and fair dealing and unjust enrichment claims. *See* Dkt. No. 81. Decedent passed away and, on April 1, 2021, Antonio Martinez was substituted as Plaintiff. *See* Dkt. No. 125. In August 2021, the parties made a number of motions in rapid succession: (1) Plaintiff moved for class certification, *see* Dkt. No. 136; (2) Defendant moved for summary judgment or, in the alternative, to strike Plaintiff's proposed expert, *see* Dkt. No. 137; (3) Defendant moved to deny class certification, *see* Dkt. No. 138; (4) Plaintiff moved to strike Defendant's motion to deny class certification, *see* Dkt. No. 139; and (5) Defendant moved to strike Plaintiff's statement of additional material facts, *see* Dkt. No. 156. On February 2, 2022, this Court ordered that (1) Plaintiff's motion for class certification was granted in part and denied in part and Defendant's motion to deny class certification was granted in part and denied in part; (2) Plaintiff's motion to strike Defendant's motion to deny class certification was denied; (3) Defendant's motion for summary judgment was granted in part and denied in part; (4) Defendant's motion to strike Plaintiff's proposed expert was granted; and (5) Defendant's motion to strike Plaintiff's statement of additional material facts was denied. *See* Dkt. No. 158 (hereinafter, the "challenged Order").

Currently before the Court is Defendant's motion for reconsideration of the challenged

Order to the extent that it (1) denied Defendant's motion for summary judgment on Plaintiff's claims under GBL §§ 349 and 349-d, and (2) granted class certification as to those claims. *See* Dkt. No. 159. In the alternative, Defendant asks the Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See id.* Plaintiff opposes Defendant's motion and cross-moves for reconsideration of the challenged Order to the extend it (1) granted Defendant's motion for summary judgment on Plaintiff's breach of contract claim, (2) denied Plaintiff's motion for class certification as to that claim, and (3) granted Defendant's motion to strike the expert testimony of Dr. Felder. *See* Dkt. No. 164. For the reasons set forth below, Defendant's motion for reconsideration is granted and Plaintiff's cross motion for reconsideration is denied.

## II. BACKGROUND

For a complete recitation of the relevant background, the parties are referred to the challenged Order. *See* Dkt. No. 158.

## III. DISCUSSION

**A.    Standard of Review**

"In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The prevailing rule 'recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Tomassini v. FCA US LLC*, No. 3:14-CV-1226, 2021 WL

4819995, *1 (N.D.N.Y. Oct. 15, 2021) (quoting *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Here, the parties do not identify an intervening change in controlling law or new evidence not previously available. Therefore, both Plaintiff's and Defendant's motions are seeking to correct a clear error of law or prevent manifest injustice.

**B.     Plaintiff's Cross Motion For Reconsideration**[1]

*1. Timeliness*

Defendant argues that Plaintiff's cross motion for reconsideration is untimely.  *See* Dkt. No. 165 at 18-20.  Local Rule 60.1 provides that, "[u]nless otherwise provided by the Court, by statute or rule ... a party may file and serve a motion for reconsideration or reargument no later than FOURTEEN DAYS after the entry of the challenged ... order." N.D.N.Y. L.R. 60.1. Plaintiff's cross motion for reconsideration of the challenged Order was filed on March 9, 2022, thirty-six days after the challenged Order was entered.  Plaintiff argues that his motion was timely because it comports with the timeliness rules for cross motions.  *See* Dkt. No. 166; *see also* N.D.N.Y. L.R. 7.1(c) ("A party may file and serve a cross-motion ... at the time it files and serves its opposition papers to the original motion, i.e., not more than TWENTY ONE DAYS after service of the motion, unless otherwise ordered by the Court").  Plaintiff's cross motion for reconsideration was filed twenty-one days after Defendant's motion for reconsideration.

Even assuming that a cross motion for reconsideration would be untimely under these circumstances, *see, e.g., Lore v. City of Syracuse*, No. 5:00-CV-1833, 2008 WL 5378370, *3 (N.D.N.Y. Dec. 22, 2008), the Court exercises its discretion to extend the deadline and treat the

---

[1] Plaintiff's cross motion is addressed first for ease of organization.

motion as timely.  *See* Fed. R. Civ. P. 6(b).

### 2. The Second Circuit's Decision in Mirkin v. XOOM Energy, LLC

Plaintiff argues that this court failed to address "binding Second Circuit precedent" in *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173 (2d Cir. 2019).  Dkt. No. 164-1 at 34.  Plaintiff contends that *Mirkin* "makes clear that *Richards* [*v. Direct Energy Services, LLC*, 915 F.3d 88 (2d Cir. 2019),] is not applicable to factual circumstances similar to the one before this Court," but that "in circumstances such as these, utility rates can and should be considered."  *Id.* at 12, 34.  In opposition, Defendant asserts that Plaintiff's argument "is based on a fundamental misunderstanding" of *Mirkin* and *Richards*, which may be reconciled as "*Richards* setting forth the legal standard where the contract at issue gives the [Energy Services Company ('ESCO')] discretion to set it pricing and *Mirkin* as setting forth the standard when the contract requires the ESCO to charge 'market rate.'"  Dkt. No. 165 at 20, 22.

The Second Circuit did not overrule *Richards* when it decided *Mirkin*.  Rather, as Defendant argues, the *Mirkin* court compared the terms of the contract in that case with the terms of the contract in *Richards*, and concluded that *Richards* was not controlling because of a critical difference in contractual language.  *See Mirkin*, 931 F.3d at 178 n.3 (finding that "[w]hile the consumer-plaintiff's breach of contract theory in *Richards* was identical ... to the one the Mirkins now advance, *the relevant contractual provisions are critically different*") (emphasis added).  Specifically, the contract in *Mirkin* required the defendant "to base its variable rates on its supply costs," while the contract in *Richards* "imposed no such requirement" and "made no mention of procurement costs."  *Id.*  Thus, the two decisions are "goalposts" around which other similar cases may fall based upon the language of their specific contracts.  *Stanley v. Direct Energy Services, LLC*, 466 F. Supp. 3d 415, 425 (S.D.N.Y. 2020).

As this Court concluded when deciding the challenged Order, the contractual language in the Agreement is far closer to that in *Richards*. Unlike *Mirkin*, the Agreement here clearly allowed Defendant to set the variable rate on far more than just its supply costs; it specifically mentions "market-related factors" and also includes "all applicable taxes, fees, charges or other assessments and [Defendant's] costs, expenses and margins." Dkt. No. 137-10 at 3; *see also Richards*, 915 F.3d at 94 ("After the Initial Term and during the Renewal Period, the rate for electricity will be variable each month at Direct Energy's discretion. The rate may be higher or lower each month based upon business and market conditions"). Thus, the Court rejects Plaintiff's argument that it erred in relying on *Richards* when concluding that the regulated rates of the incumbent utilities could not be used to measure the competitiveness of Defendant's rates.

### 3. Law of the Case Doctrine

Plaintiff also argues that, under the law of the case doctrine, it was clear error for the Court to conclude "that utility rates cannot be used to evaluate ESCO rates" because that conclusion was "inconsistent" with the Court's prior rulings. Dkt. No. 164-1 at 35-36. Plaintiff points to this Court's February 25, 2019, Memorandum-Decision and Order (the "February 25 Order")[2] which held that:

> The Second Circuit recently affirmed the dismissal of a similar action on summary judgment. *See Richards v. Direct Energy Services, LLC*, [915 F.3d 88, 99 (2d Cir. 2019)]. The Court finds that at the pleadings stage, the cases are very different. The plaintiff in *Richards* dealt with claims that were implausible because the amount of overcharge did not support the plaintiff's theory that the ESCO did not exercise its discretion to set pricing in good faith. *Id.* at 19. The plaintiff there offered "no evidence to suggest that it did not." *Id.* On a motion to dismiss, the pleadings,

---

[2] The February 25 Order denied Defendant's motion for reconsideration of this Court's October 22, 2018 Memorandum-Decision and Order, which granted in part and denied in part Defendant's motion to dismiss. *See* Dkt. Nos. 81, 95.

> and not the evidence, are the object of attention. Here, Plaintiff has offered allegations of wildly fluctuating rates in support of her theory that [Defendant] acted in bad faith in exercising its contractually granted discretion. Again, the "argument does not turn, as Defendant contends, on whether the rates were 'higher rates than [Plaintiff] would have paid to the incumbent utility, Central Hudson.'" Dkt. No. 81 at 9. "Rather, Plaintiff asserts that Defendant failed to charge rates that were calculated according to the agreed upon factors." *Id.*

*See* Dkt. No. 95 at 7.

The Court holds that the law of the case doctrine does not preclude it from holding that Plaintiff cannot "measure the competitiveness of Defendant's rates solely against the regulated rates of the incumbent utilities." Dkt. No. 158 at 23. Initially, the Court does not read any conflict between the February 25 Order and the challenged Order. In the February 25 Order, this Court stated that *Richards* was "very different" from this case due to the procedural postures of the two cases, drawing specific attention to the fact that this case was then "at the pleadings stage" and "the pleadings, and not the evidence, [were] the object of attention," while the *Richards* court was deciding that case under the summary judgment standard. Dkt. No. 95 at 7. This Court concluded, under the standards of a motion to dismiss, that Plaintiff had adequately "offered allegations of wildly fluctuating rates in support of her theory that [Defendant] acted in bad faith in exercising its contractually granted discretion." *Id.* In making that ruling, the Court did not determine how, or with what evidence, Plaintiff could prove that Defendant acted in bad faith in setting the variable rates or that *Richards* was inapplicable to that determination.

In any event, "the law of the case doctrine is 'discretionary and does not limit a court's power to reconsider its own decision prior to final judgment.'" *Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Thus, to the extent that there was any conflict between the February

7

25 Order and the challenged Order, the Court was permitted to exercise its discretion to reconsider the February 25 Order, even "on purely legal grounds." *Id.*

### 4. Plaintiff's Remaining Contentions

Plaintiff's remaining contentions do not identify a clear error of law and are improper for a motion to reconsider. Specifically, Plaintiff's disagreement with how the Court interpreted and applied *Richards* and *Bell*,[3] *see* Dkt. No. 164-1 at 33, 36; the Court's analysis of the discretion afforded to Defendant under the Agreement, *see id.* at 38-40; and the Court's striking of Dr. Felder's expert testimony,[4] *see id.* at 44-45; amount to attempts to relitigate issues already decided. *See United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (holding that a motion for reconsideration "may not be used as a substitute for appeal" and a claim based on legal error alone is "inadequate"). Other arguments, such as Plaintiff's contention that this Court erred because, unlike Connecticut utilities, New York utilities buy electricity on "open wholesale markets," *see* Dkt. No. 164-1 at 36-37; or that Defendant breached an implied duty of good faith and fair dealing, *see id.* at 40-44, are being raised for the first time in this motion for reconsideration. *See Mid Atl. Framing, LLC v. AVA Realty Ithaca, LLC*, No. 3:13-CV-01376, 2018 WL 3717391, *1 (N.D.N.Y. Aug. 3, 2018) ("A motion for reconsideration is not 'an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue'") (quotation omitted).

---

[3] *Bell v. Gateway Energy Services Corp.*, 2021 N.Y. Slip Op. 30907(U) (N.Y. Sup. Ct. Jan. 8, 2021).

[4] Plaintiff also argues that, "[e]ven if the Court were correct to strike that portion of Dr. Felder's analysis comparing Defendant's rates and utility rates, the majority of the report, which discusses issues other than utility rates, should not have been stricken." Dkt. No. 164-1 at 45. That argument is moot in light of the Court's grant of Defendant's motion for reconsideration, below.

Accordingly, Plaintiff's cross motion for reconsideration is denied.

**C.     Defendant's Motion for Reconsideration**

Defendant argues that the Court should reconsider the partial denial of its motion for summary judgment and dismiss Plaintiff's GBL claims. *See* Dkt. Nos. 159-1, 165. Specifically, Defendant argues that the Court's holdings with respect to Plaintiff's breach of contract claim rendered Plaintiff's GBL claims "impossible to prove" because both the breach of contract and GBL claims rest on a common element; namely, whether "the Agreement contained 'deceptive and false descriptions of [Defendant's] pricing methodology' that could 'deceive a reasonable customer.'" Dkt. No. 159-1 at 17; Dkt. No. 165 at 9. Plaintiff opposes this argument[5] on two grounds. First, Plaintiff argues that the breach of contract claim and the GBL claims are distinct in that they are based on different allegations; specifically, "the crux of Plaintiff's contract claim is that Defendant breached the contract by failing to charge competitive rates based on market costs," while "the crux of the GBL claim is that Defendant deceptively induced Plaintiff to switch from a local utility to Defendant based on the use of a teaser rate and false promises of competitive rates based on market costs." Dkt. No. 164-1 at 24. Second, Plaintiff argues that the challenged Order does not preclude him from proving the GBL claims because the challenged Order held only "that Plaintiff cannot use utility rates to prove that Defendant's rates are not competitive," not "that Defendant complied with the terms of its contract." *Id.* at 22.

---

[5] The Court finds that the pertinent issue raised here—namely, whether the Court's ruling on the breach of contract claim forecloses Plaintiff from proving an essential element of his GBL claims—is a question of law separate and independent of Defendant's prior argument that the "GBL claims must be dismissed as duplicative of [the] breach of contract claim because the loss alleged under the GBL claims is indistinguishable from the loss alleged under the breach of contract claim." Dkt. No. 158 at 27. To the extent the parties direct arguments at that issue, the Court declines to consider those arguments as they would amount to impermissible attempts to relitigate issues already decided. *See United Airlines, Inc.*, 588 F.3d at 176.

GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). GBL § 349-d specifically governs the deceptive practices of ESCOs and provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services." *Id.* § 349-d(3). "The elements of [GBL] §§ 349(a) and 349-d(3) are the same." *Lazarek v. Ambit Energy Holdings, LLC*, No. 15-CV-6361, 2017 WL 4344557, *4 n.3 (W.D.N.Y. Sept. 29, 2017) (citing *Claridge v. North American Power & Gas, LLC*, No. 15-CV-1262, 2016 WL 7009062, *5 (S.D.N.Y. Nov. 30, 2016)). "To state a claim for a § 349 violation, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y. 3d 616, 621 (2009)). "'Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)).

The complaint alleges that Defendant violated the GBL in two ways: (1) Defendant made "misrepresentations and false, deceptive, and misleading statements and omissions with respect to the variable rates it charges for electricity"; and (2) Defendant "baits and switches potential customers by enticing them with deceptively low Introductory Rates, only to shift them on to [Defendant's] exorbitant variable rate plan shortly thereafter." Dkt. No. 1 at ¶¶ 50, 54. Both of these alleged violations require a jury to find that Defendant made materially misleading statements or omissions about its variable rate. Here, the only representations made by Defendant

as to the variable rate are from the Agreement. The Agreement described the variable rate as "competitive" and "market based," stated that Decedent would "be placed on [Defendant's] monthly variable rate Electricity Program with [her] first month introductory price being 4.4 cents per kilowatt hour," and stated that Decedent would "automatically receive the ... Energy Guard Repair Program." Dkt. No. 137-9 at 7; Dkt. No. 137-10 at 2.

Here, the Court's conclusions in the challenged Order precluded Plaintiff from proving an essential element of the GBL claims, and allowing those claims to proceed was a clear error of law. The challenged Order examined the representations made in the Agreement and concluded that Plaintiff failed to meet his burden to demonstrate a genuine unresolved issue of material fact "as to whether Defendant breached the contract when setting the variable rate." Dkt. No. 158 at 22. It would be logically inconsistent for the Court to conclude that Plaintiff failed to create a triable issue of fact as to whether the variable rate was competitive or market based, but then allow Plaintiff to proceed with GBL claims that require him to establish that those very same terms were materially misleading to a reasonable consumer. Nor can Plaintiff base the GBL claims on Defendant's inclusion of the cost of the EnergyGuard Program in the variable rate because, as the Court held, the Agreement "explicitly state[d] that the variable rate would reflect multiple factors, including Defendant's costs, expenses and margins." *Id.* Finally, it cannot be said that the Agreement was materially misleading with respect to the automatic switch from the introductory price to the variable rate, as the Agreement unambiguously provided that Decedent would be placed on the monthly variable rate after a first month introductory price at 4.4 cents per kilowatt hour, which is exactly what occurred in this case.

Contrary to Plaintiff's argument, the outcome in the challenged Order was not "consistent with rulings in virtually identical cases." Dkt. No. 164-1 at 18 (capitalization omitted). In *Bell*,

the representation of the variable rate as "competitive" was made in a communication subsequent to—and separate from—the parties' contract, and the court did not consider it when dismissing the breach of contract claim. *See Bell v. Gateway Energy Services Corp.*, 2018 N.Y. Slip Op. 32370(U), 21 (N.Y. Sup. Ct. Sept. 13, 2018) ("[T]his Court is constrained to conclude that the 'competitive pricing' language in [the defendant's] 2014 communication to Bell—on which [the] plaintiff heavily relies—constitutes extrinsic evidence that this Court cannot consider on this contract cause of action"). The court in *Bell* concluded that there was a triable issue of fact as to whether the promise of competitive energy rates in the separate communication was deceptive or misleading in a material way, under the specific evidence in that case.[6] *See Bell*, 2021 N.Y. Slip Op. 30907(U), at 14-15. Plaintiff also relies on *Simmons v. Ambit Energy Holdings, LLC*, 2016 N.Y. Slip Op. 32107(U), 1 (N.Y. Sup. Ct. Oct. 24, 2016), but that case was decided under the standard of a motion to dismiss—not a motion for summary judgment—and did not even include a breach of contract claim.

Accordingly, Defendant's motion for reconsideration is granted and Plaintiff's GBL §§ 349 and 349-d claims are dismissed.[7] In light of the dismissal of Plaintiff's only remaining claims, Plaintiff's motion for class certification and Defendant's motion to deny class certification are denied as moot.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the

---

[6] That evidence included a statement by one of the defendant's employees that the variable rate was "190% of the utility rate over the last 15 months in New York" and that the defendant's rate was not "competitive with the utility in any [Local Distribution Company]." *Bell*, 2021 N.Y. Slip Op. 30907(U), at 15.

[7] Defendant's alternative request for certification of an interlocutory appeal is denied as moot.

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for reconsideration (Dkt. No. 159) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross motion for reconsideration (Dkt. No. 164) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 137) is **GRANTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's motion for class certification (Dkt. No. 136) is **DENIED as moot**; and the Court further

**ORDERS** that Defendant's motion to deny class certification (Dkt. No. 138) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 12, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge